UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*******************************
SANDRA LORUSSO and DEBORAH       *   CIVIL ACTION NO.
EVANGELISTA                      *   3:03CV00504 (MRK)
                                 *
            PLAINTIFF            *
VS.                              *
                                 *
H. RICHARD BORER, JR.            *   JUNE 1, 2004
            DEFENDANT            *
*******************************
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P. 56(b), the defendant, H. Richard Borer, Jr., moves for summary judgment as to all claims of the Plaintiffs' complaint, and in support thereof submits the following.

## I.   INTRODUCTION

The Plaintiff Sandra Lorusso is the former Risk Manager for the City of New Haven. The Plaintiff Deborah Evangelista is the Administrative Assistant to the Democratic Registrar of Voters for the City of New Haven. In the budget adopted by the City Council of West Haven for fiscal year 2002-2003, the position of Risk Manager was not funded and the funding for the two positions of Administrative Assistant to the Registrar of Voters[1] was reduced from 35 hours per week to 19 hours per week. The sole named Defendant is H. Richard Borer, Jr., the Mayor of the City of West Haven.

The Plaintiffs claim that Mayor Borer recommended eliminating and/or reducing funding for their positions of employment in City of West Haven's budget for fiscal year 2002-2003 because the Plaintiffs did not support Mayor Borer in his bid for reelection in November, 2001. The Plaintiffs seek

---

[1] Deborah Evangelista is the Administrative Assistant to the Democratic Registrar of Voters. The City of West Haven also employs an Administrative Assistant to the Republican Registrar of Voters.

redress pursuant to 42 U.S.C. § 1983 and Conn. Gen. Stat. § 31-51q for the alleged violation of their rights under the First and Fourteenth Amendments to the United States Constitution and the Connecticut Constitution.

The City of is governed by a Mayor/City Council form of government. *Exhibit 1, Charter of the City of New Haven, Ch. II § 2.* Pursuant to the Charter of the City of West Haven, the Mayor is responsible for recommending an annual operating budget to the City Council. *Id. at Ch. XIX, Part A § 3.* The City Council is responsible for reviewing the Mayor's recommendations, conducting at least one public hearing thereon and can alter any of the Mayor's recommendations by a two thirds majority vote. *Id. at Ch. XIX, Part A § 4.* City Council, and not the Mayor, is ultimately responsible for adopting the budget. *Id. Exhibit 2, excerpts of Lorusso's Deposition at p. 17; Exhibit 3, excerpts of Evangelista's Deposition at pp. 45-47.*

Here, the Plaintiffs make no claim that the City Council committed any wrongdoing in adopting the operating budget for fiscal year 2002-2003. Indeed, the Plaintiff Deborah Evangelista has stated that the City Council entertained a motion to restore the funding for the Administrative Assistant to the Registrar of Voters positions to 35 hours per week for fiscal year 2002-2003, but that the motion failed to carry by the necessary number of votes. *Exhibit 3, excerpts of Evangelista's Deposition at pp. 80-81.* Rather, the Plaintiffs contend that the Mayor "orchestrated" the "adverse employment actions" they allegedly suffered. *Complaint ¶ 17.*

It is undisputed that it is the City Council and not the Mayor who adopts the operating budget for the City of West Haven. Accordingly, there is no question of material fact that Mayor Borer is not a final policymaker with respect to his duties in recommending a budget for the City of West Haven. Consequently, the Plaintiffs' claims insofar as they are construed to name the City of West Haven and

the Mayor in his official capacity [2] fail because the Mayor is not the final policymaker with respect to the budget for the City. In addition, the Plaintiffs' claims against Mayor Borer in his individual capacity fail because the Mayor's actions in recommending an operating budget are protected by the doctrine of legislative immunity.

