UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*****************************************
SANDRA LORUSSO and DEBORAH    *   CIVIL ACTION NO.
EVANGELISTA                   *   3:03CV00504 (MRK)
                              *
              PLAINTIFF       *
VS.                           *
H. RICHARD BORER, JR.         *   SEPTEMBER 21, 2004
              DEFENDANT       *
*****************************************
```

## DEFENDANT'S REPLY BRIEF AND SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

By motion dated August 12, 2004, the Defendant sought permission to file a supplemental brief in support of his Motion for Summary Judgment to address arguments raised by the Plaintiffs in their Memorandum in Opposition to the Defendant's motion, but not originally briefed by the Defendant. The Court granted this motion on August 19, 2004. This memorandum of law both replies to the Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment and addresses claims not previously briefed.

In Opposition to the Defendant's Motion for Summary Judgment, the Plaintiffs have submitted a Memorandum of Law, the first twenty-six (26) pages of which are comprised of a statement of purported facts for which the Plaintiffs sporadically cite to allegedly supporting evidence. As is clear from a cursory reading of this section of the Plaintiffs' Memorandum of Law and the affidavits of the Plaintiffs submitted in opposition to the motion, which are the primary "evidence" cited to as support for the Plaintiffs' alleged facts, the majority of the Plaintiffs' contentions are statements of opinion or speculation or conjecture. The evidentiary shortcomings of these claims are separately addressed in a

from a cursory reading of this section of the Plaintiffs' Memorandum of Law and the affidavits of the Plaintiffs submitted in opposition to the motion, which are the primary "evidence" cited to as support for the Plaintiffs' alleged facts, the majority of the Plaintiffs' contentions are statements of opinion or speculation or conjecture. The evidentiary shortcomings of these claims are separately addressed in a

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

from a cursory reading of this section of the Plaintiffs' Memorandum of Law and the affidavits of the

Motion to Strike and Memorandum of Law in support thereof filed along with this reply brief. Contrary to the Plaintiffs' apparent assumption, however, "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." Cifarelli v. Village of Babylon, 93 F. 3d 47, 51 (1996).

## II.     ARGUMENT

### A.     This Matter Concerns a Single Claim Against the Defendant in His Individual Capacity Under 42 U.S.C. § 1983.

As a threshold matter, it is important to clarify what this case is not about. In their memorandum in opposition, the Plaintiffs withdrew any claim against the Defendant under CONN. GEN. STAT. § 31-51q. *Pls. Mem., p. 2.* The Plaintiffs also did not respond in any way to the Defendant's arguments regarding liability in his official capacity under 42 U.S.C. § 1983. *Def. Memo., pp. 4-10.* Any such claim, to the extent alleged, is deemed abandoned. See Barlow v. Connecticut, 319 F.Supp.2d 250, 266-67 (D.Conn. 2004)(holding that a federal court may deem a claim abandoned if a party opposing summary judgment fails to address an argument by a moving party).

Accordingly, this case concerns a single claim under § 1983 against the Defendant in his individual capacity. In support of this claim, the Plaintiffs argue that the Defendant is liable for (1) his legislative acts concerning the budgetary process for the 2002-2003 fiscal year; (2) Sandra Lorusso's inability to bump into or bid for another job after the funding for her position as Risk Manager was eliminated; and (3) the loss of health care benefits which Deborah Evangelista experienced as a result of the reduction of her work hours.

As discussed below, the Defendant's actions regarding the budgetary process were legislative in nature and, therefore, protected by the defense of legislative immunity. The decisions regarding

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

Lorusso's attempt to bump into or bid for other positions were objectively reasonable. Thus, the Defendant's actions with respect to Lorusso's efforts to secure another city job are protected by the defense of qualified immunity. In addition, Evangelista's loss of health care benefits was a consequence of the fact that her hours were reduced to below twenty (20) hours per week by action of the City Council for the City of West Haven (herein "the City"). There is no evidence to support the Plaintiffs' contention that the denial of health care benefits was a separate and distinct decision on the part of the Defendant. The consequential loss of health care benefits to Evangelista is thus protected by legislative immunity.

