UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT
(NEW HAVEN)

```
*****************************************
SANDRA LORUSSO and DEBORAH      *   CIVIL ACTION NO.
EVANGELISTA                     *   3:03CV00504 (MRK)
              PLAINTIFFS        *
VS.                             *
H. RICHARD BORER, JR.           *   SEPTEMBER 21, 2004
                                *
              DEFENDANT         *
*****************************************
```

### DEFENDANT'S SUPPLEMENTAL LOCAL RULE 9(C)1 STATEMENT

By motion dated August 12, 2004, the Defendant sought permission to file a supplemental brief in support of his Motion for Summary Judgment to address arguments raised by the Plaintiff in their Memorandum in Opposition to the Defendant's motion, but not originally briefed by the Defendant. The Court granted this motion on August 19, 2004. This supplemental Local Rule 9(c)1 Statement addresses undisputed facts concerning this supplemental argument.

1. In submitting the recommended operating budget of the City of West Haven (hereinafter the "City") to the City Council for budget year 2002-2003, the Mayor was faced with economic challenges. *Legg Depo., Pls'. Ex. 3, pp. 17-18; Mayor's Recommended Operating Budget Message pp. 1-6, Ex. A to Early Affidavit, attached as Ex. 3 to Def.'s 9(c)1 Statement dated 6/1/04 (hereinafter "Early Aff.").*

2. The Mayor's recommended budget reflected the fiscal realities of declining revenues and unexpected expenses. *Mayor's Recommended Operating Budget Message, pp. 1-6, Ex. A to Early Aff.*

3.   The City's loss of revenue resulted from several factors including a decline in revenue from the State of Connecticut; declines in interest rates which lowered the return on invested funds; a reflection of the impact of the recession on permits and fees; and a decline in the percentage of taxes being collected. *Id. at p. 3.*

4.   In order to address the loss of revenue, the Mayor's recommended budget sought to reduce personnel expenses by eliminating positions. *Id. at p. 2.* In addition, at the time of the submission of the Mayor's recommended budget, the City was in the process of negotiating with its bargaining units a retirement incentive package to encourage interested and eligible employees to retire. *Id.*

5.   The Mayor's recommended budget also sought to reduce expenses by recommending the privitization of building maintenance; the consolidation of Adult Day Care and Senior Services; and consolidating office and general supply purchases to a centralized responsibility in order to achieve volume discounts. *Id.*

6.   The operating budget adopted by City Council eliminated funding or resulted in the lay off of thirteen (13) full time positions and the reduction of four (4) full time positions to part time. *Interrogatory and Request for Production Responses and Supplemental Responses, excerpted as Ex. 1 hereto, Responses to Interrogatory #2.*

7.   A retirement incentive package was offered to all members of the bargaining unit. *DeLucca Affidavit, Ex. 2 hereto, at ¶ 4.*

8.   Among the positions eliminated in the Mayor's recommended operating budget were the positions of Risk Manager held by the Plaintiff, Sandra Lorusso, and the position of Assistant Purchasing Agent held by Carol Silverstein. *Mayor's Recommended Operating Budget, Ex. C to*

*Early Aff. at pp. 64 67*[1]

9.  The Mayor's recommended operating budget proposed the elimination of these two positions and the funding of a new position merging the responsibilities of these two jobs. *Mayor's Recommended Operating Budget, p. 64; Affidavit of Richard Legg, Ex. 3 hereto at* ¶¶ 6-7. In the Mayor's Recommended Operating Budget, this new position is entitled Assistant Purchasing Agent. *Legg Aff.* at ¶ 7.

10. The City Council approved this recommendation to combine the responsibilities of these two positions into one position. In the City's approved operating budget this new position is entitled Assistant Purchasing/Risk Manager. *Approved Operating Budget, Ex. E to Early Aff. at p. 64*

11. Subsequent to the City Council's approval of the combination of these two jobs into one, the Finance Director prepared a new job description for a job entitled Risk/Procurement Manager. *Legg Aff., Ex. 3 hereto at* ¶ 9.

12. Pursuant to the contract between the City and the union governing management employees, Communications Workers of America, AFL-CIO, Local 1103 (hereinafter "the Union"), the City is empowered to create job descriptions and revise existing job descriptions as deemed necessary provided the Union is given advance written notice during which time the Union may request to discuss such changes prior to implementation. Upon request, the City shall bargain with the Union concerning the impact which any significant change in job descriptions may have on the terms and conditions of employment. *DeLucca Aff., Ex. 2 hereto at* ¶ 25.

13. The job description for the new position of Risk/Procurement Manager was forwarded to the Union for its consideration on June 3, 2002. *Id. at* ¶ 33.

---

[1] The page numbers for the excerpted portions of both the Mayor's recommended operating budget; (Exhibits A, B and C to the Early Aff.) and the approved operating budget; (Exhibits D and E to the Early Aff.); appear at the center top of each of the pages.

