UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SANDRA LORUSSO and
DEBORAH EVANGELISTA

        Plaintiffs

V.

H. RICHARD BORER, JR.

        Defendant

: Civil No. 3:03CV00504 (MRK)

: December 27, 2004

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the colloquy between the Court and counsel at the conclusion of oral argument on December 15, 2004, the plaintiffs submit this supplemental memorandum to address arguments advanced by defendant in respect to the denial to Sandra Lorusso of continued employment in another position after the City Council's passage of a budget in May of 2002. By a reply brief and the submission of an affidavit of Director of Personnel Ralph DeLucca, Jr. dated September 21, 2004, defendant advances the argument that insufficient evidence exists to support a jury's conclusion that defendant is liable for these post-budget deprivations.

The plaintiffs' brief and other opposition materials show that Lorusso was denied or shut out of opportunities for three positions:

    1.    Risk/Procurement Manager;

    2.     Zoning Enforcement Officer; and

    3.     Assistant to the Commissioner of Public Works.

With respect to the first two positions, Risk/Procurement Officer and Zoning Enforcement Officer, there is more than ample evidence to support a jury finding against the defendant on these claims.[1]

The job of Assistant to the Commissioner of Public Works is the only one of the three jobs denied to Lorusso where the Mayor is in a position, as to such denial, to argue the absence of direct or smoking gun evidence linking him to the denial; however, it is well-established in the Second Circuit that smoking gun evidence, which rarely exists in employment cases, is not required as circumstantial evidence will suffice to allow jurors to infer a nexus between the plaintiffs' protected activity and the denial of employment. See e.g. Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (1988). With respect to the Public Works job, defendant has artfully erected a series of what he believes to be liability barriers, to wit: Personnel Director Ralph DeLucca, Jr. as an intervening cause of the deprivation; 2) a need to re-write the description for the job; 3) the necessity of awaiting union

---

[1] The Mayor admitted that he did not give Lorusso the opportunity to continue working past July 1, 2002 and allowed Carol Silverstein to do despite the fact that the jobs of both women were ostensibly eliminated. The Mayor also approved the hiring of Silverstein's newly merged position. See Pltfs.' Exh. 7 at pp. 97-99; see also Pltfs.' Memorandum of Law dated July 22, 2004 at pp. 14-16; 18-22. The Mayor expressly approved the hiring of Kevin Clark into the position of Zoning Enforcement Officer Exh. 7 at pp. 174-175; Pltfs.' Memo. of Law at pp. 22-23.

2

approval of the revised job description; 4) delay in union approval of the description, and a consequent "delay" in the "posting" of the position; and 5) Lorusso's inability to bump into the position because it was posted right after the effective date of her retirement.

A wealth of circumstantial evidence suffices to support a jury conclusion that DeLucca is a mere "legal fig leaf" behind which the Mayor attempts to hide. EEOC v. Boyle, 181 F3d 645, 657 (5th Cir. 1991). This circumstantial evidence was extensively recounted in plaintiffs' July 22, 2004 Memorandum of Law including DeLucca's status as a direct report to the Mayor, a mayoral appointee and one who was privately conveying to Lorusso his sympathy and incriminating statements attributed to the Mayor.

Defendant's ability to state a fact yet nonetheless mislead the Court is evident by the most recent submission of Ralph DeLucca, Jr.'s affidavit of September 21, 2004. He states in Paragraph 2 of the affidavit, that he has since "retired". As expected, defendant uses this to rebut an inference that DeLucca's other statements would be infected by bias and allegiance to the Mayor. With DeLucca "retired", his September 21, 2004 innocent explanations of Lorusso's exclusion from the job are presented as unassailable. In several respects, however, DeLucca's affidavit was crafted and speaks with forked tongue. While it is technically true that he "retired" from the position of Director of Personnel at the end of 2003, he continues to work for the Mayor as the City's Pension Administrator through an employment contract approved by the Mayor. Indeed, he recently received a $4000.00 raise which he could not have gained except by executive authority of the Mayor. See

3

Affidavit of Deborah Evangelista attached hereto as Exhibit A.

As Exhibit A shows, Ralph DeLucca signed an affidavit prepared by defendant's counsel and then, as he did before, speaks to one of the plaintiffs in terms supportive of their cause and further explains how the affidavit was parsed just so, in a manner designed to be hyper-technically true but nonetheless misleading.

