UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*******************************
SANDRA LORUSSO and DEBORAH    *   CIVIL ACTION NO.
EVANGELISTA                   *    3:03CV00504 (MRK)
                              *
              PLAINTIFFS      *
VS.                           *
H. RICHARD BORER, JR.         *   AUGUST 9, 2005
              DEFENDANT       *
*******************************
```

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW

**I.     INTRODUCTION**

Pursuant to Fed. R. Civ. P. 50 (a), Defendant in the above-captioned matter hereby moves for the entry of judgment as a matter of law in his favor and against Plaintiffs on the ground that any actions that may be attributable to Defendant are protected under the doctrine of qualified immunity. Plaintiffs have failed to prove that such actions, if any, were not objectively reasonable.

A review of Plaintiffs' proffered evidence clearly demonstrates that Plaintiffs have not met their burden in overcoming the defense of qualified immunity. Plaintiffs have not offered any particularized evidence establishing that Defendant acted with an unlawful motive and in violation of their rights as to the post-budget conduct at issue. Rather, the record shows that, to the extent the Mayor was involved in any such conduct, his actions were objectively reasonable. Moreover, the City officials who were actually involved made reasonable decisions regarding the re-employment of Lorusso and the "refusal" to reinstate Evangelista's benefits. Even if the independent actions of these officials could be imputed to Defendant, he would still be protected under the doctrine of qualified immunity. Thus, Defendant is entitled to judgment as a matter of law.

## II. STANDARDS OF LAW

### A. Standard of Review

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000), citing Fed. R. Civ. P. 50 (a).[1] The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56 and, therefore, the inquiry under each rule is the same. Id. at 150. Accordingly, when considering a motion made under Rule 50, the court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, but make no credibility determinations or weigh any evidence. Id. Although the court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Id. at 151. Nevertheless, the court should give credence to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id.

### B. Qualified Immunity Standards

There are three circumstances under which a municipal official, sued in his individual capacity, may invoke the defense of qualified immunity: (1) if the alleged conduct attributed to the official is not prohibited by federal law; (2) if such conduct is prohibited by federal law, but the plaintiff's right not to be subjected to that type of conduct was not clearly established at that time; or

---

[1]Fed. R. Civ. P. 50 (a) provides: "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

(3) if the defendant's conduct was "objectively reasonable" in light of the legal landscape at that time. See Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 211 (2d Cir. 2003); Rapkin v. Rocque, 228 F.Supp.2d 142, 145 (D. Conn. 2002). The third circumstance applies to the present case and, therefore, the Defendant may invoke the defense of qualified immunity.

A motion for judgment as a matter of law is an appropriate procedural vehicle for asserting a defense of qualified immunity to claims raised under § 1983. See Crawford-El v. Britton, 523 U.S. 574, 600, 188 S.Ct. 1584, 140 L.Ed.2d 759 (1998). If a defendant-official has made a properly supported motion, a plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving an improper or unlawful motive. See Rapkin v. Rocque, 228 F.Supp.2d 142, 145, 148 (D. Conn. 2002). "This is in keeping with the strong public interest in protecting public officials from the costs associated with the defense of damages actions, which is best served by permitting insubstantial lawsuits to be quickly terminated. . . . The entitlement to qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." (Internal quotation marks omitted.) Id.

A defendant-official is entitled to judgment on the basis of qualified immunity if he can demonstrate that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to [the plaintiff,] could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." (Internal quotation marks omitted.) Id. at 148. The only way a plaintiff can withstand judgment is to proffer *particularized evidence* supporting a claim of improper motive. See id. The primary focus of a plaintiff's showing "is not on any possible

3

animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff . . . or to deter public comment on a specific issue of public importance." Crawford-El v. Britton, 523 U.S. at 592.

### III.    ARGUMENT

#### A.    Defendant Is Entitled to Judgment Because Plaintiffs Proffered No Evidence That Defendant Took Or Omitted To Take Any Post-Budget Actions That Were Not Objectively Reasonable

There is a dearth of evidence indicating that Defendant had any involvement with the alleged post-budget actions.  To the extent that Plaintiffs have shown that Defendant had any connection whatsoever with the post-budget events, no reasonable jury could find that these "actions" were not objectively reasonable.  Moreover, Plaintiffs have failed to identify any affirmative evidence from which a jury could find that they have carried their burden of proving an improper or unlawful motive on the Mayor's part in relation to the post-budget conduct at issue.

