UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

*******************************

SANDRA LORUSSO and DEBORAH　　*　CIVIL ACTION NO.
EVANGELISTA　　　　　　　　　　　*　3:03CV00504 (MRK)
　　　　　　　　　　　　　　　　　*
　　　　　　　　　PLAINTIFFS　　　*
VS.　　　　　　　　　　　　　　　*
H. RICHARD BORER, JR.　　　　　　*　DECEMBER 19, 2005
　　　　　　　　　DEFENDANT　　　*

*******************************

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT

## I.     INTRODUCTION

The Plaintiffs, Sandra Lorusso and Deborah Evangelista, brought this action, alleging violations of their First Amendment rights and seeking damages under 42 U.S.C. § 1983, against the Defendant, H. Richard Borer, Jr., in his individual capacity.  The action was tried to a jury starting on August 3, 2005.  On August 11, 2005, the jury returned a verdict in the Defendant's favor.  *Docket # 104.*  In doing so, the jury answered specific interrogatories as to each plaintiff about the primary elements of the case and the Defendant's affirmative defense.  All answers were in the Defendant's favor.  *See Verdict Form at 2, 5.*[1]  Judgment entered on August 12, 2005.  *Docket # 104.*  On August 26, 2005, the Plaintiffs filed a Rule 59 motion seeking a new trial on the grounds that the verdict was against the weight of the evidence.  *Docket # 105.*  That motion is pending.

In yet another effort to second guess the verdict, on October 19, 2005, the Plaintiffs filed a motion purportedly pursuant to FED. R. CIV. P. 60(b)(2) on the grounds of newly discovered evidence of perjury by Ralph DeLucca, Jr., a witness who testified for both the Plaintiffs and the Defendant.  In

---

[1] The jury found (1) neither Lorusso nor Evangelista suffered an adverse employment action; (2) the Plaintiffs' protected conduct was not a substantial or motivating factor behind the Defendant's alleged actions, and; (3) the Defendant proved by a preponderance of the evidence that he would have taken the same actions against the Plaintiffs regardless of their protected conduct.  *See Verdict Form at 2, 5.*

support of their motion, the Plaintiffs submitted a memorandum of law and three exhibits including: (1) an affidavit from John Pascale; (2) an affidavit from Deborah Evangelista; and (3) a purported transcript of an alleged conversation between Evangelista and DeLucca, which the Plaintiffs contend proves the alleged perjury (the "Recording").[2] Because the Plaintiffs have failed to provide a proper basis for the exceptional relief requested, their motion should be denied.

Specifically, even assuming DeLucca furnished the false testimony alleged, the motion is an untimely, impermissible attempt to circumvent the strictures of FED. R. CIV. P. 59, which alone warrants its denial.  In addition, the Plaintiffs' evidence of so called perjury is (1) not truly newly discovered and could have been found by due diligence prior to filing the Rule 59 motion; (2) immaterial to the core issues of the case such that it would not have affected the outcome; and (3) merely impeaching and cumulative.  Thus, the Plaintiffs' motion should be denied for failure to satisfy the requirements of Rule 60(b)(2).

## II.     ARGUMENT

### A.     The Plaintiffs' Motion Is an Untimely and Improper Attempt to Circumvent Rule 59 Because the So Called Perjury Was Known by the Plaintiffs Prior to Filing their Rule 59 Motion.

The Plaintiffs' motion is an improper attempt to circumvent the strict ten day time limit for seeking relief under Rule 59.  Plaintiffs, by their own admission, were aware of the so called perjury prior to filing their Rule 59 motion.  They are, therefore, precluded from relief under Rule 60(b)(2). Rule 60(b)(2) provides that a motion for relief from judgment may be made based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 59(b) provides that "[a]ny motion for a new trial shall be filed no later than

---

[2]  The Defendant does not concede the authenticity, accuracy or reliability of the Recording and reserves his right to challenge it on these or any other pertinent grounds.

10 days after entry of the judgment." Because judgment entered on August 12, 2005, the Plaintiffs had until August 26, 2005, to file a Rule 59 motion. *See* FED. R. CIV. P. 6(a). Rule 60(b)(2) does not afford a means to circumvent the jurisdictional time limits of Rule 59(b). *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir. 2000).

In her affidavit, Evangelista admits that she was aware of DeLucca's alleged admission of perjury to Pascale on or about August 25, 2005, or prior to the August 26, 2005 deadline the Plaintiffs faced for filing their Rule 59 motion. *See Pascale Aff. at ¶¶ 3-6; Evangelista Aff. at ¶ 3; Pls' Memo at 1-3.* Evangelista also admits that she was aware of DeLucca's so called perjury on the day he testified at trial. *See Evangelista Aff. at ¶ 7; Pls' Mem. at 5-6 n.4, 7-10; Recording Transcript ("RT") at 8.* Accordingly, the Plaintiffs' claim of perjury could have and should have been pursued in their Rule 59 motion. This motion is a second, albeit untimely, Rule 59 motion couched improperly in Rule 60(b)(2) language.[3]

**B.    The Plaintiffs' Motion Should Be Denied Because It Does Not Meet the Requirements for Granting Relief Under Rule 60(b)(2).**

Even if the Court reviews the Plaintiffs' motion pursuant to Rule 60(b)(2), the motion should still be denied because it fails to meet the strict requirements of the rule.

Although the decision to grant or deny relief under 60(b) rests within the sound discretion of the Court; *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); relief should be granted only upon a

---

[2] Rule 59(d) also cannot be used to defeat the limitations of Rule 59(b). Rule 59(d) permits a court, no later than ten days after entry of judgment, to order a new trial *sua sponte* "for any reason that would justify granting one on a party's motion." A new trial may be granted if: (1) "the jury has reached a seriously erroneous result," (2) "the verdict is a miscarriage of justice," and (3) the verdict is "against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998). While the Defendant recognizes the Court may have discretion under Rule 59(d) to decide a timely Rule 59(b) motion on grounds not set forth therein, the Court should not use the grounds set forth in the Plaintiffs' improper 60(b)(2) motion as a basis to order a new trial *sua sponte*, especially as the ten-day time limit imposed by Rule 59(d) is long passed.

showing of extraordinary circumstances. *See Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). "[A] court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. United States Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). Courts also require "that the evidence in support of the motion to vacate a final judgment be 'highly convincing,' . . . that a party show good cause for the failure to act sooner . . . and that no undue hardship be imposed on other parties." *Id.*; *see also Peyser v. Searle Blatt & Co., Ltd.*, No. 99 CIV. 10785, 2000 WL 1876917, at *2 (S.D.N.Y. Dec. 22, 2000)(this unpublished case and all subsequent unplublished cases are attached hereto); *Hall v. Daka Int'l, Inc.*, 172 F.R.D. 19, 21 (N.D.N.Y. 1997). The motion must be made within a reasonable time; *Kotlicky*, 817 F.2d at 9; and cannot be used as a substitute for a timely appeal. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Moreover, tactical decisions by counsel, such as a failure to offer evidence, or a plaintiff's acquiescence in counsel's actions, cannot afford a basis for relief because to do so visits unfairly the sins of the plaintiff and plaintiff's counsel upon the defendant. *See Martin v. Chemical Bank*, 940 F.Supp. 56, 59 (S.D.N.Y. 1996), *aff'd*, 129 F.3d 114 (2d Cir. 1997).