## II.  STANDARD OF LAW

A motion for summary judgment is the appropriate vehicle "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). Motions for summary judgment are governed by Fed. R. Civ. P. 56. Where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," summary judgment "shall" enter in favor of the movant. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) ("[[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 255; Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475

---

[2] The City of West Haven is not named as a Defendant to this action. H. Richard Borer, Jr. is the sole named Defendant in this action. The relief sought is limited to compensatory damages, punitive damages and attorney's fees. Thus, the pleadings suggest that the claim is limited to an individual capacity claim against the Mayor. See Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985) (When a complaint fails to clearly state whether a government official is being sued in his official capacity, his individual capacity, or both, courts look to the "course of proceedings" to determine "the nature of the liability to be imposed."); Rodriguez v. Phillips, 66 F. 3d 470, 479 (2d Cir. 1995) (prayer for punitive damages and defense of qualified immunity suggests individual capacity suit); Rogers v. Borough of Manhattan, 1998 WL 704003, at *2 n. 3 (S.D.N.Y. 1998) ("Since [plaintiff] has asked solely for monetary damages, the Court will construe her complaint as brought against the defendants in their individual capacity."). However, to the extent that the Plaintiffs' Complaint is liberally construed, the Defendant has addressed the claims as if an official capacity claim had been expressly alleged.

U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). However, the nonmoving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Indeed, a showing of mere "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. Matshushita, 475 U.S. at 586. Furthermore, where the movant demonstrates the absence of factual support for an essential element of the nonmovant's case, summary judgment is properly granted. Celotex, 477 U.S. at 323-24.

### III.    ARGUMENT

**A.    SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE DEFENDANT AS TO THE PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 1983 BECAUSE THERE IS NO QUESTION OF FACT THAT THE DEFENDANT IS NOT A FINAL POLICYMAKER WITH RESPECT TO THE CITY'S BUDGET.**

1.    <u>The Defendant is entitled to summary judgment as to the Plaintiffs' claim under 42 U.S.C. § 1983, to the extent that such a claim implicates the Defendant's official capacity, because the Defendant does not possess final policymaking authority with respect to the City of West Haven's operating budget.</u>

The Plaintiffs claim that the Defendant is liable under 42 U.S.C. § 1983 for alleged conduct associated with the budgetary process. Any claim implicating liability on the part of the Defendant, in his official capacity, cannot stand as a matter of law. To substantiate such a claim, the Plaintiffs must show that the Defendant was a final policymaker with respect to the budget. This they cannot do.

A suit against a municipal officer in his official capacity is the functional equivalent of a suit against the entity of which the officer is an agent.[3] Curley v. Village of Suffern, 268 F.3d 65, 72 (2d

---

[3]In situations where claims are raised against a municipality and a municipal officer in his or her official capacity, the claims against the officer have been subject to dismissal on the grounds of redundancy. Baines v. Masiello, 288 F.Supp.2d 376, 384-85 (W.D.N.Y. 2003); see also Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001); Juncewicz v. Patton, No. 01-CV-0519E, 2002 WL

Cir. 2001); Goldberg v. Town of Rocky Hill, 973 F.2d 70, 73 (2d Cir. 1992). The disposition of such a claim, therefore, is determined in the same manner as if the claim were raised against the municipality itself. Curley, 268 F.3d at 72; Martinez v. Simonetti, 202 F.3d 625, 631 n.6. (2d Cir. 2000).

According to § 1983,[4] a municipality may not be held liable under the doctrine of *respondeat superior* for acts of its employees that deprive a plaintiff of his or her constitutional rights. Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000). A municipality, however, may be subject to liability if the alleged constitutional deprivation was caused by a municipal "policy or custom." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). To trigger municipal liability, a plaintiff must establish that the alleged deprivation resulted from the action of "a municipal decisionmaker, provided that the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered.*" Legal Aid Society v. City of New York, 114 F.Supp.2d 204, 231 (S.D.N.Y. 2000) (emphasis added) (quotation marks omitted).

The question for the Court is "whether [the] government official [is a] final policymaker [] for the local government in a particular area, or on [the] particular issue." Jeffes, 208 F.3d at 57 (quotation marks omitted). "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties. . . . [O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." Id. (citation omitted) (quotation marks omitted).