### B. The Defendant's Acts Regarding the Budgetary Process Are Quintessentially Legislative in Nature and, Therefore, the Defendant Is Entitled to Legislative Immunity.

The Plaintiffs argue that the Defendant may not invoke the defense of legislative immunity for his actions regarding the budgetary process because his budget proposal was "not crafted to effect long term policy goals but to affect individual employees." *Pls. Memo., p. 37.* The Plaintiffs ask this Court to sever the portions of the Defendant's budget proposal addressing their positions, view them in isolation from the rest of the proposal and conclude that they are not "prospective looking." However, the recommendations impacting the Plaintiffs were pieces of a larger proposed legislation intended to offset the effects of a difficult economy. The nature of the Defendant's proposed legislation, coupled with the law governing legislative immunity, clearly militate against the Plaintiffs' argument.

It is well established that "job elimination through the budgetary process is a legislative act to which the doctrine of absolute [legislative] immunity is squarely applicable." Gordon v. Katz, 934 F.Supp. 79, 82 (S.D.N.Y.), *aff'd*, 101 F.3s 1393 (2d Cir. 1996) (quotation marks omitted). It is equally settled that *motive and intent are irrelevant* in determining whether a particular act is legislative in nature. Id.; see also Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003). Thus,

3

the sole question for the Court is whether the Defendant's submission of his budget proposal to the City Council was a component of the accepted legislative process of the City.

The evidence clearly shows that the Defendant's budget proposal was prospective looking. The Defendant's recommendations to eliminate certain positions and reduce the hours of others were elements of a larger proposal geared toward reducing municipal expenses and combating a difficult economy. The Defendant's recommended budget for the fiscal year 2002-2003 represented a challenge for cost containment. *Pls' Ex. 3, pp. 17-18; Mayor's Recommended Operating Budget Message pp. 1-6, Ex. A to Early Affidavit, attached as Ex. 3 to Def.'s 9(c)1 Statement dated 6/1/04 (hereinafter "Early Aff.")*. The difficulty in containing costs stemmed from revenues and unexpected expenses. *Mayor's Recommended Operating Budget Message, pp. 1-6, Ex. A to Early Aff.* The City's loss of revenue resulted from several factors including a decline in revenue from the State of Connecticut; declines in interest rates which lowered the return on invested funds; a reflection of the impact of the recession on permits and fees; and a decline in the percentage of taxes being collected. *Id. at p. 3.*
In order to address the loss of revenue, the Defendant's recommended budget sought to reduce personnel expenses by eliminating positions. *Id. at p. 2.* The Defendant's recommended budget also sought to reduce expenses by recommending the privatization of building maintenance; the consolidation of Adult Day Care and Senior Services; and consolidating office and general supply purchases to a centralized responsibility in order to achieve volume discounts. *Id.* In addition, at the time of the submission of the Defendant's recommended budget, the City was in the process of negotiating with its bargaining units a retirement incentive package to encourage interested and eligible employees to retire. *Id.* A retirement incentive package was subsequently offered to all eligible employees. *Ex. 2 hereto, at ¶ 4.* Twenty-three (23) employees participated the in the retirement incentive package.

4

There is also no dispute that the budgetary process was undertaken in accordance with the City Charter. *Def. Memo., pp. 8-12.* The Plaintiffs admitted as much in their respective depositions. *Ex. 2 to Def. Memo. 6/1/04, Excerpts to Lorusso's Depo., pp. 46, 52-53; Ex. 3 to Def. Memo 6/1/04, Excerpts to Evangelista's Depo., pp. 45-47.* In fact, that the legislative process was followed and that the decision to approve the Mayor's recommendations with respect to the elimination of Lorusso's position and the reduction in hours of Evangelista's position was done in accordance with the controlling provisions of the City Charter is further borne out by the evidence that the City Council entertained motions to "place both jobs [in the registrar's office] back to full time" and to "restore Claims & Loss Coord." *See Ex. 5 hereto.* These motions failed to pass by the requisite majority. *Id.* [1]reinstate the the Because the Plaintiffs cannot establish that there was a gross deviation from the accepted budgetary process, the Defendant may properly invoke legislative immunity.