3

14. Subsequently, the Union sought to bargain with the City concerning the impact of this job on the employment of bargaining unit members. *Id. at ¶ 34.*

15. After bargaining over this new position, the Union ultimately approved the job description for the new position on July 22, 2002. *Id. at ¶ 35.*

16. After approval by the Union, the new position was promptly posted for bid on July 23, 2002. *Id. at ¶ 36.*

17. As Sandra Lorusso had retired effective June 30, 2002, she was ineligible to bid on this job. *1103 Contract, Art. 37, Ex. B to DeLucca Aff.*

18. The position was awarded to Carol Silverstein effective August 2, 2002. *Ex. P to DeLucca Aff.*

19. Silverstein was maintained as an employee on the City payroll after the elimination of her position by decision of the Finance Director. This decision was made by the Finance Director without any input from the Mayor. *Legg depo., Pls' Ex. 3, p. 35; Borer depo., Pls'. Ex. 7, pp. 96, 98.*

20. Pursuant to the 1103 Contract, evaluation of the applicants for positions posted for bid is based on seniority, qualifications and required abilities as determined by the Employer. *1103 Contract, Art. 37, Ex. B to DeLucca Aff.* Seniority is not the sole deciding factor. *Id.*

21. The Finance Director made the decision to appoint Silverstein to the job of Risk/Procurement Manager based on her qualifications and experience. *Legg depo., Pls'. Ex. 3, at p. 33.* At the time the Finance Director made this decision, he had been supervising her for over one (1) year. *Legg depo., Pls'. Ex. 3, at pp. 4, 36.*

22. Prior to her retirement, Lorusso sought to bump into the position of Assistant to the Commissioner of Public Works by notifying Ralph Delucca, the Director of Personnel and Labor

4

Relations, in writing. *DeLucca Aff., Ex. 2 hereto, at* ¶ 22.

23.     Lorusso was informed that she was unable to bump into this position because, as of the date of her request to bump into this position, Lorusso had not yet been afforded her bumping rights. *Id. at* ¶23. Bumping rights are afforded in order of seniority. *Id.*

24.     Lorusso was further informed that she was unable to bump into this position because the job description for this position was in the process of being rewritten. *Id.*

25.     The proposed rewritten job description was submitted to the Union on June 18, 2002. *Id. at* ¶ 27.

26.     The Union approved the rewritten job description on July 8, 2002. *Id. at* ¶ 28.

27.     After approval by the Union, the rewritten job description was promptly posted for bid on July 9, 2002. *Id. at* ¶29.

28.     The job was awarded to an individual who was an employee of the City at the time the job was posted for bid. Lorusso was ineligible to bid on this job because it was awarded to an existing City employee. *Id. at* ¶30.

29.     While still employed by the City, Lorusso sought to bump into the position of Zoning Enforcement Officer. *Id. at* ¶15.

30.     Lorusso's request to bump into this position was evaluated by the Director of Personnel and Labor Relations. *Id. at* ¶¶ 16-20.

31.     Despite her long tenure as a City employee, Lorusso had no experience in enforcing or administering the zoning code. *Id. at* ¶ 19.

32.     The Director of Personnel and Labor Relations determined that Lorusso was not qualified for this position based on her lack of experience in enforcing zoning codes. *Id. at* ¶ 20. The individual who was awarded this job had previously served as the Property Maintenance Code Inspector and

5

had experience in administering and enforcing the property maintenance code. *Id. at ¶ 21.*

33. The Mayor's recommended budget proposed the reduction from full time to part time of three positions. *Ex. 4 hereto.*

34. The approved operating budget for the City reduced funding from full time to part time of four positions. *Id.*

35. Among the full time positions reduced to part time were the two Administrative Assistants to the Registrars of Voters. *Id.*

36. Prior to adopting the operating budget, the City Council voted on motions to restore full funding to the positions of the Administrative Assistants to the Registrar of Voters and to the position of Risk Manager. *Ex. 5 hereto.* These motions failed because they did not garner the requisite majority.

37. The positions of Administrative Assistant to the Registrars of Voters were reduced from thirty-five (35) hours per week to nineteen (19) hours per week. *Id., Complaint ¶ 16.*

38. Health care benefits are only available to City employees who work at least 20 hours per week. *Ex. 6 hereto. Complaint ¶ 16; 1103 Contract, Ex. B to DeLucca Aff., Art. 3, Art. 6 § 3.*

39. The elimination of health care benefits to Deborah Evangelista was a function of the fact that City Council voted to reduce her hours below twenty (20) per week. *Complaint ¶ 16.*

40. The Administrative Assistants to the Registrars of Voters are appointed by the Registrar of Voters for their respective parties. *Charter of the City of West Haven, attached as Ex. 4 to Def.'s 9(c)1 Statement dated 6/1/04, at Ch. VIII.*

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

41.  Neither the Mayor nor any of his appointees is responsible for the hiring or the appointment of the Administrative Assistants to the Registrar of Voters. *Id.*

THE DEFENDANT,
H. RICHARD BORER, JR.

By: _____
Jennifer L. Schancupp
Federal Bar No. ct11876
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P.O. Box 1684
New Haven, CT 06507

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this day, via first class mail, postage prepaid, to the following:

Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Paul J. Dorsi, Esq.
Assistant Corporation Counsel
Office of the Corporation Counsel
City of West Haven
355 Main Street
West Haven, CT 06516

_____
Jennifer L. Schancupp, Esq.

I:\Client U_Z\West Haven\Lorusso-Evangelista\Pleadings\Supplemental Local Rule 9 (c)1 statement.wpd

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505