That the Mayor had a direct role in excluding Lorusso from the risk manager and zoning job is undisputed, and while the issue of his unlawful motivation is in dispute, there is more than sufficient evidence of an unlawful motive as defense counsel herself conceded at oral argument.[2] The same evidence with respect to Borer's motivation, however, applies with equal force to the circumstances surrounding Lorusso's exclusion from the position of Assistant to the Commissioner of Public Works. The series of events involving the re-write of the job description and the consultation with the union must be viewed against the backdrop of the Mayor's expressed desire to take aim at Lorusso and exact retribution for her refusal to support his candidacy. With that backdrop in mind, the facts surrounding the re-write and the delayed posting of the job are easily desanitized upon consideration of the following.

---

[2] The plaintiffs have since provided to Court with well-established case authority showing the admissibility of incriminating statements made by Ralph DeLucca, Jr. and Richard Legg. See plaintiffs' Opposition to Motion To Strike dated December 15, 2004.

4

Defendant exaggerates the authority of the union to control the appointment to the job. Article 5 of the applicable union contract, which relates to "Management Rights", sets forth the retention of rights by management including the specific right "[[ t]o] select and to determine the number and types of employees required to perform the City's operations". The contract also expressly reserves to management, with defined limitations, the following right:

> To create job descriptions and revise existing job descriptions as deemed necessary provided that the City shall provide the Union with thirty (30) days advance written notice of its intention to revise job descriptions or create new job descriptions during which the Union may request to discuss such changes prior to implementation. Upon request the City shall bargain with the Union concerning the <u>impact</u> *which any significant change in job descriptions may have on employees wages, hours and other terms and conditions of employment.*

See Def's Exh. B at pp. 2-3. (emphasis supplied)

The Management Rights Article closes with the express retention to management of the right "[t]o transfer or reassign employees wherever the City's needs required". <u>Id.</u> at p. 3.

The defendant has exaggerated the Union's role in and control over these management rights. Article 5 of the Contract, which recognizes these traditional management rights, merely allows the union, in the event of the creation of a new job or the revision of a job description, to be given advance notice <u>prior to implementation.</u> Insofar as the union can request to discuss the management decision, its right to bargain with management extends only to the impact of the management action on employees' wages, hours and other terms and conditions of employment. The reason for this is

5

readily apparent. The union and the city negotiate wages for the various positions held by union members. Article 34 of the Contract contains the agreement with respect to wages and incorporates by reference an attached schedule which sets forth the specific wages and salaries that are attendant to each job title. See Def.'s Exh. B at pp. 25; 33-44. If, in mid-contract, there is a new job title, a merged job title or an appreciable difference in the duties of any position in connection with which the parties negotiated appropriate wage rates, then of course the union has the right to reinitiate bargaining with the city with respect to what the job will pay. But Article 5 of the Contract gives the union no say whatever on the job or its title and duties for those matters are reserved to management. Nor does Article 5 grant the union the right to stall or delay implementation of these management rights but only to discuss the changes prior to implementation.

Perhaps of most significance is the undisputed fact that, with respect to the risk management /procurement job, no right of the union was considered an impediment to employment of Carol Silverstein in the merged job title both before and during this same union process. The contradictory behavior is fatal to defendant's cause. Neither defendant nor DeLucca held up Carol Silverstein's employment in the newly merged position while awaiting "union approval" of a job description.

Moreover, a comparison of the preexisting job description for the position of Assistant to the Commissioner of Public Works with the revised job description reveals little meaningful difference between the two. See Def.'s Exh. K. In addition, by his own admission, Ralph DeLucca claims to have "initiated this process in approximately mid-May, 2002". Affidavit of Ralph DeLucca, Jr. at ¶

6

24. Jurors may not find it mere coincidence that the job was not posted until right after the effective date of Lorusso's retirement. Another fact which belies defendant's innocent explanation is that the very union official whom, DeLucca claims, held up the "approval" of the job description (Mark Bisaccia) was the very individual to whom the job was awarded"![3]

Finally, it is undisputed that Mayor Borer knew that Sandra Lorusso wished to transfer into the position of Assistant to the Commissioner of Public Works since Lorusso sent to the Mayor a copy of her June 10, 2002 letter by which she requested the opportunity to bump into the position. See Pltfs. Exhibit 19. Ralph DeLucca, Jr. must have received this letter immediately because he responded the very next day, June 11, 2002. See Def.'s Exh. I. This June 11, 2002 letter, which acknowledges Lorusso's interest in the job, was also copied to Mayor Borer. Noteworthy, it was only after the Mayor and DeLucca became aware of Lorusso's interest in the job that a decision was made to "re-write" the job description. See Def.'s Exh. J (June 18, 2002 letter to Mark Bisaccia enclosing new job description).