Plaintiffs' evidence demonstrated, at best, only four instances tying the Mayor to the post-budget conduct at issue in any way.  The first instance occurred when Lorusso unsuccessfully attempted to bump into the position of Zoning Enforcement Officer.  After Personnel Director DeLucca informed Lorusso that she was not qualified for the position, he notified the Mayor that he declined to bump Lorusso into the job.  There is no indication that the Mayor responded at all to DeLucca's notification. See Exs. 5 & 512; Trial Transcript 8/3/05 ("TT1") at 88-91; Trial Transcript 8/4/05 ("TT2") at 137-143, 188-189; Mayor's Testimony.  This was objectively reasonable for several reasons.  First, it is undisputed that the determination of whether Lorusso was qualified for this position fell squarely under DeLucca's authority. See Exs. 4 & 502; TT1 at 166; TT2 at 139, 186. Second, DeLucca made the decision to deny Lorusso's bumping request without

4

any input from the Mayor. TT2 at 139. This denial makes sense, of course, because Lorusso admits she lacked three of the qualifications required for the job in its description. See Ex. 503; TT1 at 170-171. In light of these facts, it would be manifestly unreasonable for a jury to find that the Mayor failed to act in an objectively reasonable manner or that Plaintiffs had shown any improper motive.

      The second and third instances occurred in relation to the Assistant to Commissioner of Public Works ("Assistant") position. By letter dated June 10, 2002, Lorusso sought to bump into or bid on the Assistant position. Although this letter was sent to DeLucca and the Mayor's office, Lorusso admitted that she did not expect the Mayor to get involved. See Exs. 9 & 508; TT1 at 97, 106-107, 171-172, 191. The Assistant job was not posted at that time, however, because DeLucca was awaiting union approval of a new job description, which had been submitted to the union on June 18, 2002. See Exs. 7 & 510; TT2 at 146-147, 191-192, 194-195. The union elected to bargain over this position. Accordingly, on June 11, 2002, DeLucca informed Lorusso that the position would not be open or posted for union members until its description, which was being rewritten to address union concerns, was approved. This letter was also copied to the Mayor's office, but Lorusso admitted the Mayor never contacted her about her efforts. See Exs. 10, 14 & 509; TT1 at 107-109, 172-173, 188; TT2 at 153, 171-172, 191-194, 219-221. In fact, Lorusso admitted that she knew that the description for this position was being rewritten and, therefore, she had no hope that the approval process would be completed before July 1, 2002. See Exs. 11 & 513; TT1 at 112-113. There again is no indication from the evidence that the Mayor responded to or even read these letters. Given Lorusso's admissions and the fact that it was the union that was delaying the posting of this position, a reasonable jury would not be able to find that the Mayor was not acting with objective reasonableness.

Finally, the evidence indicates a fourth instance in which the Mayor was notified of an action after it had occurred in relation to the Risk /Procurement Manager ("Manager") position. Despite the fact that Carol Silverstein's position was eliminated and DeLucca advised him to lay her off, Finance Director Richard Legg permitted Silverstein to remain on the payroll after July 1, 2002, to perform the duties of the new, budget-approved Manager position. When Legg did this, he acted alone. After the start of the new fiscal year, Legg advised the Mayor that he had permitted Silverstein to continue working. See Exs. 14, 17 & 511; TT1 at 116, 120, 123-124: TT2 at 60, 62, 69-72, 74, 98-99, 110-111, 115, 122-123, 160-161, 199-200, 229. In late July 2002, the union finally approved the job and it was posted. See Exs. 15, 16, 18, 510, 518, 519 & 523; TT1 at 117, 120-122, 124-125; TT2 at 108, 202. Thereafter, Carol Silverstein won the job through the normal course based on her qualifications. See Exs. 19, 520 & 525; TT1 at 126-127; TT2 at 63-64, 73-78, 109, 112, 114, 200-201; Mayor's Testimony.

As with the prior instances, there is no indication that the Mayor responded to these events. It does not follow, however, that the Mayor's forbearance was not objectively reasonable. Here, Legg placed great importance on the duties of the risk manager, which needed to be performed. Because the union had delayed approval of the new job, however, Legg tapped Silverstein to perform these functions after July 1, 2002, with the idea in mind that she could be an ideal candidate for the position. Moreover, it is undisputed that Lorusso's seniority over Silverstein would not have allowed her to trump Silverstein's superior qualifications. Thus, the Mayor had no reason not to allow Silverstein to remain in place. Moreover, this is not a case where one could reasonably find an improper motive because the Mayor was notified of Legg's conduct prior to July 1, 2002, after which date Silverstein continued to work despite having no official position. To the contrary, there is no evidence showing that the Mayor had any knowledge of Legg's conduct at any time prior to

the start of the new fiscal year.  Under these circumstances, no reasonable jury could find that the Mayor acted with an improper motive.