The party moving for relief under Rule 60(b)(2) bears the burden of proof. *United States v. International Bhd of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). The requirements of Rule 60(b)(2) must be "strictly met." *United States v. All Right, Title And Interest In Property And Premises Known As 710 Main Street, Peekskill, NY*, 753 F.Supp. 121, 126 (S.D.N.Y. 1990); *see also Nemaizer*, 793 F.2d at 61. Those requirements are that "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the [party seeking relief] must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or

impeaching."[4] *Collazo v. Sikorsky Aircraft Corp.*, No. 3:03CV1620, 2005 WL 856839, at *3 (D.Conn. Apr. 13, 2005). Under the third element, or sometimes treated as a fifth element, the newly discovered evidence must also be material to the issues of the case. *See All Right*, 753 F.Supp. at 126; *see also Wright v. Commercial Union Ins. Co.*, 818 F.2d 832, 838 (11th Cir. 1987). In addition, the evidence supporting a Rule 60(b)(2) motion must be highly convincing. *See Vatansever v. New York City*, No. 01 Civ. 11621, 2005 WL 2396904 at *3 (S.D.N.Y. Sept. 28, 2005); *Wolf v. Board Of Education of New York*, 162 F.Supp.2d 192, 203 (S.D.N.Y. 2001). Thus, a party seeking relief from judgment under Rule 60(b)(2) "has an onerous standard to meet." *Collazo*, 2005 WL 856839, at *3. Plaintiffs' motion fails to meet this standard.[5]

### 1.    The Plaintiffs' Evidence Is Not Truly Newly Discovered and the Plaintiffs Were Not Justifiably Ignorant Because They Failed to Exercise Due Diligence.

As discussed above, to satisfy the second and third elements of the Rule 60(b)(2) test, the Plaintiffs must demonstrate that they were justifiably ignorant of any newly discovered evidence and that the evidence was truly newly discovered or evidence that could not have been uncovered through the exercise of due diligence. *See United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir.), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *Westerly Elecs. Corp. v. Walter*

---

[4] In their brief, the Plaintiffs misquote this standard by substituting, in the second element, the words "this evidence" for the word "them," which refers back to the first element's requirement of "facts that existed at the time of trial." *Pls' Mem. at 21*.

[4] The Plaintiffs do not and cannot assert any other subsection of Rule 60(b) as grounds for their motion. Although the Plaintiffs brought the motion under Rule 60(b)(2), "the court must determine which section best suits the substance of request." *Harduvel v. General Dynamics Corp.*, 801 F.Supp. 597, 613 (M.D. Fla. 1992). Because the Plaintiffs' motion is appropriately considered under subsection (b)(2), the catchall provision of subsection (b)(6) is inapplicable. *International Bhd.*, 247 F.3d at 391-92 (perjury claim properly considered under Rule 60(b)(2) as newly discovered evidence such that 60(b)(6) claim correctly rejected). As for subsection (b)(3), relief is allowed where there has been "fraud . . . misrepresentation, or other misconduct of an adverse party." FED. R. CIV. P. 60(b)(3). To succeed under subsection (b)(3), the moving party must show "that the adverse party procured or knew of any false testimony." *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 832 (7th Cir. 1985). Here, there is no claim (nor any basis for such a claim) that the Defendant or his counsel solicited or knew of the so called perjury.

*Kidde & Co., Inc.*, 367 F.2d 269, 270 (2d Cir. 1966); *Peyser*, 2000 WL 1876917, at *3-*4; *Harduvel v. General Dynamics Corp.*, 801 F.Supp. 597, 605 (M.D. Fla. 1992). The Plaintiffs have not and cannot prove either element in this case.

First, the Plaintiffs were not justifiably ignorant. Evangelista admits that she was aware of DeLucca's so called perjury when he testified at trial. *See Evangelista's Aff. at ¶ 7; Pls' Mem. at 5-6 n.4, 7-10; RT at 8.* Counsel for the Plaintiffs essentially concedes this as well. *See Pls' Mem. at 5* ("[a]s the pre-trial background and trial evidence show, plaintiffs' counsel relied on what she was told by her clients based on their discussions with DeLucca, namely, that DeLucca, once placed under oath and on the stand at a federal trial, would not perjure himself"); *at 7* ("plaintiffs' counsel was surprised at these answers"); *at 8* ("[p]laintiffs' counsel did not expect this"). These admissions belie the Plaintiffs' claims that they were justifiably ignorant of DeLucca's so called perjury and that such evidence is "newly discovered." *See Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926, 928 (1941), *cert. den.* 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941); *Collazo*, 2005 WL 856839, at *3; *Hall*, 172 F.R.D. at 22.

Second, the Plaintiffs did not exercise due diligence because they never deposed DeLucca (nor attempted to do so) in the roughly 2 ½ years between the time the complaint was filed and the matter was tried. The Plaintiffs' tactical decision to forego committing DeLucca's testimony to oath prior to trial also belies their current claim that DeLucca's testimony was crucial to the outcome of the case.[6] Several courts have denied motions similar to that of the Plaintiffs where the moving party failed to depose the person possessing the purported crucial new evidence. *See All Right*, 753 F.Supp. at 126-27; *see also Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1309-1310, *reh'g denied*, 77 Fed. Appx. 510 (11th Cir. 2003); *Wright*, 818 F.2d at 838; *Wilson v. Upjohn Co.*, 808 F.Supp. 1321, 1323-24 (S.D. Ohio 1992).