---

31654957, at *5 (W.D.N.Y. Oct. 8, 2002).

[4] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

5

"Whether the official in question possessed final policymaking authority is a legal question . . . . [T]he relevant legal materials, includ[e] state and local positive law, as well as custom or usage having the force of law. . . . The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge *before* the case is submitted to the jury." Id. (citations omitted) (quotation marks omitted) (emphasis in original).

The Plaintiffs allege that the Defendant acted as the Mayor of the City of West Haven at all times relevant to this matter. *Complaint* ¶ 3. The Plaintiffs further aver that the Defendant "eliminated job titles and positions in order to cause the loss of the plaintiffs' employment." *Id.* at ¶ 14. The position of Risk Manager, which was held by the Plaintiff, Sandra Larusso, was eliminated from the City's budget. *Id.* at ¶ 15. Additionally, the Plaintiffs allege that the Plaintiff, Deborah Evangelista, experienced a reduction in her work hours. *Id.* at ¶ 16. These acts, according to the Plaintiffs, were retaliatory in that the Plaintiffs had exercised their First Amendment rights by supporting John Picard, an opponent of the Defendant in the 2001 primary election. *Complaint. Id.* at ¶ 17. These allegations, however, even if supported by credible evidence, fail to substantiate a claim under § 1983.

In Legal Aid Society v. City of New York, 114 F.Supp.2d 204, 231 (S.D.N.Y. 2000), the District Court for the Southern District of New York rejected a plaintiff's attempt to impose municipal liability, premised in part upon alleged violations of the First Amendment, for certain actions taken by the Mayor of New York City regarding the city budget. Id. at 232. After reviewing the New York City Charter, the Court concluded that the mayor was not the final policymaking authority with respect to the budget and, therefore, the municipality was not subject to liability under § 1983. Id. at 233. Because the mayor was not the final policymaker regarding the budget and because the plaintiff had failed to assert any wrongdoing on the part of the city council, the actual final policymaker for the city's budget, the Court held that municipal liability could not lie and granted summary judgment in favor of the city. Id.

6

In reaching this conclusion, the Court explained: "Because any budgetary proposals submitted by the Mayor are ultimately subject to plenary review by the City Council, the City Council possesses final policymaking authority with respect to the municipal ... budget. [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." Id. at 232 (quotation marks omitted). The Court also explained that "[t]he fact that the Mayor and the City Council may at times negotiate compromises on matters of budgetary policy does not affect this conclusion, since there is no contention, and indeed no evidence, that the City Council has adopted a custom or policy of acquiescence to the Mayor's budgetary demands." Id. at 232-33; *see also* City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (explaining that a subordinate official may be deemed as a policymaking authority if a superior official adopts the policy formulated by the lower-ranking official).

As in Legal Aid Society, the Plaintiffs' claim in this case fails because the Defendant is not a final policymaker with respect to the operating budget of the City. Indeed, there is no dispute that it is City Council, not the Mayor, who is ultimately responsible for adopting an operating budget for the City of West Haven. The Plaintiffs not only acknowledge that City Council is responsible for adopting a budget but also that City Council has the power to override any of the Mayor's budget recommendations by a two thirds vote. *Exhibit 2, excerpts to Lorusso's Deposition at pp. 46, 52-53; Exhibit 3, excerpts to Evangelista's Deposition at pp. 45-47*. Moreover, Evangelista testified that City Council entertained a motion to restore full funding for her position (and that of her Republican counterpart) but that the motion failed to garner the necessary votes for passage. *Exhibit 3, excerpts of Evangelista Deposition at pp. 80-81*. The Charter for the City of West Haven confirms that the City Council, and not the Mayor, possesses final policymaking authority over the City's operating budget. WEST HAVEN, CONN.,

7

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

CITY CHARTER Ch. XIX, pt. A, § 4 (1961, as revised). Because there is no claim nor any contention that City Council committed any wrongdoing, summary judgment is appropriately entered in favor of the Defendant, in his official capacity, as to the Plaintiffs' claim under § 1983.