The Plaintiffs do attempt to make out a claim of procedural irregularity. *Pls. Memo. pp. 18-21.* This claim, however, misconstrues the evidence and manufactures "facts" out of whole cloth. Moreover, even if this speculative conjecture of the Plaintiffs is credited, such a defect would not amount to a deviation great enough to warrant a denial of legislative immunity.

Specifically, the Plaintiffs contend that the Defendant's recommended budget did not propose the elimination of funding for both the Risk Manager and Assistant Purchasing Agent positions or the merger of these two positions into one. *Pls. Memo. pp. 8, 18-19.* From this false contention, the Plaintiffs mistakenly conclude that there was some sort of substitution of a page of the Defendant's recommended budget after the City Council had conducted public hearings. *Pls. Memo. pp. 20, 21.* In

---

[1] At the same time, the City Council entertained a motion to reinstate a number of other positions, among them the position of Clerk Typist in the Corporation Counsel's office, the position occupied by Marge Schenkle's daughter. *See Pls. Memo. at p. 17-18.* Based upon the opinion testimony of Marge Schenkle, Plaintiff's Memorandum of Law apparently contends that the elimination of this position was also retaliatory. *Id.*

support of their speculative argument, the Plaintiffs cite to their Exhibit 37, which is page sixty-four (64) of the Defendant's *recommended* budget. The Plaintiffs falsely state that this portion of the Defendant's recommended budget is "oddly missing from defendant's moving papers with no explanation for how the substitute document submitted to the Court as part of defendant's Exhibit E came about." *Pls. Memo. p. 19.*[2] The Exhibit E to which the Plaintiffs refer is page sixty-four (64) of the City's *approved* budget representing the action taken by the City Council with respect to the Mayor's recommendations.

Contrary to the Plaintiffs' apparent claim, page sixty-four (64) of the Mayor's recommended budget shows the elimination of funding for the position of Assistant Purchasing Agent at the salary of $48,088 and the funding of a new position at the salary of $56,200. *Ex. 3 hereto,* ¶ 6. Although the new position is entitled "Assistant Purchasing Agent" in the Mayor's recommended budget, the approved budget reflects the title of this new position as "Asst. Purch/ Risk Manager". *Id. at* ¶¶ 6,8. Furthermore, City Council was aware of the fact that this new position would combine the functions previously performed by the separate positions of Risk Manager and Assistant Purchasing Agent when the Defendant proposed his recommendations and discussed this issue during the public hearing. *Id. at* ¶ 7. Indeed, if one were to credit Plaintiffs' argument, then the same logic would result in the conclusion that the position of "Risk Manager" was never a funded position since, in both the Defendant's recommended budget and in the approved operating budget, the title of this position is reflected as "Clms. & Loss Coord." rather than "Risk Manager." See *p. 64 of the Mayor's recommended budget and of the approved operating budget, appended to the Early Aff. as Exs. C and E.*

---

[2] In fact, this page was submitted to the Court as part of Exhibit C to the Early Affidavit attached to the Defendant's original 9(c)1 Statement as Exhibit 3 (Exhibit E is likewise an exhibit to the Early Affidavit). The distinction between the two documents is that one is page from the Defendant's recommendations and the other is a page from the City Council approved budget.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

The Plaintiffs also cite to improper hearsay statements of Lorusso as to the budget proceedings of the City Council. *Pls. Memo. p. 20.* Reference to Lorusso's hearsay statements does not, and cannot, refute the overwhelming evidence, as discussed above, establishing that the Defendant's budget proposal was a quintessential legislative act. The Plaintiffs argue that the Defendant's recommendations accompanying his budget proposal did not include any reasons for the elimination of the position "Risk Manager." *Pls. Mem., p. 19.* However, the Mayor's budget message clearly refers to the elimination of positions of employment and the economic justification for these reductions in personnel. *Mayor's Recommended Operating Budget Message, pp. 1-6, Ex. A to Early Affidavit, attached as Ex. 3 to Def.'s original 9(c)1 Statement dated 6/1/04.* Even assuming *arguendo* the Defendant's summary was insufficient, such a defect would not amount to a deviation great enough to warrant a denial of legislative immunity.