The foregoing constitutes ample circumstantial evidence upon which a jury may conclude that the Mayor, acting through his appointee, orchestrated Lorusso's exclusion from the job of Assistant to the Commissioner of Public Works. Despite all of defendant's artful efforts, and aside from all of

---

[3] According to defendant's Exhibit K, Mark Bisaccia approved the job description by writing "OK" on a draft of it under date of July 8, 2002. Shortly thereafter, Bisaccia was awarded the job.

7

the circumstantial evidence surrounding the public works job, Carol Silverstein as before remains the silver bullet. A back and forth process with the union was not needed in order for the Mayor to install Silverstein into the job of Risk Manager/Procurement Officer. When it came to the continued employment of Sandra Lorusso, however, the Mayor and his appointees set up what are patently transparent and artificial barriers.

Thus, defendant's motion, as it relates to the public works position, must be denied.

THE PLAINTIFFS,<br>
SANDRA LORUSSO and<br>
DEBORAH EVANGELISTA<br>
<br>
BY: _____<br>
KAREN LEE TORRE<br>
Fed. Bar No. ct01707<br>
Law Offices of Karen Lee Torre<br>
51 Elm Street, Suite 307<br>
New Haven, Connecticut 06510<br>
Tel. (203) 865-5541<br>
Fax: (203) 865-4844<br>
<br>
Their Attorney

8

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed regular U.S. mail on this 27th day of December, 2004.

Thomas E. Katon, Esq.
Jennifer L. Schancupp, Esq.
Susman, Duffy & Segaloff, P.C.
PO Box 1684
New Haven CT 06507

_____
Karen Lee Torre

9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SANDRA LORUSSO and
DEBORAH EVANGELISTA

       Plaintiffs

V.

H. RICHARD BORER, JR.

       Defendant

Civil No. 3:03CV00504 (MRK)

December 23, 2004

### AFFIDAVIT OF DEBORAH EVANGELISTA

STATE OF CONNECTICUT       )
                                        ) ss: New Haven
COUNTY OF NEW HAVEN       )

    1.    I submit this supplemental affidavit to provide additional information and respond to defendant's reply brief, exhibits and affidavit of Ralph DeLucca, Jr., submitted in support of defendant's pending Motion for Summary Judgment.

    2.    I remain employed on a part-time basis in the Registrars' Office of the City of West Haven. Based on my continuing employment, I can attest to the following facts based upon my personal knowledge.

    3.    I have reviewed the September 21, 2004 affidavit of Ralph DeLucca, Jr. and the defendant's reply brief. Mr. DeLucca's affidavit includes, among other things, the statement that he has since retired as Director of Personnel for the City of West Haven. His affidavit also includes a

variety of statements regarding the alleged circumstances under which Sandra Lorusso was repeatedly denied a bid or transfer into other available city positions.

4. Defendant's reply brief suggests that since Mr. DeLucca "retired" in 2003, his statements regarding Sandra Lorusso's efforts to remain employed would not shaded or slanted because of self-interest or allegiance to Mayor Borer.

5. Mr. DeLucca's statement is true only in the most technical sense. Mr. DeLucca did retire as Personnel Director but remains employed by the City of the New Haven as its Pension Administrator pursuant to an employment contract awarded to him by Mayor Borer.

6. On December 9, 2004, Mr. DeLucca visited me while I was on duty and in my office. We discussed his affidavit of September 21, 2004, I questioned in particular the statements he makes in Paragraph 38 of the affidavit. In that paragraph, Mr. DeLucca purports to deny Sandra Lorusso's statements set forth in Paragraph 13 of her own affidavit of dated July 20, 2004.

7. Mr. DeLucca stated that the affidavit was crafted by defense counsel in a narrow manner and while the statements in paragraph 38 are technically true, if he were to testify at trial, he will admit that he did in fact make the statement which Sandra Lorusso attributed to him but explain that Mayor Borer did not make these remarks directly to him. Instead he explained, this information was supplied to him by Mayor Borer's Finance Director, Richard Legg.

8. During this same conversation, Mr. DeLucca also advised me that this month (that is, December, 2004), he was given a $4000.00 raise in the salary he enjoys as Pension Administrator.

2

my familiarity with the budget process, this raise was not specifically appropriated by the City Council during its budget proceeding in May of 2004. This recent raise could only have been awarded by executive order of the Mayor.

*Deborah Evangelista*
DEBORAH EVANGELISTA

Sworn and subscribed to before me
this 23RD day of December, 2004.

*Crystal Moffatt-Tsoukalas*
Crystal Moffatt-Tsoukalas
Notary Public
My Commission Expires: 5-31-09

3