Finally, it should be noted that the Mayor had no involvement whatsoever with the "failure" to reinstate Evangelista's lost benefits.  Evangelista has admitted that after making certain comments to the Mayor at a City Council meeting in May, 2002, she never spoke to the Mayor again, especially concerning her benefits.  See TT1 at 201-202; TT2 at 5, 17; Mayor's Testimony.  Instead, she directed her efforts at reinstating her benefits toward DeLucca.  She never asked the Mayor to reinstate her benefits.  See Exs. 23 & 24; TT1 205-210; TT2 at 13-14, 204-205.  Further, Evangelista fails to allege such conduct in her complaint, which, in the first instance should defeat her claims. See, e.g., Martinez v. New York State Department Of Correctional Services, 1997 WL 129386, *2 (N.D.N.Y. 1997) (granting summary judgment in favor of defendant government official and dismissing complaint where complaint contained no allegation that defendant was personally involved in alleged Section 1983 violation or that defendant had knowledge of plaintiff's appeals as to grievance concerning medical care).  Accordingly, no reasonable juror could find that the Mayor was not objectively reasonable in relation to Evangelista's claim.

    **B.    Defendant is Entitled to Judgment Even If The Independent Actions Of His Subordinates Are Attributed To Him Because Such Actions Were Also Objectively Reasonable**

Plaintiffs, of course, are not permitted to hold Defendant liable vicariously or upon a *respondeat superior* theory.  See Soto v. Schembri, 960 F.Supp. 751, 756 n.3 (S.D.N.Y. 1997).  Even if Plaintiffs could attribute the actions of Defendant's subordinates to him, however, Defendant would be entitled to judgment as a matter of law because those actions were objectively reasonable and do not evidence an unlawful motive on the part of the Mayor.  In fact, the great

7

weight of the evidence demonstrates that Plaintiffs' own decisions following the budget process lead to the results of which they complain here. Accordingly, Plaintiffs have not met their burden and Defendant is protected under the doctrine of qualified immunity.

    **1.**    **Lorusso's Claims**

    **a.**    **Zoning Enforcement Officer Position**

On June 11, 2002, Personnel Director Ralph DeLucca advised Lorusso that her job was eliminated and that her decisions during the bumping process would determine her future. See Exs. 2 & 534; TT1 at 85; TT2 at 137. Lorusso informed DeLucca she would refuse a buy out, although it was one of the best ever offered by the City. See Ex. 536; TT1 at 69, 168-169; TT2 at 96, 203-204. Instead, she chose to exercise her bumping and bidding rights in an attempt to obtain a new job before July 1, 2002, when she would either have to take a layoff or retire. TT1 at 94, 169.

The city's bumping policy provided that a bumping employee must have more seniority than the employee being bumped, the bump must be to a lateral or lower job classification and the bumping employee must meet the job's basic qualifications. If an employee does not meet the qualifications, no bump occurs and the employee may consider bumping into another position. DeLucca, as the Personnel Director, was empowered to solely determine whether an employee met a job's basic qualifications. See Exs. 4 & 502; TT1 at 86-87, 166; TT2 at 135-136, 186.

On June 21, 2002, Lorusso met with DeLucca and a union representative, was given her bumping rights and was told she could bump into positions for which she was qualified. Despite her lack of qualifications, Lorusso requested to bump into the position of Zoning Enforcement Officer. When determining whether to allow Lorusso to bump into the job, DeLucca viewed her qualifications in comparison to the job's description only. Among other requirements, the job description required one to be a state certified Zoning Enforcement Official and to have training in

law enforcement and code enforcement. DeLucca told Lorusso she was not qualified for this position. He then explained to her and informed her in writing that she could retire or take a layoff. Lorusso elected retirement effective June 30, 2002. Lorusso admits that she lacks the required certification and has no training in law enforcement or code enforcement. See Exs. 5, 6, 11, 503, 512 & 513; TT1 at 88-91, 106, 162, 169-171; TT2 at 137-143, 188-189; Mayor's Testimony.