---

[6] In fact, in closing argument, counsel for the Plaintiffs told the jury that the Plaintiffs "didn't need Mr. DeLucca" to prove their claims. *TT at 1002.*

6

Moreover, although each plaintiff was recalled to the stand after DeLucca testified, neither was asked to rebut his testimony. *See TT at 888-90.* Likewise, although counsel for the Plaintiffs was reportedly taken aback when DeLucca denied having a conversation with Dick Legg wherein certain comments allegedly made by the Defendant were discussed; *see Pls' Mem. at 7- 8;* Legg himself was never questioned about this alleged conversation. *See TT at 291-384.* The Plaintiffs' tactical decisions, however, cannot be visited upon the Defendant as a basis for relief under Rule 60(b)(2). *See Martin*, 940 F.Supp. at 59; *see also Hanauer v. BradStreet's Collection Bureau*, 95 Misc. 211, 212-13, 158 N.Y.S. 918 (N.Y. Sup. Ct. 1916).

### 2. DeLucca's So Called Perjury Is Not Material to the Issues of the Case.

The third element of the Rule 60(b)(2) test and the elements of perjury require that any false testimony be material such that it is likely to affect the trial's result. *See Monteleone*, 257 F.3d at 219; *Martin*, 940 F.Supp. at 60; *Collazo*, 2005 WL 856839, at *3. To the extent DeLucca gave false testimony, however, it was not material such that it would have changed the outcome of the case. Consequently, it neither constitutes perjury nor warrants relief pursuant to Rule 60(b)(2).

Moreover, much of the so called perjury is not only unsubstantiated by the Recording, but consistent with the Plaintiffs' and/or DeLucca's trial testimony. Unsubstantiated allegations of perjury, are insufficient to support relief. *See Martin*, 940 F.Supp. at 60. For example, where a party knows at trial of the facts underlying her motion, the motion for relief is no more than an impermissible attempt to retry the case, especially where the party fails to communicate such facts to counsel or counsel fails to offer such evidence. *See id.* Further, even if certain testimony of one witness was false, there is not a sufficient basis for vacating a judgment where, although a party previously testified, she never retook the stand to deny the false testimony or her counsel never cross-examined the witness with respect to that testimony. *See id.*

Conversely, relief may be appropriate upon "post-judgment discovery by a defeated litigant of evidence establishing, clearly and convincingly, that the prevailing party gave false testimony which likely affected the result."[7] *See id.* To be material, newly discovered evidence must be "relevant to issues in the case." *Chang v. City Of Albany*, 150 F.R.D. 456, 460 (N.D.N.Y. 1993). In addition, it "must be such that, in all probability, it would change the result, not that it *might* do so." *Seventh Avenue Delicatessen v. Manhattan Provision Co., Inc.*, 146 N.Y.S.2d 25, 28 (N.Y. Sup. Ct. 1955), *aff'd*, 1 A.D.2d 1037, 153 N.Y.S.2d 572 (1956). In other words, the evidence, when added to other proof already in the case, must make "a prima facie showing that a different result should have been reached." *Chang*, 150 F.R.D. at 461. In making this determination, a court is not permitted to usurp the jury's role of deciding credibility. *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992). Thus, if a court does not find newly discovered evidence is so material that it will lead to a different result, it should deny a 60(b)(2) motion. *See Teamsters*, 247 F.3d at 395.[8]

Moreover, where questions at trial are ambiguous or inartfully worded and the answer given is unresponsive but literally true, the answer cannot be used to show perjury. *See People v. Siggia*, 163

---

[7] The standard in criminal cases is similar. "Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict...." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001), *cert. denied*, 535 U.S. 1070, 122 S.Ct. 1946, 15 L.Ed.2d 849 (2002). If the government was unaware of a witness' perjury, a new trial is warranted only if the testimony was material and the court has a firm belief that but for the perjured testimony, the verdict most likely would have been different. *See id.* The Second Circuit has declined to reconcile the criminal and civil standards, although it appears the civil standard is the more exacting. *See International Bhd.*, 247 F.3d at 396 n.18. In any event, where alleged perjury is insufficiently material to core issues, 60 (b) relief is unwarranted. *Id.*

[8] *See also In Re Wyatt, Inc.*, 168 B.R. 520, 525 (D.Conn. 1994)(motion for posttrial discovery to support Rule 59 motion for new trial denied where such would not alter outcome, noteholders admitted testimony was not relevant and affidavit submitted by witness stated he had no new relevant testimony); *Sanchez v. Dankert*, No. 00 CV 1143 2003 WL 1878417, at *2 (S.D.N.Y. Apr. 14, 2003) (motion denied where tape and transcript of conversation between defendant and plaintiff's co-worker not probative of issues material to discrimination and retaliation claims); *All Right*, 753 F.Supp. at 127 (motion denied where letter failed to indicate different result as it was not conclusive on one important issue and not material to other central issue); *see also Wright*, 818 F.2d at 838 (motion denied as defendant failed to show testimony by newly identified persons could have affected outcome); *Harduvel*, 801 F.Supp. at 604 n.13 (bald assertion of different outcome not enough).

A.D.2d 113, 116, 558 N.Y.S.2d 518 (N.Y. App. Div. 1990). "[T]he burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.*, quoting *Bronston v. United States*, 409 U.S. 352, 360, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) Thus, "[i]f a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *See Bronston*, 409 U.S. at 358, 362. Accordingly, the failure to cross examine will thwart a claim for a new trial even if the subject matter was within the knowledge of the witness at the time of trial. *See Harduvel*, 801 F.Supp. at 611 n.24; *see also Taylor v. Texgas Corp.*, 831 F.2d 255, 259-60 (11th Cir. 1987); *Wilson v. Thompson*, 638 F.2d 801, 804 (5th Cir. 1981).

Here, the so called perjury identified by the Plaintiffs is not material such that it would likely change the outcome of the case. Accordingly, relief under the third element of Rule 60(b)(2) is not warranted. In their brief, the Plaintiffs contend that the Recording indicates "outright lying" by DeLucca on three issues, namely, (1) his statements to Evangelista regarding the affidavit he signed in support of the Defendant's motion for summary judgment; (2) his private support for the Plaintiffs' claims and his involvement in directing Evangelista to the existence of certain evidence regarding the City's Economic Development Commission; and (3) his discussions with Richard Legg concerning the Mayor's actions and comments allegedly made by the Mayor. *See Pls' Mem. at 25.* Of these three claims of false testimony, the only one arguably supported by the Recording is the first. As to the second and third issues, the statements of DeLucca in the Recording are consistent with his trial testimony and/or Evangelista's trial testimony.

    a.    **DeLucca's Alleged Admission Concerning How Counsel for the Plaintiffs Should Phrase Questions at Trial Is Not Material.**

The Plaintiffs contend that the Recording shows DeLucca lied about "his statements to

Evangelista surrounding the signing of his summary judgment affidavit, its misleading character and his stated intent to offer the full truth at trial," and that this, along with the other alleged lies, "casts serious doubt on the veracity of DeLucca's entire testimony." *See Pls' Mem. at 9-10, 25.* In fact, it is the Plaintiffs' assumptions that are dubious.