Chapter XIX of the Charter sets forth the responsibilities of both the City Council and the Mayor as well as the Board of Finance with respect to the operating budget. Section 3 provides that the Mayor is charged with presenting to the City Council the following: (1) "a budget message outlining the financial policy of the City and describing in connection therewith the important features of the budget plan;" (2) "estimates of revenue" with the appropriate receipts; (3) "itemized estimates of expenditures;" and (4) reasons for all of the recommendations. WEST HAVEN, CONN., CITY CHARTER ch. XIX, pt. A, § 3 (1961, as revised). The Board of Finance assists the Mayor in the drafting of the budget proposal. Id. at § 2.

The City Council is ultimately responsible for adopting the operating budget for the City. Id. at § 3; *see also* Larke v. Morrissey, 155 Conn. 163, 172-73, 230 A.2d 562 (1967).[5] In carrying out this

---

[5]In Larke, 155 Conn. at 172-73, the Connecticut Supreme Court construed the term "final budget-making authority" under the version of Connecticut General Statues § 7-391 as it then existed, as applied to the City of West Haven. The Court concluded that the Mayor was the "final budget-making authority" according to the version of the statute then in existence. Id. at 171-73. In reaching this conclusion, the Court explained that the Mayor was charged with *preparing* the budget as distinguished from *adopting* the budget. Id. at 173.

The current version of § 7-391 no longer contains the definition of "final budget-making authority" construed by the Court in Larke. However, Connecticut General Statutes § 7-381, the definitions section for Chapter 110 of the Connecticut General Statutes, entitled Municipal Uniform Fiscal Years, provides a nearly identical definition, but omits the term "final." Section 7-381 provides in relevant part: "budget-making authority . . . as applied to cities . . . means the board of finance or such other body or committee . . . as applied to cities having neither boards of finance nor such other such other bodies or committees, means the *mayor* . . . ." (emphasis added).

Larke is not controlling here because the term "budget-making authority" as construed therein is not the same as a "final policymaker" regarding the budget for the purposes of a claim under § 1983. Pursuant to Connecticut General Statutes § 7-388, the "budget-making authority" is required to submit "estimates and recommendations" to the appropriate legislative body at the annual budget meeting. The legislative body, in turn, must carry out its duties as set forth under the relevant charter or special act. In the present case, the Charter requires the City Council, not the Mayor, to review, amend and

8

legislative function, the City Council must first hold public hearings and allow all those to come forward who wish to be heard on the City's appropriations. WEST HAVEN, CONN., CITY CHARTER ch. XIX, pt. A, § 4 (1996). During the course of its review of the proposed operating budget, the City Council may alter any item of the Mayor's proposal upon a vote of not less than two thirds of the City Council. Id. The City Council, after conducting the appropriate public hearings and reviewing the proposal, "shall adopt a budget and file the same with the Town and City Clerk." Id. Adoption of the budget requires a majority vote of the City Council. Id.

There is no dispute that the budget process set forth in the City Charter was followed for fiscal year 2002-2003. Pursuant to the City Charter, the Defendant presented his recommended operating budget to the City Council on March 21, 2002. *Ex. 4, Minutes of 3/21/02 Meeting of West Haven City Council*. The Defendant's recommended operating budget proposed the elimination of the position of Risk Manager and the creation of a new position of Risk Manager/Procurement Officer. *See Exhibit C to Early Affidavit (the Early Affidavit is appended to the Defendant's Local Rule 9(C)1 Statement as Exhibit 3)*. The Defendant's recommended operating budget also proposed reducing funding for the two Administrative Assistants in the Registrar's Office. *See Exhibit B to Early Affidavit*. A public hearing on the budget was duly noticed for April 3, 2002 and was conducted on that date. *Exhibit A, Early Affidavit at ¶ 7*. The Plaintiffs were present at most, if not all, of the budget deliberations and had the option of addressing City Council at these public meetings. *Exhibit 2, excerpts of Lorusso Deposition at pp. 50-54; Exhibit 3, excerpts of Evangelista Deposition at p. 45*. On May 2, 2002, the City Council adopted the Defendant's recommended operating budget as amended by the City Council. *Exhibit 5, Minutes of 5/2/02 Meeting*. As demonstrated by the amendments to the Defendant's

---

ultimately adopt the budget. This division of duties, as provided for in § 7-388, clarifies why the Court in Larke made the distinction between *preparing* and *adopting* the budget.