Furthermore, the undisputed evidence establishes that the reduction of staff hours in the registrar's office was partly designed to address concerns about how that office functioned and was based on an analysis of staffing levels in other registrars' offices in Connecticut. *Borer depo., Pls. Ex. 7, pp. 131-133, 135, 181-185.* Likewise, it is undisputed that, prior to the 2002-2003 budget proposal, the manner in which the registrar's office functioned had been the subject of a number of complaints to the State Elections Enforcement Commission. *Morrissey depo., Pls. Ex. 5 at pp. 6, 17-21.*

The Plaintiffs cite to their hearsay statements about what the Defendant allegedly said to them in an effort to create an issue of fact with respect to the legislative activity of proposing a budget. *Pls. Memo. at pp.5, 8.* In the same vein, the Plaintiffs cite to statements they claim that others made to them – specifically, Richard Legg, the Finance Director and Ralph DeLucca the retired Director of Personnel and Labor Relations in an apparent effort to create an issue of fact. *Pls. Memo. pp. 6, 12 and note 16.* As noted, however, the law is clear that motive and intent (or the Plaintiffs' claims of motive or intent)

are irrelevant to a determination of legislative immunity. Moreover, the Plaintiffs' retelling of Legg's deposition testimony misstates the whole of his testimony. In addition, DeLucca has denied making the statements that Lorusso attributes to him, *Ex. 2 hereto ¶ 37,* thus they would not constitute the admissions of an agent. The Plaintiffs further suggest that the credibility of Legg and DeLucca is questionable since the Defendant could presumably "concoct" a basis for terminating their employment. *Pls. Memo. note 16.* DeLucca, however, is retired. *Ex. 2 hereto, ¶ 2.* Moreover, pursuant to the City Charter, employees occupying positions such as those of DeLucca and Legg can only be terminated for cause and after an opportunity to be heard. *See Charter of the City of West Haven, attached as Ex. 4 to Def.'s 9(c) 1 Statement dated 6/1/04 at Ch. III, § 4(a).*

The Plaintiffs also have not cited any legal authority that supports their position. The Plaintiffs first contend that the Defendants incorrectly rely upon Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). According to the Plaintiffs, Bogan is distinguishable because the budgetary proposal in that case eliminated more positions than the one prepared by the Defendant. *Pls. Memo., p. 37.* This argument, however, misses its mark.

Bogan sets forth the proper test in determining whether a particular act or decision is legislative in nature and, therefore, afforded the protection of legislative immunity. As discussed in the Defendant's memorandum in support of the motion for summary judgment, the reviewing court employs a functional test to determine whether the nature of the subject action was legislative in nature. Bogan, 523 U.S. at 55; see also Harhay, 323 F.3d at 210-11. In accordance with Bogan, the Defendant has employed such an analysis; *Def. Memo. 6/1/04, pp. 10-12;* and established that the Defendant's actions in submitting a budget proposal to the City Council calling for the elimination or reduction in hours of certain positions is a quintessential legislative act.

Furthermore, the facts in Bogan are quite similar to the present matter. In Bogan, the Mayor for

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

the City of Fall River, Massachusetts, prepared a budgetary proposal calling for the elimination of 135 positions. Bogan, 523 U.S. at 47. In affording the Mayor legislative immunity, the Supreme Court explained that a budgetary proposal requesting the elimination of said positions is different from the "hiring or firing of a particular employee" because it "may have prospective implications that reach well beyond the particular occupant of the office." Id. at 56. In the present matter, the Defendant also prepared a budgetary proposal intended to ease the impact of a difficult economy by, eliminating various positions and reducing hours. Bogan, therefore, is controlling.