This evidence can in no way be construed by a reasonable jury to find that DeLucca's acts were not objectively reasonable. Quite simply, DeLucca compared Lorusso's experience with that which was necessary for the position. He then acted within his authority to deny her the position when it appeared she lacked the required experience. No hint of an unlawful motive is found here and, thus, no such motive can be attributed to the Mayor.

      **b.**     **Assistant To Commissioner of Public Works Position**

Similarly, DeLucca and Farris' actions were within their authority and objectively reasonable in every respect with regard to the Assistant position. Under the union contract, an employee could bid in writing on an open and posted position based on seniority and whether they possessed a position's required qualifications. Only if no union member bid on a posted position could a non-employee seek it. See Ex. 501; TT1 at 166, 169-170; TT2 at 136. The City Charter and the union contract, however, grant DeLucca the authority to make up and issue all job descriptions. See Exs. 29 & 501; TT1 at 111, 170; TT2 at 186. Nevertheless, by contract and custom, DeLucca could not post jobs for union members to bid on until he obtained union approval of any rewritten positions after the union had the opportunity to bargain on the impact of any changes. See TT2 at 216-221.

DeLucca operated within these constraints as to the Assistant position without any input from the Mayor. On June 10, 2002, Lorusso sought to bump into or bid on the Assistant position. See Exs. 9 & 508; TT1 at 97, 106-107, 171-172, 191. The Assistant job was not posted at that time,

however, because DeLucca was awaiting union approval of a new job description, which had been submitted on June 18, 2002.  See Exs. 7 & 510; TT2 at 146-147, 191-192, 194-195.  Accordingly, on June 11, 2002, DeLucca informed Lorusso that the position would not be open or posted until its description, which was being rewritten to address union concerns, was approved.  See Exs. 10, 14 & 509; TT1 at 107-109, 172-173, 188; TT2 at 153, 191-194, 219-221.  On June 18, 2002, DeLucca requested that the union approve the description so he could post it as quickly as possible.  See Ex. 510; TT2 at 154-155.

Arthur Farris, then the Commissioner of Public Works, acceded to the rewriting of the position.  See Exs. 29 & 501, TT1 at 59; TT2 at 148-151, 230, 235.  Farris was under no pressure to fill the job quickly because Mary Annunziata, although retired, performed the duties of the job as a paid consultant while its description was being processed.  See Ex. 8; TT1 at 103-104; TT2 at 145; TT2 at 151, 235, 237.  On July 10, 2002, Lorusso informed DeLucca she was interested in the job despite her retirement, but he did not share her interest with Farris.  Lorusso simply was unable to bid on the job because it was not posted prior to her retirement, which, by her own request, was effective June 30, 2002.  In fact, Lorusso admitted that she knew that the description was being rewritten and she had no hope that approval would occur before July 1, 2002.  See Exs. 11, 12 & 513; TT1 at 106, 112-113, 116, 127; TT2 at 153-154, 167, 169-171, 224.

After the rewritten job description was approved on July 8, 2002, the Assistant position was posted on July 9, 2002.  Lorusso did not bid on the position, was not invited to interview for it and was not contacted by DeLucca or the Mayor about the job.  See Exs. 20, 510 & 514; TT1 at 106, 109, 115, 174, 177-178, 188; TT2 at 154.  Farris interviewed four union members at DeLucca's direction.  See Ex. 515; TT2 at 156, 166, 196.  Effective August 5, 2002, Farris awarded the position to Mark Bisaccia, who he felt was best qualified for the position.  Bisaccia also had more

seniority than Lorusso, which would have been the controlling factor here had Lorusso been eligible to bid. In any event, Farris acted without input from the Mayor or anyone else. DeLucca then signed off on the posting of this result. See Exs. 21, 501, 516 & 517, TT1 at 109-110, 178, 179; TT2 at 155, 197; Farris' Testimony.

Here, DeLucca and Farris followed the normal union procedures in relation to the rewritten job descriptions. Under his authority to do so, DeLucca rewrote the position to address outstanding division of labor issues with the union. He felt this was the best time to rewrite the position because a new person would be coming into the job due to Annunziata's retirement and it was easier to rewrite a position when no one was currently in it. See TT2 at 191-192. Nonetheless, neither DeLucca nor Farris controlled the union process that delayed the posting until after Lorusso voluntarily retired. Once the job was posted, it was filled in the normal way through the bidding process. Even if Lorusso had been eligible to bid on the position, however, she would not have gotten it because Bisaccia held seniority over her. Thus, the fact that Annunziata performed the duties of the post after she retired and during the rewriting process in of no importance because as soon as the rewritten position was approved and posted, eligible employees were allowed to bid on it. As such, a reasonable jury would be required to find that the acts in relation to the Assistant position were objectively reasonable.