The Recording does not address directly DeLucca's summary judgment affidavit. Even if some of the Recording relates to the affidavit, the extent of DeLucca's trial testimony concerning the affidavit was that he signed a sworn affidavit, felt the need to explain why to the Plaintiffs and did so. *TT at 435-37.* The Plaintiffs concede that "DeLucca did not perjure himself in the affidavit" and that "[h]is statements therein were true." *Pls' Mem. at 5 n.4.* This eliminates two-thirds of the claims made in the Plaintiffs' first category of alleged "outright lies." *See Pls' Mem. at 25.* The inquiry on this category is thus limited to whether DeLucca ever stated an intent to offer the full truth at trial by directing the Plaintiffs to have their attorney ask him questions in a certain way.[9]

Although disjointed and fraught with incomplete remarks and interruptions, if the purported transcript of the Recording is read in the most favorable manner possible (which is not the standard for evaluation of the claimed evidence of perjury), the Recording could conceivably support an interpretation that DeLucca told the Plaintiffs prior to trial to tell their attorney to ask questions of him in a certain way, a fact that he denied on the stand. *TT at 437-38.* This allegedly false testimony is not material, however, because it does not go toward proving or disproving any of the elements of Plaintiffs' claims or the Defendant's affirmative defense. *See Teamsters,* 247 F.3d at 395; *In Re Wyatt, Inc.,* 168 B.R. at 525; *Sanchez,* 2003 WL 1878417, at *2; *All Right,* 753 F.Supp. at 127.

The material issues here centered on whether the Defendant had a direct and personal

---

[9]This inquiry begs the issue of why questions were not asked of DeLucca at trial in a manner designed to elicit the "whole truth", if DeLucca did, in fact, tell the Plaintiffs to advise their counsel how to frame the question at trial so as to elicit the "whole truth." *See Pls' mem. at 5, n. 4.*

involvement in thwarting Lorusso's efforts to obtain subsequent City employment after her position of Risk Manager was eliminated and whether the Defendant had a direct and personal involvement in thwarting Evangelista's efforts to maintain her health care benefits after her hours were reduced. The Plaintiffs must establish personal involvement on the part of the Defendant in the alleged constitutional deprivation in order to substantiate their § 1983 action. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).[10]

The jury interrogatories focused on the following material issues: (1) whether either plaintiff suffered an adverse employment action; (2) whether the Plaintiffs' support of the Defendant's political opponent was a substantial or motivating factor behind any adverse action by the Defendant; and (3) whether the Defendant would have taken the same adverse action regardless of the Plaintiffs' exercise of the rights. *See Verdict Form at 2, 5*. Whether DeLucca ever asked the Plaintiffs to have their lawyer ask him questions in a certain way concerning conversations he had with Legg is not material to the elements of the case. Thus, the Plaintiffs' limited evidence of so called perjury on this discreet point, when added to the proof already in the case, does not make "a prima facie showing that a different result should have been reached." *Chang*, 150 F.R.D. at 461.

Moreover, even if the Court credits the Recording as demonstrating that DeLucca did, in fact, advise the Plaintiffs to have their attorney question him in a certain way, and even if DeLucca had so testified at trial, this evidence would merely have shown that DeLucca was supportive of the Plaintiffs, a fact that he does not deny and a fact consistent with his trial testimony. At trial, DeLucca testified that he counted both the Plaintiffs as friends. *TT 392, 441*. In addition, he testified that when Lorusso and Evangelista told him that they were suing the Defendant he said something like "good, I don't blame

---

[10]    Contrary to the Plaintiffs' apparent theory of the case, a defendant in a §1983 action sued in his individual capacity cannot be held personally liable for the wrongful acts of his subordinates simply because he occupied a high position of authority. *See Colon v. Coughlin*, 58 F.3d 865,874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). To succeed, a plaintiff must show more that a defendant's linkage in the official chain of command. *See Wright*, 21 F.3d at 501.

you." *TT at 407.* Furthermore, he testified that, on occasion he approached Evangelista to ask "how's the lawsuit going;" *TT at 432-433*; and that he expressed sympathy for the Plaintiffs. *TT at 412.* In other words, this evidence is not only immaterial to the issues in the case, but consistent with other trial evidence.

> **b.    DeLucca's Statements on the Recording Regarding Conversations with Legg Are Consistent with His Trial Testimony.**

The Plaintiffs assert that DeLucca admitted in the Recording that he lied at trial about "his discussions with Richard Legg regarding the Defendant's conduct and his reaction to being advised that he was exposed to liability and to punitive damages." *Pls' Mem. at 25.* However, DeLucca's statements in the Recording on this topic are consistent with his trial testimony. Accordingly, on this point, the Recording is not material and has no impact on the issue of whether the Defendant was personally involved in the alleged adverse actions against the Plaintiffs. In addition, the Plaintiffs claim that the Recording evinces DeLucca's false testimony regarding "his opening of the conversation with plaintiff by pointing to the Defendant's office and stating, "Do you know what that asshole said?" *Id.* However, this claim is also not supported by the Recording. In fact, the Recording is silent about DeLucca's use of a pejorative to describe the Defendant.

At trial, in the context of questioning about DeLucca's conversations with Legg, DeLucca testified that he does not remember saying to Evangelista that there were statements being made about the Defendant regarding the accusations against him in the Plaintiffs' lawsuit. *TT at 433.* On the Recording, DeLucca is apparently confused by Evangelista's accusations that he lied about what Legg told him. *RT at 3-4.* Despite Evangelista's claim to the contrary, DeLucca states that he would not have testified that Legg said anything to him about the Defendant's alleged comments because he has no memory of that. *RT at 5, 6.* Moreover, at trial, DeLucca testified he had a problem with how Legg dealt

with the Manager job and told Legg he should have laid off Lorusso and Silverstein. *TT at 418-19*. In the Recording, he states that had he been asked, he would have testified he told Legg "not to do it, that when they lined Sandy's job up, how the hell are we going to fill that job, how are we going to get the work done? (inaudible) And I would have said that." *RT at 5*. Thus, DeLucca's statements in the Recording regarding his conversations with Legg are consistent with his trial testimony. Finally, although called before DeLucca, Legg was not questioned as to alleged conversations between himself and DeLucca about the Defendant. *See TT at 291-384*.