9

recommended operating budget made by the City Council, the City Council garnered the necessary two thirds vote to override the Defendant's recommendations in numerous instances. *Id. and copy of Amendments appended to Ex. 5, Minutes of 5/2/02 meeting.*[6] The operating budget, as amended by City Council passed by the necessary majority vote. *Id.*

Regardless of the degree to which the Defendant is involved in the budgetary process, it is the City Council that ultimately adopts the budget for the City. As in Legal Aid Society, 114 F.Supp.2d at 232, the Defendant's proposal is subject to "plenary review" and alteration by the City Council. Accordingly, the Defendant cannot be subjected to liability, under § 1983, for his decisions regarding the City's operating budget. The Defendant, therefore, respectfully requests that summary judgment be entered as to the Plaintiffs' claim under § 1983 insofar as it relates to the Defendant in his official capacity.

2. **The Defendant is entitled to summary judgment as to the Plaintiffs' claim under 42 U.S.C. § 1983, to the extent that such a claim implicates the Defendant's individual capacity, because the Defendant is shielded from individual liability by legislative immunity.**

The Plaintiffs' claim, insofar as it implicates the Defendant in his individual capacity, cannot survive summary judgment. The basis of the Plaintiffs' claim under § 1983 is alleged conduct associated with the budgetary process. *Complaint ¶¶ 14-17.* Such a claim, however, cannot stand because the Defendant is protected by legislative immunity for actions regarding the preparation and recommendation of the operating budget for the City. The Defendant's actions with respect to the budget are quintessentially legislative and, therefore, protected by absolute immunity.

---

[6]The amendments to the Defendant's recommended operating budget indicate that the City Council altered the Defendant's recommendations by either increasing or decreasing the budgeted amount in excess of 80 instances.

"Legislators are entitled to absolute immunity from civil liability for their legislative activities. [The Second Circuit] has previously held that absolute legislative immunity from Section 1983 actions extends to local legislators." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003). "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Bogan v. Scott-Harris, 523 U.S. 44, 55, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This defense is available not only to those officials in the legislative branch of government, but to any government official who performs legislative functions. Id.

"The test for determining whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. . . . Under this functional test, immunity depends on the nature of the act itself, not the identity of the actor performing it." Harhay, 323 F.3d at 210 (citation omitted) (quotation marks omitted). "In order for legislative immunity to attach, the act in question must be taken in the sphere of legitimate legislative activity." Id. (quotation marks omitted). The act does not have to be "quintessentially legislative," rather the act must be an integral step in the legislative process. Bogan, 523 U.S. at 55; Harhay, 323 F.3d at 211.

"It is settled law that job elimination through the budgetary process is a legislative act to which the doctrine of absolute [legislative] immunity is squarely applicable." Gordon v. Katz, 934 F.Supp. 79, 82 (1996), *aff'd*, 101 F.3d 1393 (2d Cir. 1996) (quotation marks omitted). Budgetary decisions involving "the termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." Bogan, 523 U.S. at 56. Thus, the fact that decisions regarding the elimination of positions for budgetary reasons are related to employment does not detract from the legislative nature of such decisions. Harhay, 323 F.3d at 211.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