The Plaintiffs also refer to several cases applying the Bogan test but rejecting the defense of legislative immunity. *Pls. Mem., p. 38.* The cases cited by the Plaintiffs reject the defense because the challenged act was the termination of a single employee rather than the elimination of that employee's position as part of a legislative cost saving measure. See In re Montgomery County, 215 F.3d 367, 376 (3d Cir. 2000) (holding that legislative immunity does not apply to termination of a single employee); Canary v. Osborn, 211 F.3d 324, 330 (6th Cir. 2000) (holding that refusal to extend employment contract of employee did not constitute legislative act); Katzenmoyer v. City of Reading, Pennsylvania, 158 F.Supp.2d 491, 501 (E.D.Pa. 2001) (concluding that termination of employee was not protected by legislative immunity).[3] Unlike the present matter, the cases to which the Plaintiffs cite did not involve a budgetary decision addressing the overall fiscal concerns of the municipality.

Finally, the Plaintiffs rely on two district court cases wherein the courts concluded that legislative immunity did not apply to municipal acts eliminating a single employee's position. Although these cases involved the elimination of a position as opposed to the termination of an employee, the

---

[3] The Plaintiffs also cite Harhay v. Town of Ellington, 323 F.3d 206 (2d Cir. 2003). That case, however, addressed the decision of a local board of education denying an individual teacher's request to be "reassigned" to a position that was apparently vacant. Id., at 210-11. Harhay did not address the elimination of positions through the budgetary process and, therefore, is distinguishable.

9

entire scope of the subject act focused on one specific person. Such acts are more administrative in nature and, therefore, unprotected by the defense of legislative immunity. See Haniania v. Loren-Maltese, 319 F.Supp.2d 814, 825 (N.D.Ill. 2004); Brennan v. Straub, 246 F.Supp.2d 360, 365 (S.D.N.Y. 2003).[4]

The Defendant's budget proposal differs markedly. First, the proposal impacted seventeen positions whether by elimination or reduction in hours. *Ex. 1 hereto.* Second, as discussed above at pp. 4-5, the proposal included a variety of other cost saving recommendations intended to boost the City's financial situation. The Defendant's goal to effectuate positive economic growth is certainly prospective looking and sufficient justification for the recommendations therein.

The Plaintiffs have failed to adduce any evidence establishing that the Defendant's act of submitting a budget proposal to the City Council was not a quintessential legislative act. Moreover, the Plaintiffs have not cited to any legal authority rendering the defense of legislative immunity inapplicable in this case. Accordingly, the Defendant is entitled to legislative immunity for any of his actions, as alleged by the Plaintiffs, regarding the budgetary process.

C. **The Defendant is Entitled to Summary Judgment on the Plaintiffs' Claims Regarding Unsuccessful Attempts to Bump Into or Bid on Another Position of Employment Since the Defendant's Actions are Protected by Qualified Immunity.**

The Plaintiffs contend that Lorusso's inability to bump into or bid on another position of City employment after the funding for the position of Risk Manager was eliminated was orchestrated by the

---

[4]The Plaintiffs also refer to Massaro v. Allingtown Fire District, No. Civ. 3:02CV537 (PCD), 2002 WL 32500871 (D. Conn. Nov. 22, 2002). That case, however, involved the propriety of a retirement agreement entered into by a municipal official under allegedly false accusations of racism. Without fully addressing the issue, the Court concluded that any agreement regarding the retirement of a single municipal official was more administrative than legislative. Massaro, therefore, has no bearing on the present matter.

Defendant. *Pls. Memo., pp. 29-37*. Likewise, the Plaintiffs contend that Evangelista's loss of health care benefits was a decision of the Defendant separate and distinct from the decision of City Council to reduce the hours of her position below the threshold at which such benefits are available. *Id.* As to the claims concerning Lorusso's efforts to secure alternative municipal employment, the Defendant's actions were objectively reasonable and, thus, are protected by the doctrine of qualified immunity. As to the claims concerning Evangelista's loss of health care benefits, the Defendant is shielded by qualified immunity, because this loss was a consequence of the budget approved by City Council and not, as the Plaintiffs contend, a separate decision on the part of the Defendant.