        **c.**     **Risk / Procurement Manager Position**

The evidence also shows that Finance Director Richard Legg acted in an objectively reasonable manner in relation to the Manager position, despite Lorusso's claim that she was unfairly prevented from obtaining this position due to Legg's decision to retain Silverstein beyond July 1, 2002. As such, attributing these acts to the Mayor would not preclude him from enjoying qualified immunity.

During the budget process, the Mayor directed Legg to combine the duties of the assistant purchasing agent, Carol Silverstein, with Lorusso's eliminated risk manager position. Silverstein's job also had been eliminated but was replaced in the budget with a higher paying one in anticipation of the combined position. This new job was accidentally titled by the same name as Silverstein's former position in the rush to assemble the proposed budget. Subsequently, the job was renamed to reflect the combined duties. In May 2002, after he knew the Manager position had been approved in the budget, Legg drafted a description for the merged position and submitted it to personnel, which sent it to the union for approval on June 3, 2002. Lorusso never sought to bid on the new Manager position. See Exs. 13, 14, 16, 28, 505 & 511; TT1 at 84-88, 116, 123-124, 128-130; TT2 at 60-61, 65-67, 98-99, 102, 109-110, 198.

The union elected to bargain over this position, and on June 26, 2002, it allowed 30 additional days to begin negotiations. Accordingly, the new job was not posted due to union delays. Despite the fact that Silverstein's position was eliminated and DeLucca advised him to lay her off, Legg permitted Silverstein to remain on the payroll after July 1, 2002. Legg asked Silverstein to perform the duties of the merged position, with some training by Lorusso, while the job description was processed. After having reached his agreement with Silverstein, Legg advised the Mayor that he had permitting Silverstein to continue working. Legg did not invite Lorusso to stay on or to be considered for the new position. See Exs. 14, 17 & 511; TT1 at 116, 120, 123-124: TT2 at 60, 62, 69-72, 74, 98-99, 110-111, 115, 122-123, 160-161, 199-200, 229.

On June 18, 2002, DeLucca reminded the union that he still needed approval of the description for the Manager position. On July 22, 2002, the union approved the job and it was posted by July 23, 2002. On August 1, 2002, DeLucca informed Lorusso of these developments. See Exs. 15, 16, 18, 510, 518, 519 & 523; TT1 at 117, 120-122, 124-125; TT2 at 108, 202. Carol

Silverstein and Carl Guarnieri responded to the posting and were interviewed for the job. See Ex. 520; TT2 at 73, 75-76, 112, 200-201.  Lorusso admitted she was not entitled to bid on this position because she had retired before it was posted and that she never spoke to the Mayor about the job. See TT1 at 125, 135-136, 181, 188; TT2 at 76.  Neither the Mayor nor anyone else told Legg not to consider Lorusso for the job or how to fill it.  In any event, Legg simply never considered Lorusso for the position because he believed she was not qualified.  Moreover, Lorusso never applied for the job after it was posted.  Ultimately, Legg chose Silverstein for the position based on her strong qualifications, which include a bachelor's degree in economics, a masters' degree in management and six years of significant purchasing experience.  Thus, even if Lorusso could have bid, Silverstein's qualifications far outweighed those of Lorusso and Lorusso's seniority over Silverstein would not have aided her.  DeLucca posted the result on August 2, 2002.  See Exs. 19 & 525; TT1 at 126-127; TT2 at 63-64, 75, 77-78, 109, 114; Mayor's Testimony.

   Under the circumstances, this evidence fails to show that Legg acted in manner that was not objectively reasonable.  First, the evidence supports a finding that the job rewrite and Lorusso's retirement were the legitimate reasons for Lorusso's failure to secure this position.  It is also undisputed that DeLucca timely submitted the description to the union, but was required to wait for approval before posting the position.  Moreover, Legg placed great importance on the duties of the risk manager, which needed to be performed.  Because the union had delayed approval of the new job, however, Legg tapped Silverstein to perform these functions after July 1, 2002.  This comports with DeLucca's testimony that if the union took too long to approve a needed job, the City would fill it first and let the union challenge the action later.  See TT2 at 218-220.  Legg is not required to allow the union to completely halt the important duties of his department.  Under these facts, therefore, a reasonable juror would not be able to conclude that Legg's actions were not objectively

13

reasonable where Legg needed a qualified employee to fill in until the job was approved and posted. Consequently, attributing these acts to the Mayor would not deprive him of qualified immunity.