The Plaintiffs apparently made a tactical decision to attempt to elicit this testimony solely from DeLucca. In addition, the Plaintiffs made no effort to recall Legg to rebut DeLucca's testimony.[11] As such, the Plaintiffs cannot now rely on the Recording as a basis for relief. *See Martin*, 940 F.Supp. at 60-61.

### c. Statements Concerning Whether DeLucca Assisted the Plaintiffs.

The Plaintiffs further contend that the Recording shows DeLucca lied about privately supporting the merits of the Plaintiffs' claims and helping the Plaintiffs by "directing Evangelista to the existence of facts and documentary evidence to support her claims." *See Pls' Mem. at 8-9, 25*. The Plaintiffs are referring to DeLucca's alleged role in providing Evangelista with a copy of the Plaintiffs' Exhibits 25 and 26. *See Pls' Mem. at 9; TT at 435*.[12] Even the most favorable reading of the Recording, however, does not support this claim. In fact, the Recording is silent on DeLucca's role with respect to these exhibits. Moreover, his trial testimony on this subject, is consistent with Evangelista's trial testimony.

---

[11] The Court may recall that Legg was scheduled to fly to China on the day after he testified. Although Legg would not have been available to be recalled, the Plaintiffs made no effort to adjourn the trial until such time as Legg could be recalled on what they belatedly claim is a crucial point.

[12] The Defendant acknowledges that DeLucca's allegedly admitted perjury regarding advising the Plaintiffs to have their lawyer question him in a certain way could also be interpreted as evincing support of the Plaintiffs. While DeLucca denied making such a statement at trial; *TT at 437*; he did testify to his support of the Plaintiffs. *See TT at 407, 412, 432-33*.

At trial, Evangelista testified she sought out DeLucca regarding the documents pertaining to the fact that employees of the City's Economic Development Commission ("EDC") received health care benefits after first learning of their existence elsewhere. *TT at 210, 212.* DeLucca admitted he met with Evangelista regarding the EDC documents. *TT at 431-38.* Consistent with Evangelista's testimony, DeLucca testified he did not point out the existence of the documents to Evangelista and that she knew more about them than he did when she met with him. *TT at 434-35.* In addition, DeLucca confirmed at trial that he was supportive of the Plaintiffs. Specifically, he testified that he spoke often with the Plaintiffs about their case and expressed great sympathy. *TT at 431-38.* He also admitted that when the Plaintiffs filed their lawsuit he said something to the effect of "good, I don't blame you." *TT at 432.*

Moreover, while Evangelista and DeLucca's testimony is consistent, to the extent that their testimony could be interpreted as contradictory, it does not rise to the level of perjury but rather is an issue of credibility for the jury. *See Sorlucco*, 971 F.2d at 875. A showing of inaccuracies or inconsistencies based on allegedly perjured testimony is insufficient to grant relief because it merely goes to impeach a witness' testimony. *See U.S. v. International Brotherhood of Teamsters*, 179 F.R.D. 444, 447-48 (S.D.N.Y., 1998) ("IBT").

### 3.    The Plaintiffs Evidence Is Merely Cumulative and Introduced For Impeachment Purposes.

At most, the arguably false testimony concerning whether DeLucca advised the Plaintiffs to have their lawyer question him in a certain way goes to impeach DeLucca's credibility, which is apparently the Plaintiffs' true intention in bringing it to light. *See Pl's Mem. at 25* ("the conversation between DeLucca and Evangelista, when viewed as a whole and in context, casts serious doubt on the veracity of DeLucca's entire testimony"); *32* ("DeLucca's post-judgment admissions and statements call into question the truthfulness of virtually everything he said on the witness stand"); *33* (the evidence shows "DeLucca is untrustworthy"). In fact, the Plaintiffs concede that the issue of whether DeLucca ever

14

directed the Plaintiffs to have their lawyer ask him questions in a certain way bears on DeLucca's bias and credibility. *See id. at 5 n.3.* These reasons cannot support the Plaintiffs' motion.

Relief is not proper when the purported newly discovered evidence would only serve to impeach or discredit a witnesses' credibility and evidence exists apart from the alleged perjured testimony to support the underlying decision. *See Teamsters*, 247 F.3d at 395; *IBT*, 179 F.R.D. at 447-48; *March v. Lehigh & Wilkes-Barre Coal Co.*, 175 A.D. 93, 96, 159 N.Y.S. 770 (N.Y. App. Div. 1916). Evidence "whose only effect is to contradict or attack the credibility of witnesses will not ordinarily warrant a new trial, in the absence of very unusual or extraordinary circumstances." *Chang,* 150 F.R.D. at 461; *see United States v. Devery*, 935 F.Supp. 393, 397, *aff'd, U.S. v. Torres*, 128 F.3d 38 (2d Cir. 1997), *cert. denied, Rivera v. U.S.*, 523 U.S. 1065, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998); *United States v. Wong*, 78 F.3d 73, 80 (2d Cir. 1996).

The Plaintiffs challenged DeLucca's credibility at trial and in closing argument. Counsel for the Plaintiff established DeLucca often met with the Plaintiffs to discuss the case and had sympathy for them. *TT at 431-33, 438.* The Plaintiffs elicited testimony to show DeLucca was biased because he was awarded a City contract after this action began. *TT at 438-39.* In the Plaintiffs' closing argument, their attorney attacked DeLucca's neutrality and argued bias, greed and fear as reasons why his testimony was not credible. *See TT at 1001-1002* ("And we have Mr. DeLucca and Mr. Legg presented as some kind of neutral witnesses. Are you kidding me? . . . Do you think they're going to risk their jobs? . . . As to Mr. DeLucca, the fact that he's retired means nothing, does it? Because . . . Mr. DeLucca is still working for the town, pursuant to an employment contract"). This so called newly discovered evidence of false testimony is simply cumulative of the Plaintiffs' prior efforts to discredit DeLucca. As such, it is not a proper basis for relief. *Teamsters*, 247 F.3d at 392.

15

C.    **The Plaintiffs' Additional Claims Are Without Merit.**

Beyond the three claims of "outright lies;" *Pls' Mem. at 25*; the Plaintiffs apparently argue that DeLucca's trial testimony was false in other ways. Specifically, the Plaintiffs contend that the Recording shows that DeLucca changed his story about Legg's decision to combine the Risk Manager and Assistant Purchasing Agent jobs and that he "added nothing further to his account of his discussion with Legg regarding the matter." *See Pls' Mem. at 13.* Failing to offer information beyond the purview of examination, however, is not perjury. *See Harduvel*, 801 F.Supp. at 611 n.24; *Taylor*, 831 F.2d at 259-60; *Wilson*, 638 F.2d at 804.