The Defendant's actions regarding the operating budget were quintessentially legislative in nature. *See Discussion of process followed for FY 2002-2003 in Part III.A.1*. Significantly, the Plaintiffs do not allege nor are there any facts to suggest that the Defendant deviated from the legally accepted procedures set forth in the Charter. Indeed, both Plaintiffs acknowledge that the budget process which resulted in the elimination of their positions in the 2002-2003 budget, as established by the City Charter, was followed. *Exhibit 2, excerpts of Lorusso Deposition at pp. 17-18; Exhibit 3, excerpts of Evangelista Deposition at pp. 42-47*. "In order to defeat absolute legislative immunity [the Plaintiffs] must show that [the Defendant] did not follow legally accepted legislative procedure in the adoption of the . . . budget. . . . A deviation from historical practice is not sufficient to defeat a claim of absolute legislative immunity, so long as the procedures followed are legally correct." Gordon, 934 F.Supp. at 83. The Plaintiffs cannot make such a showing in the present case and, therefore, the Defendant may properly invoke the defense of legislative immunity.

Finally, the fact that the Plaintiffs' allegations implicate First Amendment rights does not alter the analysis. The alleged improper motivation behind a legislative act is irrelevant; Gordon, 934 F. Supp. at 84; rather, the key element is the nature of the act performed. Bogan, 523 U.S. at 54. Based upon the foregoing, it is clear that "[t]he acts of *proposing*, voting on, and adopting the budget which eliminated the position of Risk Manager held by the Plaintiff Lorusso and reduced the hours for the position of Administrative Assistant to the Democratic Registrar of Voters held by Evangelista, were purely legislative acts to which absolute legislative immunity applies." Gordon, 934 F.Supp. at 83 (emphasis added). Accordingly, the Plaintiffs' claim against the Defendant, in his individual capacity, is barred by the doctrine of legislative immunity. Summary judgment should therefore enter in favor of Defendant as to the Plaintiffs' claim under § 1983 insofar as it relates to the Defendant in his individual capacity.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

### B. SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE DEFENDANT AS TO THE PLAINTIFFS' CAUSE OF ACTION UNDER CONNECTICUT GENERAL STATUTES § 31-51Q.

The Plaintiffs also raise a claim of retaliation under Connecticut General Statutes § 31-51q. The Plaintiffs claim that the Defendant's conduct with respect to the budget was substantially motivated by the Plaintiffs' exercise of their First Amendment rights, i.e. their decision to support the Defendant's opponent in the 2001 Democratic primary. *Complaint.* ¶¶ *14-17, 19.*

Connecticut General Statutes § 31-51q provides:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

"Section 31-51q protects an employee from retaliatory discharge due to that employee's exercise of certain enumerated rights, including, inter alia, the right to freedom of expression as guaranteed by the first amendment to the United States constitution, and article first, § 4, of the Connecticut constitution. Those constitutional provisions safeguard statements made by an employee that address a matter of public concern, but provide no security with respect to statements that address wholly personal matters." Daley v. Aetna Life and Cas. Co., 249 Conn. 766, 778, 734 A.2d 112 (1999).

"In order for a plaintiff to prevail in a Section 31-51q action, the plaintiff must allege and prove that: (1) [he] was exercising rights protected by the First Amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that [he was disciplined or discharged] on account of [his] exercise of such rights; and (3) that [his] exercise of First Amendment

13

or equivalent state constitutional rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer." <u>Downing v. West Haven Board of Ed.</u>, 162 F.Supp.2d 19, 33 (D. Conn. 2001); <u>Lowe v. Amerigas, Inc.</u>, 52 F.Supp.2d 349, 359 (D. Conn. 1999).

Summary judgment should enter in favor of the Defendant as to the Plaintiffs' claim under § 31-51q for the following reasons: (1) the Plaintiffs' claim insofar as it relates to the Defendant in his official capacity fails because there is no dispute that the Defendant is not a final policymaker with respect to the operating budget; (2) the Plaintiffs' claim insofar as it relates to the Defendant in his individual capacity is barred by the doctrine of legislative immunity; and, in the alternative, (3) the Plaintiffs' allegations do not constitute "discipline or discharge" as required by the statute.