There are three circumstances under which a municipal official, sued in his individual capacity, may invoke the defense of qualified immunity: (1) if the alleged conduct attributed to the official is not prohibited by federal law; (2) if such conduct is prohibited by federal law, but the plaintiff's right not to be subjected to that type of conduct was not clearly established at that time; or (3) if the defendant's conduct was "objectively reasonable" in light of the legal landscape at that time. Harhay, 323 F.3d 206, 211 (2d Cir. 2003). The third circumstance applies to the present case and, therefore, the Defendant may invoke the defense of qualified immunity.

Summary judgment is an appropriate procedural vehicle for asserting a defense of qualified immunity to claims raised under § 1983. Crawford-El v. Britton, 523 U.S. 574, 600, 188 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[I]f the defendant-official has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Rapkin v. Rocque, 228 F.Supp.2d 142, 145 (D. Conn. 2002) (quotation marks omitted). "This is in keeping with the strong public interest in protecting public officials from the costs associated with the defense of damages actions, which is best

11

served by permitting insubstantial lawsuits to be quickly terminated. . . . The entitlement to qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. (quotation marks omitted).

A defendant-official is entitled to summary judgment on the basis of qualified immunity if he can demonstrate that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff [ ], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." Id. at 148 (quotation marks omitted). The only way a plaintiff can withstand summary judgment is to proffer *particularized evidence* supporting a claim of improper motive. Id. The primary focus of a plaintiff's showing "is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff . . . or to deter public comment on a specific issue of public importance." Crawford-El v. Britton, 523 U.S. at 592.

A review of the Plaintiffs' proffered evidence clearly demonstrates that they have not met their burden in opposing summary judgment. The Plaintiffs have not offered any particularized evidence establishing that the Defendant acted in violation of the First Amendment. Rather, the record shows that the Defendant's actions were objectively reasonable. The Defendant's budgetary proposal, including the elimination of the position of Risk Manager and the reduction in hours of Evangelista's position, constituted a series of recommendations intended to combat a difficult economy. Moreover, the Defendant, and those City officials involved, made reasonable decisions regarding the positions Lorusso attempted to bid for or bump into.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

1. **The Defendant Introduced a Reasonable Budget Proposal that Included, the Elimination of the Funding for Several Positions and the Curtailment of Hours for Others.**

As set forth above at pp. 4-5, the Defendant's budget proposal was designed to combat a difficult economic climate. The Defendant's recommendations called for the elimination of a number of positions and the reduction in hours of others. The budget adopted by the City Council eliminated funding for thirteen (13) positions and reduced funding for four (4) positions from full time to part time.[5] In order to further address the difficult economic climate, in conjunction with the budget proposal, the City also offered a retirement incentive to certain eligible employees. Twenty-three (23) employees opted to take the retirement incentive. *Ex. 2 hereto at ¶ 4.* Contrary to the Plaintiffs' contention, the elimination of funding for Lorusso's position and the reduction in hours of Evangelista's position were not isolated acts, specifically designed to retaliate against them, but were part of a larger budget proposal designed to address the need of the City to reduce costs.

2. **The City Made Reasonable Decisions Regarding the Plaintiff, Sandra Lorusso, and Her Attempts to Bump Into or Bid For Various Positions.**

The position of Risk Manager was governed by the Union Contract. *Ex. 2, ¶ 10.* As a member of Communications Workers of America, AFL-CIO, Local 1103 (herein "the Union"), and pursuant to Article 14 of the collective bargaining agreement between the City and the Union (herein "1103 Contract"), once funding for the Risk Manager position was eliminated, Lorusso had the option to bump into a position occupied by another employee or taking a lay off prior to the effective date of the elimination of the position of Risk Manager. *Id. ¶ 12.* As a member of the Union, and pursuant to

---

[5]The Defendant's recommended budget called for the reduction in hours of three (3) positions. City Council exercised their power to override the Defendant's recommendation and approved the reduction in hours of an additional position, a member of the Mayor's executive staff. *See Exhibit 4 hereto.*

13

Article 37 of the 1103 Contract, Lorusso was also eligible to bid on any open position that was posted for bidding. *Id.* In addition, by virtue of her age and length of service, Lorusso was eligible to apply for the retirement incentive package.