### 2. Evangelista's Claim

In addition, there can be no doubt that DeLucca actions with respect to Evangelista's efforts to reinstate her benefits were objectively reasonable. Under a 1996 resolution of the City Council, appointed employees who worked less than 20 hours per week, such as Evangelista and her counterpart, Joann Mapes, were not entitled to such benefits. Thus, because the budget cuts resulted in a reduction in her hours, Evangelista and Mapes lost their benefits. See Exs. 501, 529 & 531; TT1 at 78, 203; TT2 at 12, 84. On June 13, 2002, Evangelista requested information from DeLucca about the impact of the budget cuts on her hours and benefits. On June 17, 2002, DeLucca informed her that her hours would be reduced to 19 hours per week and she would lose her benefits under the city resolution. Evangelista also requested documents from the City concerning the West Haven Economic Development Corporation ("EDC") because two EDC employees were receiving benefits via contracts with the City. Evangelista admits, however, that the EDC is a private organization, whose positions are not City positions. Finally, Evangelista asked DeLucca if she could forego a pay increase and work an extra hour to get benefits. DeLucca said it was not possible because he had no authority to grant the request. Evangelista never approached the Mayor, however, about reinstating her benefits. While she directed all her efforts in that regard to DeLucca, she also admits that DeLucca cannot override the acts of the City Council. See Exs. 23, 24, 25 & 26; TT1 205-212; TT2 at 13-15, 85-90, 204-205.

This evidence shows clearly that DeLucca had to refuse Evangelista's request because it violated the 1996 City Council resolution. See Ex. 529. No reasonable jury could find that a decision not to violate the resolution was not objectively reasonable, especially where that decision

14

was independently made and made in accordance with the clear intent behind the Council's Resolution to not offer benefits to appointed employees, such as Evangelista, who worked less than 20 hours per week. Thus, even if DeLucca's independent decision is foisted upon the Mayor, it cannot become the basis for any liability. Moreover, the fact that EDC employees received benefits has no impact here. It would be improper to superimpose this arrangement onto the context of Evangelista's situation, especially where Plaintiffs have not alleged or shown that the Mayor or the City acted improperly in granting benefits to EDC employees. Accordingly, this evidence fails to demonstrate that the Mayor cannot enjoy qualified immunity.

## IV.   CONCLUSION

Based on the foregoing, and pursuant to Fed. R. Civ. P. 50 (a), judgment as a matter of law should enter in Defendant's favor and against Plaintiffs because the parties have been fully heard and Plaintiffs have failed to adduce sufficient particularized evidence to prove that any actions taken by the Mayor or his subordinates were not objectively reasonable. As a result, there is no legally sufficient evidentiary basis for a reasonable jury to find in their favor upon their claims. Accordingly, Defendant is protected from these claims under the doctrine of qualified immunity.

THE DEFENDANTS,
CITY OF WEST HAVEN AND
H. RICHARD BORER, JR.


By:_____
Jennifer L. Schancupp
Federal Bar No. ct11876
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P O Box 1684
New Haven, CT 06507

15

                    Phone: (203) 624-9830
                    Fax:   (203) 562-8430
                    Email: jschancupp@susmanduffy.com

## CERTIFICATION

This is to certify that a copy of the foregoing was hand-delivered or mailed this day, via first class mail, postage prepaid, to the following:

| Counsel for the Plaintiff | Co-Counsel for the Defendants |
|---|---|
| Karen Lee Torre | Paul J. Dorsi, Esq. |
| Law Offices of Karen Lee Torre | Assistant Corporation Counsel |
| 51 Elm Street, Suite 307 | Office of the Corporation Counsel |
| New Haven, CT 06510 | City of West Haven |
| | 355 Main Street |
| | West Haven, CT 06516 |

_____
Jennifer L. Schancupp

I:\ATPK\Lorusso v. Borer\West.Haven.Lorusso.Memorandum.Of.Law.Supporting.Second.Motion.For.Judgment.Matter.Of.Law.FINAL.8.8.05wpd.wpd

17