At trial, DeLucca testified Legg "was going to combine the two jobs . . . and so I said to him, well, you know, give me a draft of how, what you want in the position, what job duties and stuff. So he did and I made up the job description and submitted it to the union for approval." *TT at 456.* He testified he had a problem with how Legg dealt with the Manager job and told Legg he should have laid off both Lorusso and Silverstein. *TT at 418-19.* The Plaintiffs point to page 5 of the Recording to argue that DeLucca changed his story. The Recording, however, indicates only what DeLucca would have stated had he been asked. As such, the Plaintiffs' claim is baseless. *See Harduvel*, 801 F.Supp. at 611 n.24; *Taylor*, 831 F.2d at 259-60; *Wilson*, 638 F.2d at 804.

The Plaintiffs also contend that defense counsel's closing argument relied frequently on DeLucca's testimony to buttress the claim of decision making independent of the Defendant. The Plaintiffs contend that this contrasts with the Recording which shows that DeLucca felt "put on the spot." *See Pls' Mem. at 14.* In fact, however, DeLucca does not use these words in the Recording; Evangelista does. DeLucca does state that "she [meaning Plaintiffs' counsel] put me in the position;" *RT at 8*; and that had he testified to telling the Plaintiffs to have questions asked of him in a certain way he would have looked "like a fool" or a "double agent." *RT at 5.* Moreover, a cursory review of the

16

Defendant's closing argument shows that DeLucca was pointed to as simply one of several witnesses including Ferris, the Defendant, and Bisaccia who testified to independent decision making with no direct involvement by the Defendant. Regardless, closing argument is not evidence and the jury was specifically instructed to that effect. *TT at 17, 1032.* Finally, even if DeLucca's statements in the Recording are interpreted to mean that he did feel uncomfortable testifying in the Defendant's presence, evidence of a motive to lie is not sufficient to support the requested relief. *See IBT*, 179 F.R.D. at 447-48.

The Plaintiffs further claim the Recording reveals DeLucca had a different understanding from what he testified to as to whether and how the Defendant exerted influence over hiring decisions. *See Pls' Mem. at 15.* The Plaintiffs point to no trial testimony; rather, they make blanket assumptions as to the meaning of DeLucca's recorded statements. The Plaintiffs go on to essentially reargue their theory of the case and relate various and ambiguous statements made by DeLucca and Evangelista as supporting that theory. *Id. at 15-16.* These vague, collateral statements, however, are not self-inculpatory and, therefore, should be excluded from consideration. *See Silverstein v. Chase*, 260 F.3d 142, 146-48 (2d Cir. 2001); *Kettenbach v. Demoulas*, 901 F.Supp. 486, 500 n.14 (D.Mass. 1995), *citing Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 2434-38, 129 L.Ed.2d 476 (1994).

At most, DeLucca is providing after the fact, armchair opinions concerning what Lorusso should have done after the budget cuts. The Plaintiffs also play up statements DeLucca made that "I got caught up in it too" and "I said some things I shouldn't have said and I should have said some things I didn't say" as further evidence of his perjury because they allegedly reinforce DeLucca's belief that the Plaintiffs would not lose regardless of his testimony. *See Pls' Mem. at 17, 19.* Putting aside the Plaintiffs' highly conclusory assertions, these statements are not directly self-inculpatory, could be interpreted in several ways and are inadmissible collateral statements at best.

There is also no basis for claiming that DeLucca testified falsely at trial in relation to these various statements, especially regarding the independent decision making process concerning hiring. For example, DeLucca denied knowing whether the Defendant specifically approved Kevin Clark for the zoning job and stated that generally department heads pick the person they feel is qualified. *TT at 398, 402*. Nothing in the Recording belies this. In fact, in the Recording, DeLucca states that he would have testified that the Defendant does not tell him whom to hire, although he would tell department heads who he wanted. *RT at 14-15*. DeLucca also stated, "It's always according to charter, whoever it is, like Public Works does the hiring." *RT at 14*.[13] Further, DeLucca stated that had he testified this way, the Plaintiffs would have thought him a liar. *Id.* The Plaintiffs assert these statements are a display of DeLucca's "proficiency in the art of testimonial gamesmanship." *Pls' Mem. at 17.* These statements, however, merely indicate that DeLucca was endeavoring to tell the truth but lamenting that the Plaintiffs viewed his testimony as untrue.

The Plaintiffs also claim DeLucca lied concerning Lorusso's ability to do the zoning job. *Pls' Mem. at 25-26, n.11.* The Plaintiffs do not pinpoint any inconsistent trial testimony. Indeed, DeLucca's testimony is consistent with the Recording. DeLucca testified he had no problems with Lorusso's performance and while she was Risk Manager they enjoyed a cooperative, professional and healthy relationship, but she did not get the zoning job because she was unqualified in that she failed to meet all the job specifications. *TT at 391-92, 396-97.* In the Recording, DeLucca stated that he did not doubt Lorusso could do the job but he could not give it to her because she did not have the qualifications. *RT at 9-10.* There is no inconsistency.

Finally, the Plaintiffs attempt to make much of DeLucca's reference to Tom Reilly as an indication that DeLucca agreed with Evangelista's contention that the Defendant did not want Lorusso

---

[13] Indeed, DeLucca's statements on the Recording regarding the Defendant's role in hiring is consistent with the Defendant's trial testimony. *See TT at 610-612; 625; 634-636; 713-715.*

employed and did whatever he wanted with regard to employment decisions. *See Pls' Mem. at 26, n.12.* DeLucca stated in the Recording that a job was held open for Reilly for about six months. *RT at 10.* At trial, however, no testimony was elicited from DeLucca regarding this alleged event. Moreover, the Plaintiffs attempt to interject facts not in evidence through a footnote indicating that this event occurred at a time when Reilly was a supporter of the Defendant. *See Pls' Mem. at 26 n.13.* This plainly is intended to impeach DeLucca's credibility by contradicting his testimony at trial that Reilly, so far as he knew, was a Picard supporter. *TT at 400, 402.* In addition, the exchange on the recording refers to an event that happened in 1995; *see TT at 455*; certainly something that could have been brought to light by deposing DeLucca prior to trial. In any event, this portion of the Recording does not show perjury and again constitutes inadmissible collateral statements.