> 1. **There is no basis for liability, under § 31-51q, against the Defendant, in his official capacity, because the Plaintiffs have failed to allege wrongdoing on the part of a final policymaker with respect to the operating budget.**

The Plaintiffs' allegations in support of their claims under § 1983 and § 31-51q are identical. Where claims brought pursuant to § 31-51q are identical to claims made pursuant to § 1983, they are subject to the same analysis. In other words, if the claim fails under § 1983, it likewise fails under 31-51q. <u>See</u> <u>Bracey v. Board of Educ. of Bridgeport</u>, ___ F.3d ___, No. 03-7094, 2004 WL 1050863, at *7 (2d Cir. May 11, 2004); <u>Downing</u>, 162 F.Supp.2d at 33; <u>Ritz v. Town of East Hartford</u>, 110 F.Supp.2d 94, 103 (D. Conn. 2000); <u>Gottlob v. Connecticut State University</u>, CV930521148S, 1996 WL 57087, at *3 (Conn. Super. Jan. 19, 1996). Accordingly, because the Plaintiffs' § 1983 claim against the Defendant in his official capacity fails due to the fact that there is no dispute that the Defendant was not the final policymaker with respect to the decision to eliminate the funding for the

14

position of Risk Manager or to reduce the funding for the position of Administrative Assistant to the Registrar of Voters, the Plaintiffs' claim under § 31-51q likewise fails.

As with their claim asserted under § 1983; *see* Part III A. 1.; the Plaintiffs' claim under § 31-51q must fail because the Plaintiffs have not alleged any wrongdoing on the part of a final policymaker with respect to the budget. Legal Aid Society, 114 F.Supp.2d at 232-33. Without such allegations, there is no basis for liability on the part of the Defendant in his official capacity.

Based upon the foregoing, the Defendant is entitled to judgment as a matter of law. The Defendant, therefore, respectfully requests that summary judgment be entered as to the Plaintiffs' claim under § 31-51q insofar as it relates to the Defendant in his official capacity.

> 2. **The Plaintiffs' claim under § 31-51q against the Defendant in his individual capacity is barred by the doctrine of legislative immunity.**

As set forth in Part III A. 2. of this memorandum, municipal legislators are entitled to absolute immunity from civil liability for their legislative activities. Bogan, 523 U.S. at 52; Harhay, 323 F.3d at 210. Connecticut courts have recognized the doctrine of legislative immunity. AvalonBay Communities, Inc. v. Town of Orange, CV 99065826, 2000 WL 226374, at *13 (Conn. Super. Feb. 9, 2000), *rev'd on other grounds*, 256 Conn. 557, 775 A.2d 284 (2001) (special defenses not at issue on appeal); Anonymous v. Connecticut Bar Examining Committee., CV94-0534160-S, 1995 WL 506660, at *5-*6 (Conn. Super. Aug. 17, 1995); Bials v. Town of Portland, 59608, 1992 WL 189358, at *2 (Conn. Super. July 27, 1992).

It is well established that job elimination and the curtailment of hours through the budgetary process is a legislative act that is protected by the doctrine of legislative immunity. Bogan, 523 U.S. at 56; Harhay, 323 F.3d at 211; Gordon, 934 F.Supp. at 82. Moreover, decisions regarding the elimination

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

of jobs and curtailment of hours through the budgetary process do not lose their legislative character merely because such decisions are related to employment. Harhay, 323 F.3d at 211.

The Plaintiffs' claim under § 31-51q, like the claim raised under § 1983, is barred by the doctrine of legislative immunity. The Defendant's actions regarding the operating budget were quintessentially legislative in nature. In addition, the Plaintiffs have not alleged, and cannot substantiate, that the Defendant deviated from the procedures set forth in the Charter. Because the Defendant acted in his legislative capacity, and in accordance with the prescribed procedures set forth in the Charter, the Plaintiffs cannot prevail on their claim as a matter of law. Summary judgment should enter in favor of the Defendant as to the Plaintiffs' claim under § 31-51q insofar as it relates to the Defendant in his individual capacity.