Lorusso opted against taking a lay off or applying for the retirement incentive. *Id.* ¶ *13 and Ex. M thereto.* Rather she sought to bump into the position of Zoning Enforcement Officer and the position of Assistant to the Commissioner of Public Works. *Id.* ¶¶ *15, 22.* [6]The City's decision on Lorusso's inability to bump into each of these positions was objectively reasonable.

In connection with the elimination of the position of Risk Manager, Lorusso met with Ralph DeLucca, the Director of Personnel and Labor Relations for the City on June 21, 2002. *Id. at* ¶ *14.* The date of this meeting was determined, in part, by the relative seniority of Lorusso in comparison to twelve (12) other individuals whose positions were eliminated. *Id. at* ¶ *5.* At this meeting, Lorusso asked to bump into the position of Zoning Enforcement Officer. Pursuant to the City's Bumping Policy in effect as of June, 2002, an employee seeking to bump into a position must have the basic qualifications for the position sought. *Id. at* ¶ *16 and Ex. D thereto.* Pursuant to the Bumping Policy, DeLucca was authorized to determine whether Lorusso was qualified to bump into the position of Zoning Enforcement Officer. As set forth in the job description for this position, code enforcement is one of the duties of the position of Zoning Enforcement Officer. *Id. at* ¶ *17 and Ex. E thereto.* Lorusso makes no claim that she had experience in code enforcement nor is there any evidence that she had such experience. *Id. at* ¶¶*18, 19.*

During her meeting with DeLucca, Lorusso was advised that she was not qualified for the

---

[6]Lorusso claims that her experience as the Mayor's secretary and as Risk Manager render her qualified for these jobs. *Pls. Memo. at pp 10.* Given the divergent duties of and qualifications for these positions, Lorusso apparently believes that her experience renders her the most qualified for all positions of employment with the City.

14

Zoning Enforcement Officer position because she lacked experience in zoning code enforcement. *Id. at ¶ 20.*[7] Contrary to the Plaintiff's assertion, the undisputed admissible evidence establishes that she was informed that she was not qualified for this position because she lacked pertinent experience, not, as claimed by the Plaintiff, because she lacked the pertinent state certification. Furthermore, Lorusso's lack of the appropriate experience is an objectively reasonable basis for denying her this position regardless of her possession or lack thereof of state certification. Other than Lorusso's opinion, there is no evidence whatsoever to suggest that she was denied the ability to bump into the position of Zoning Enforcement Officer as part of some grand scheme to permanently deny her employment by the City.

In addition to the Zoning Enforcement Officer position, Lorusso also sought to bump into the position of Assistant to the Commissioner of Public Works. *Id. at ¶ 22.* In response, Lorusso was advised that she could not bump into this position because she had not yet been afforded her bumping rights; that she would be given these rights according to her seniority; and that the position was not an open position because the job description was in the process of being rewritten. *Id. at ¶ 23.* DeLucca, as the City's Director of Personnel and Labor Relations, handled the rewriting of the job description for the position of Assistant to the Commissioner of Public Works. *Id. at ¶ 24.* He was authorized to rewrite job descriptions by both the 1103 Contract and the City Charter. *Id. at ¶¶ 3, 25.* This process was initiated in approximately mid-May, 2002, after the retirement of the individual who had occupied the position because the old job description no longer accurately reflected the duties of this position. *Id at ¶ 26.* Pursuant to Article 5 of the 1103 Contract, the City has the authority to revise existing job descriptions provided that advance notice is given to the Union and the Union is given the opportunity to request to discuss such changes prior to implementation. *Id. at ¶ 25 and Ex. B thereto.* In other

---

[7]The position of Zoning Enforcement Officer was awarded to Kevin Clark. Kevin Clark previously worked as the Property Maintenance Code Inspector for the City. *Id. at ¶ 21.* In such capacity, he had experience in enforcement work involving the property maintenance code. *Id.; Ex. G thereto.*

15

words, the City cannot unilaterally revise job descriptions. The Union's involvement in this process (and in the process of approving the job description of the new position of Risk/Procurement Manager) is the reason why this job with its new job description was not available for Lorusso to bid on or bump into prior to her effective retirement of July 1, 2002.