### D.    The Plaintiffs' Case Law Is Distinguishable and Inapposite.

The Plaintiffs confuse the concept of being an important witness with what constitutes material testimony and, as a result, rely on inapposite and distinguishable case law. Without acknowledging the Defendant's extensive reliance on the testimony of several other witnesses, the Plaintiffs assert that the opposition to their Rule 59 motion relied heavily on DeLucca's testimony. *See Pls' Mem. at 27–31.* The Plaintiffs then argue that because defense counsel cast DeLucca as a neutral witness, his entire testimony should be called into question over the alleged false testimony. Case law is clear, however, that not every scrap of a witness' testimony is material simply because he is an important witness and, as a result, not every false statement warrants a new trial. *See Teamsters*, 247 F.3d at 395; *In Re Wyatt, Inc.*, 168 B.R. at 525; *Sanchez*, 2003 WL 1878417, at *2; *All Right*, 753 F.Supp. at 127; *IBT*, 179 F.R.D. at 447-48; *Devery*, 935 F.Supp. at 397; *Wong*, 78 F.3d at 80; *March*, 175 A.D. at 96. The Plaintiffs also disregard the jury's role in assessing DeLucca's credibility. Instead, they attempt improperly to catapult unimportant testimony to a position of prominence and ask the Court to usurp the jury's role by

presuming what it was thinking in relation to that testimony and that a different result would have occurred. *See Sorlucco*, 971 F.2d at 875. This method of review is unsupported by the Plaintiffs' cases.

The Plaintiffs cite to a number of civil and criminal cases. The three primary civil cases the Plaintiffs rely upon are *Williams v. United Dairy Farmers*, 188 F.R.D. 266, 275 (S.D. Ohio 1999); *Isley v. Motown Record Corp.*, 69 F.R.D. 12 (S.D.N.Y. 1975) and *Johnson v. Verisign, Inc.*, No. CIV.A.01-765-A, 2002 WL 1887527 (E.D.Va. Aug. 15, 2002), *aff'd*, 111 Fed. Appx. 703 (4th Cir. 2004). All three cases are factually distinguishable.

*Williams* is inapposite because it involves fabricated evidence. In *Williams*, the plaintiffs' store manager and key witness had testified in deposition about the discriminatory practices and racial animus of the defendant/ employer. At trial, the witness' testimony was impeached by a videotape recording allegedly recorded by the witness' boyfriend in secret in which the witness appears lying in bed and recants her prior deposition testimony. *Id.* at 270. The defendant/employer used the videotape at the "linchpin" of its theory that the plaintiffs' case was fabricated. *Id.* at 276. Subsequent to trial, however, it was discovered that at trial, the witness had lied about not knowing of the videotape and her participation in a scheme to sell it to the defendant for profit. *Id.* The court set aside the defendant's verdict and ordered a new trial because it found that the jury may have reached a different result had the fabricated video not been used to impeach the key witness and because plaintiffs were not aware of the false testimony. *Id.* *Williams* has no bearing here because DeLucca did not fabricate evidence against the Plaintiffs. In fact, *Williams* recognizes verdicts should not be disturbed where they are based on legitimate evidence that sufficiently supports them. *See id.* at 274. Such is our case.

*Isley* is likewise factually inapposite because, despite the existence of countervailing evidence, the verdict in favor of the plaintiffs solely depended on the plaintiffs' trial testimony. *See Isley* at 13-15. Here, however, the verdict in favor of the Defendant does not solely rest on the Defendant's trial

testimony.   Moreover, *Isley* is procedurally inapposite because it involves a motion for a new trial pursuant to Rule 59 under the claim that the plaintiffs' verdict was against the weight of the evidence. *Id.* at 16-17.

*Johnson* is also distinguishable on its facts.  In that case, the District Court granted a new trial on a retaliatory discharge claim because false testimony of several defense witnesses seriously undermined the defense that the plaintiff was lawfully fired in a company wide lay-off and that he and others were named on an approved lay-off list and went straight to the core issues of the case. *See id. at \*1-\*2, \*4.*  By contrast here, there is no evidence that DeLucca lied about material issues.  The only potential support for the Plaintiffs' claim of false testimony is DeLucca's statement in the Recording which could conceivably indicate that he did in fact tell the Plaintiffs to have their lawyer ask him questions in a certain way.  To the extent this shows DeLucca's behind the scenes support of the Plaintiffs, his testimony at trial is consistent. *See Part II.2.c, supra.*  Thus, unlike *Johnson*, DeLucca's arguably false testimony, did not bolster the defense or detract from a critical element of the Plaintiffs' case.  *Johnson*, therefore, is also inapplicable.

The criminal cases relied upon by the Plaintiffs are likewise inapplicable.  These cases are *United States v. Wallach*, 935 F.2d 445, 455-56 (2d Cir. 1991), *cert. denied*, 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993) and *United States v. Seijo*, 514 F.2d 1357, 1358 (2d Cir. 1975).

In *Wallach*, the key witness, who provided the sole link between the defendant and the crime alleged, lied about his unrelated compulsive gambling. *See Wallach*, 935 F.2d at 455-56.  In reversing the denial of a new trial, the court reasoned the witness' false testimony was material because the government should have been aware of the perjury and not tried to rehabilitate his statements. *See id. at 457.*  The court ruled the witness was the "centerpiece" of the government's case who "tied all the pieces together" so that were it revealed he lied after having represented he underwent a radical moral

change the jury may have rejected his testimony. *See id. at 457-58.* The court also cited defense counsel's closing argument as a reason to reverse because counsel vouched for the witness by asserting that although he confessed to certain crimes he had a strong motivation not to lie due to a deal with the government. *See id. at 459.*

Similarly, in *Seijo*, a single witness, who lied about a previous conviction, presented the essence of the government's case and the only evidence connecting the defendants with the crimes. *Seijo*, 514 F.2d at 1358. The court found that had the jury known of the false testimony, despite other impeaching evidence, it could have created a sufficient doubt among the jurors to affect the result. *See id. at 1364.* The court found that the concealment of a conviction in the witness' adult life would have undermined the government's contention that he was a young and innocent kid and could have made suspect the rest of his uncorroborated testimony. *See id. at 1362, 1364.* Thus, it reasoned that although the false testimony went to credibility only, it may well have been determinative of the defendants' guilt or innocence. *See id. at 1364.*

Our case differs markedly from *Wallach* and *Seijo*. DeLucca was not the centerpiece or sole star witness with the only critical evidence to support or refute the Plaintiffs' action. This case rested greatly on the testimony of the Plaintiffs and the Defendant, who each testified at length, as well as several other important witnesses such as Legg, Ferris and Bisaccia. DeLucca did not tie the whole case together. Moreover, no one told the jury DeLucca underwent a radical moral change to underscore his credibility. While DeLucca and Ferris were presented as retired city workers with nothing to prove by lying, greater emphasis was placed on Ferris, who had been caught removing the Defendant's campaign signs but kept his job. *See TT at 569, 980.* Moreover, Bisaccia was presented as having no reason to lie despite his lack of support for the Defendant. *TT at 980-81.* Further, the Plaintiffs' counsel dismissed in her closing argument the theory that DeLucca had no motive to lie. She also argued she did not need

DeLucca's testimony to win. *TT at 1002.* Thus, the jury was presented with a ready alternative view as to his credibility. Accordingly, *Wallach* and *Seijo* are not controlling.