3. **Should this Court determine that the analysis under § 1983 is inapplicable to the Plaintiffs' claim raised under § 31-51q, the Plaintiffs' claim still fails because of the absence of "discipline or discharge" as contemplated by the statute.**

Even if this Court determines that the Plaintiffs' claim under § 31-51q is not subject to the same analysis as their claim under § 1983, the Plaintiffs' state law claim cannot survive summary judgment. The basis for the Plaintiffs' claim rests upon the alleged conduct of the Defendant regarding the budgetary process. However, such legislative conduct does not constitute "discipline or discharge" as contemplated by § 31-51q.

Section 31-51q prohibits any employer from disciplining or discharging any employee in retaliation of that employee's exercise of rights guaranteed by the first amendment to the United States Constitution or article first of the Constitution of Connecticut. Daley, 249 Conn. at 778. Neither the Second Circuit nor the Connecticut appellate courts have interpreted the phrase "discipline or

16

discharge."[7]

The text of the statute is clear. The statute applies to employment decisions that penalize an employee for exercising certain constitutionally protected rights. *See id.* In the instant matter, no employment decision was made. The decisions affecting the Plaintiffs, as alleged in their Complaint, were those lawfully made during the course of proposing and adopting the budget for the 2002-2003 fiscal year. The Plaintiffs do not allege, and cannot establish, that the Defendant's proposed budget was not in accordance with the City Charter. Furthermore, the evidence amply supports the propriety of the City Council's subsequent review, revision and adoption of the proposed budget. Thus, there are no genuine issues as to any material fact regarding the absence of "discipline or discharge" by the Plaintiffs' employer.

The Plaintiffs' claim, therefore, does not fall under the ambit of § 31-51q as a matter of law. Accordingly, the Defendant respectfully requests that summary judgment enter as to the Plaintiffs' claim under § 31-51q.

---

[7]Several Connecticut Superior Court decisions consider and apply the term "discipline." None of these cases, however, address legislative action that results in the elimination of positions or the curtailment of hours. *See* McIntyre v. Fairfield University, No. CV020391471, 2003 WL 1090690, at *2 (Mar. 3, 2003 Conn. Super. Ct.) (failure to grant tenure); Bombalicki v. Pastore, No. 378772, 2000 WL 726839, at *3-*4 (May 10, 2000 Conn. Super. Ct.) (failure to promote); Douglas v. Board of Trustees for Conn. State University, No. CV 950372571, 1999 WL 240736, at *2 (Apr. 8, 1999 Conn. Super. Ct.) (failure to rehire and to grant tenure); D'Angelo v. McGoldrick, No. CV 93 0063904, at *4-*5 (Aug. 3, 1995 Conn. Super. Ct.) (transfer).

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

## IV. CONCLUSION

The Plaintiffs' claims against the Defendant in his official capacity fail because the Plaintiffs have failed to allege any wrongdoing on the part of a final policymaker regarding the budgetary process. The claims against the Defendant in his individual capacity also fail because the Defendant is entitled to legislative immunity for his acts with respect to participating in the budget process for the City. Furthermore, there is no claim of "discipline or discharge" as contemplated by § 31-51q and, therefore, any claim against the Defendant under the state statute cannot survive summary judgment. The Defendant's motion for summary judgment should be granted.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

THE DEFENDANTS,
CITY OF WEST HAVEN AND
H. RICHARD BORER, JR.

By: _____
Jennifer L. Schancupp
Federal Bar No. ct11876
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P O Box 1684
New Haven, CT 06507

### CERTIFICATION

This is to certify that a copy of the foregoing was mailed this day, via first class mail, postage prepaid, to the following:

Counsel for the Plaintiff
Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Co-Counsel for the Defendants
Paul J. Dorsi, Esq.
Assistant Corporation Counsel
Office of the Corporation Counsel
City of West Haven
355 Main Street
West Haven, CT 06516

_____
Jennifer L. Schancupp

I:\Client U_Z\West Haven\Lorusso-Evangelista\Pleadings\Memorandum of Law in support of MSJ.wpd