The rewritten job description for the position of Assistant to the Commissioner of Public Works was submitted to the Union for its approval on June 18, 2002. *Id. at ¶ 27.* The Union subsequently approved this rewritten job description on July 8, 2002. *Id. at ¶ 28.* Once the rewritten job description was approved by the Union, the position of Assistant to the Commissioner of Public Works was posted for bid on July 9, 2002. *Id. at ¶ 29.* After bidding, the position was awarded to Mark Bisaccia. *Id. at ¶ 30 and Exhibit L thereto.* Because Lorusso had opted to retire as of July 1, 2002, she was no longer an employee of the City at the time the job was posted for bid and was thus ineligible to bid. Had Lorusso opted to take a lay off rather than retire, she would have been eligible to bid on this job. *See 1103 Contract, Ex. B to DeLucca Aff., Art. 14.* As with the position of Zoning Enforcement Officer, there is no evidence other than Lorusso's opinion and speculation, to support the contention that she was improperly denied employment in this position. Indeed, the successful bidder on the job was Mark Bisaccia, who served as the Union representative, and to whom the request was made for approval on behalf of the Union for the rewritten job description. As he was evidently interested in the job, it was in his own best interest to see that the Union approved the new job description expeditiously. Finally, contrary to the Plaintiffs' assertions, there is no evidence to suggest that the Defendant had any knowledge of Lorusso's efforts to obtain the job of Assistant to the Commissioner of Public Works. *Borer depo., Pls. Ex. 7 at p. 100.* The Defendant has testified that his knowledge as to Lorusso's efforts to seek subsequent City employment is limited to the position of Zoning Enforcement Officer and, as to that position, is constricted, at best. *Id. at pp. 100- 104, 173-176.*

16

As with the position of Assistant to the Commissioner of Public Works, the Union's involvement in the process of writing job descriptions is the reason the job of Risk/Procurement Manager was not posted prior to her retirement. Lorusso's election to retire rather than take a lay off is the reason why she was ineligible to bid on the job once it was posted. After the City Council approved the budget and funded the new position of Risk/Procurement Manager, Richard Legg, the Finance Director for the City, prepared the job description for this new position. *Ex. 3 hereto, ¶ 9.* As is evident from a comparison of the new job description with the job descriptions for the eliminated positions of Assistant Purchasing Agent and Risk Manager, the new position reflected duties fairly equally split among the two eliminated positions, *See id. at 9*, and not, as claimed by the Plaintiff, simply a reworking of the job description of Risk Manager. *Pls. Memo at p. 16.* The new job description was submitted to the Union for its approval on June 3, 2002. *See Exhibit J to DeLucca Aff., Ex. 2 hereto.* In accordance with Article 5 of the 1103 Contract, the Union elected to bargain with the City concerning this position and others. *DeLucca Aff., Ex. 2 hereto ¶ 34.* As of June 18, 2002, the City still had not heard from the Union regarding this new job description. *See Exhibit J to DeLucca Aff., Ex. 2 hereto.* The Union did not approve the job description for the position of Risk/Procurement Manager until July 22, 2002. *DeLucca Aff., Ex. 2 hereto ¶ 35.* Once this position was approved by the Union, it was promptly posted for bid on July 23, 2002. *Id. at ¶ 36.* The position was awarded to Carol Silverstein through the bidding process. *See Id. at ¶ 36 and Ex. P thereto.*

Lorusso contends that the decision to permit Silverstein to work after the effective date the position of Assistant Purchasing was eliminated proves retaliatory animus on the part of the Defendant. *Pls. Memo. at p. 12.* This decision, however, was made by the Finance Director without any input from the Defendant. *Legg depo. Pls. Ex. 3 at pp. 35; Borer depo., Pls. Ex. 7 at pp. 96, 98.* The basis for this decision was the Finance Director's belief that the functions of this job be preformed pending Union

17