If this Court considers the standard applied to Rule 60(b) motions in criminal cases, even by way of analogy; *see note 7, supra*; then the Court should consider cases that address the type of evidence proffered by the Plaintiffs – cumulative evidence that is not outcome determinative. Two such cases are *United States v. Devery*, 935 F.Supp. 393, 397, *aff'd*, *U.S. v. Torres*, 128 F.3d 38 (2d Cir. 1997), *cert. denied*, *Rivera v. U.S.*, 523 U.S. 1065, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998) and *United States v. Wong*, 78 F.3d 73, 80 (2d Cir. 1996).

In *Wong*, the Court of Appeals affirmed the denial of a new trial by the defendant notwithstanding unsettling aspects of the testimony of the government's star witness, who furnished some of the most inculpatory evidence against the defendant. *See Wong*, 78 F.3d at 76-77. The witness admitted in a separate trial that he had made up testimony regarding his relationship to the government as an informant. *Id. at 77-78.* A new trial was not warranted because the evidence supporting the defendant's motion was impeachment evidence. *Id. at 79.* Such evidence if introduced would not have been material to the outcome of the trial. *Id., 79-80.* Moreover, the court determined that independent evidence at trial corroborated the witness' testimony. *Id. at 80.*

In *Devery*, a convicted defendant moved for a new trial due to newly discovered evidence of perjury in addition to other grounds previously raised. *Id. at 397.* An important government witness testified against the defendants concerning how they helped him launder drug money. *Id.* The government later revealed that the witness admitted in an interview subsequent to trial that he lied about not having money hidden from the government. *Id. at 411.* The District Court concluded that the false testimony concerned a collateral matter and did not contradict any factual aspect of the government's case. *Id. at 412.* Although important, the witness' overall testimony was not an indispensable

component of the case. *Id.* Notably, the Court distinguished the cases that the Plaintiffs cite to in the instant matter, *Wallach* and *Seijo*, on the grounds that the witness was not essential to the case. *Id. at 414-15.* Regardless of whether the witness was a key witness, the purported newly discovered evidence was cumulative, impeachment evidence and did not support a motion for a new trial. *Id. at 415.*

As in *Wong* and *Devery*, DeLucca's purported false testimony would only serve to impeach his credibility. This testimony is collateral and is not outcome determinative. There was testimony from a great deal of other witnesses, including the Plaintiffs, which supported the Defendant and the ultimate verdict. Finally, the Plaintiffs also had ample opportunity to attack DeLucca' credibility at trial. *Wong* and *Devery*, therefore, are more accurate examples of analogy than the cases cited by the Plaintiffs.

**E.    Should DeLucca Invoke the Fifth Amendment Privilege Against Self Incrimination, the Court Should Require DeLucca to Testify Since the Claimed False Testimony Is Neither Material Nor Likely to Alter the Judgment in Favor of the Defendant.**

The Fifth Amendment provides that "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S.CONST. Amend. V. Should DeLucca raise the privilege,[9] this Court must determine whether his silence is justified. *See Zicarelli v. New Jersey State Comm. of Investigation*, 406 U.S. 472, 480, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *U.S. v. Zappola*, 646 F.2d 48, 53 (2d Cir. 1981). DeLucca would be unjustified in invoking this privilege because the false testimony identified by the Plaintiffs is neither material nor likely to affect the outcome of the case.

A witness may claim the Fifth Amendment privilege if his testimony might reveal perjury in a prior proceeding. *In re Corrugated Container Antitrust Litigation*, 644 F.2d 70, 75 n.7 (2d Cir. 1981). When the privilege is invoked, the Court must determine whether silence is justified as to each particular question. *Zicarelli*, 406 U.S. at 478. The privilege applies, however, only where the danger of self-

---

[9]    Per defense counsel's correspondence dated December 14, 2005, addressed to Judge Kravitz and cc'd to Plaintiffs' counsel, defense counsel has been advised that DeLucca intends to invoke this privilege.

incrimination is real and appreciable, not remote and speculative. *Id.; Zappola*, 646 F.2d at 53; *Corrugated Container*, 644 F.2d at 74. Thus, "[w]hen considering whether a claim of the privilege should be sustained, the focuses inquiry on what a truthful answer might disclose, rather than on what information is expected by the questioner." *Zicarelli*, 406 U.S. at 480. Moreover, "[a] question to which a claim of the privilege is interposed must be considered 'in the setting in which it is asked.'" *Id.* In the absence of any risk of prosecutorial use of statements against a witness, there is no basis for invoking the privilege. *See Corrugated Container*, 644 F.2d at 74.

To constitute perjury, false testimony must be material to the case and likely to affect its outcome. *See Montelleone*, 257 F.3d at 219; *Martin*, 940 F.Supp. at 60. To the extent that DeLucca gave false testimony, it was not material to important issues, did not rise to the level of perjury, and would not have affected the result. Accordingly, any fear DeLucca may claim of self incrimination is remote and speculative as there is no risk that he would be subject to prosecution for perjury.

However, should the Court conclude that DeLucca may invoke the privilege on a particular question, no negative inference should be drawn against him and thereby the Defendant, that DeLucca would have testified adversely to his or the Defendant's interests if he did not invoke the privilege against self incrimination. There is no bright line rule in favor of drawing inferences against a witness who invokes the privilege not to testify in civil cases. *See Brink's Inc. v. City Of New York*, 717 F.2d 700, 708 (2d Cir. 1983). Rather, the determination is to be made on a case by case basis. *See id.* at 710; *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997). The circumstances of this case do not warrant the negative inference.

The determination of whether or not a negative inference against a non party witness who invokes the privilege is guided by the circumstances of the case and several non-exclusive factors including the: "(1) nature of the relevant relationships, (2) degree of control by party over non-party

25