witness, (3) compatibility of interests of party and non-party witness, and (4) role of non-party witness in litigation." *In Re Handy & Harman Refining Group, Inc.*, 266 B.R. 32, 35 (Bankr. D.Conn. 2001), *citing LiButti*, 107 F.3d at 123. The nature of the relationship is considered the most important factor and it is examined from the perspective of the non party witness' loyalty to the plaintiff or defendant. *Handy*, 266 B.R. at 35. "The closer the bond, whether by reason of blood, friendship or business, the less likely the non party witness would be to render testimony in order to damage the relationship." *Id.* "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124.

Here, the nature of the relevant relationships shows DeLucca is far more aligned with the Plaintiffs than the Defendant. DeLucca held merely a lukewarm professional relationship with the Defendant when he was mayor. DeLucca and the Defendant were not "buddy-buddy" and their relationship was just "okay." *TT at 441.* Further, DeLucca served twenty five years as personnel director through five administrations from both major parties, has worked with the City since his retirement at the union's urging; *TT at 385-86, 389, 440.* By contrast, DeLucca testified that he considers both the Plaintiffs as friends; *TT at 393, 441*; and would often engage in "chitchat" with Evangelista about her personal life; *TT at 212-14*; and would visit Lorusso in her office to gab. *TT at 393.* Further, DeLucca testified that he had discussions with both the Plaintiffs about the case and expressed moral support when they sued. *TT at 431-32, 438.*

In addition, the Defendant did not control DeLucca. While DeLucca was technically a mayoral appointee, the Defendant could not have freely discharged DeLucca. *TT at 386-89.* Indeed, DeLucca had served as personnel director for twenty five years through five administrations for both Democratic and Republican mayors. *TT at 385-86.*

26

Furthermore, DeLucca's role in the litigation with respect to Lorusso was limited to Lorusso's efforts to bump into the job of zoning enforcement officer and the job rewrites of the two other positions she sought. However, all of the other witnesses (with the exception of Marge Schenkle) also offered testimony on these subjects; and all of the testimony of the Defendants' witnesses on these subjects was consistent. DeLucca's role in the litigation with respect to Evangelista pertained to her efforts to have her health care benefits reinstated. Although Evangelista approached him to inquire about whether or not she could have her health care benefits reinstated, he advised her that he did not have the authority to do so, a fact that Evangelista acknowledged. *TT at 462-463; 272.* Finally, as argued herein; *see Part II.B.2, supra;* even if DeLucca gave false testimony, it was not material. Thus, under the circumstances of this case, the adverse inference is neither trustworthy nor will it advance the search for truth. *See LiButti*, 107 F.3d at 124.

## V.  CONCLUSION

Plaintiffs' motion pursuant to Rule 60(b)(2) is an untimely, impermissible attempt to circumvent the 10 day time limit for filing Rule 59 motions because the Plaintiffs, by their own admission, were aware of the so called perjury prior to the expiration of this deadline. In addition, the Plaintiffs' motion does not meet the requirements under Rule 60(b)(2) because the plaintiffs were not justifiably ignorant of the evidence of so called perjury; the evidence of so called perjury could have been discovered through the exercise of due diligence; the so called perjury is not material to the issues of the case; and the evidence is merely cumulative and introduced for impeachment purposes. Accordingly, the Plaintiffs' effort to second guess the verdict should be denied as improper.

THE DEFENDANTS,
CITY OF WEST HAVEN AND
H. RICHARD BORER, JR.

By: _____
Jennifer L. Schancupp
Federal Bar No. ct11876
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P O Box 1684
New Haven, CT 06507
Phone: (203) 624-9830
Fax:    (203) 562-8430
Email: jschancupp@susmanduffy.com

## CERTIFICATION

This is to certify that a copy of the foregoing was hand delivered and/or mailed this day, via first class mail, postage prepaid, to the following:

Counsel for the Plaintiff
Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Co-Counsel for the Defendants
Paul J. Dorsi, Esq.
Assistant Corporation Counsel
Office of the Corporation Counsel
City of West Haven
355 Main Street
West Haven, CT 06516

_____
Jennifer L. Schancupp

I:\Client W\West Haven\Lorusso-Evangelista\Pleadings\memo of law in opposition to Plaintiffs' Rule60b Motion\edits 2.wpd

28

# UNPUBLISHED CASES

Westlaw.

Slip Copy                                                                                              Page 1

Slip Copy, 2005 WL 2396904 (S.D.N.Y.)

**(Cite as: 2005 WL 2396904 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Galip VATANSEVER, Plaintiff,
v.
NEW YORK CITY, N.Y.C. Department of
Corrections, Captain Rocco, Correction
Officer Hager, Defendants.
**No. 01 Civ. 11621(WHP).**

Sept. 28, 2005.
Galip Vatansever, Brooklyn, NY, Plaintiff pro se.

Deborah I. Meyer, Corporation Counsel of the City
of New York, New York, NY, for Defendants.

*ORDER*

PAULEY, J.

**\*1** Plaintiff *pro se* Galip Vatansever ("Vatansever"
or "Plaintiff") brings this federal civil rights action
claiming that officers of the New York City
Department of Corrections ("NYCDOC") assaulted
him at Rikers Island. Vatansever asserts federal
claims for excessive force and deliberate
indifference to his medical needs, as well as state
law claims for assault and battery. By Order dated
September 17, 2004 (the "Order"), this Court
granted Defendants' motion for summary judgment
and dismissed this action. Presently before this
Court are two motions by Plaintiff pursuant to
Fed.R.Civ.P. 60(b) to vacate the Order. For the
reasons that follow, Plaintiff's motions are denied.
However, the Order is modified as set forth below.

*BACKGROUND*

The pertinent facts are described more fully in the
Order and need not be restated here. In short,
Vatansever claims that on November 11, 2000,
while he was detained at Rikers Island, one of the
defendants, Captain Raco ("Raco"), grabbed him,
threw him into a steel door and slammed his head
repeatedly into a cinderblock wall while another
defendant, Officer Hager ("Hager"), stood by.
[FN1] Thereafter, Vatansever claims, medical
personnel refused to treat his resultant injuries:
"Permanent injury to Skull, constant Migraine
Headaches, Blurred Vision, Dizziness and a Major
Indentation to the Skull." (Complaint at 4.)

> FN1. Although there is no "Captain
> Rocco" where Plaintiff was detained,
> defense counsel identified Captain
> Anthony Raco, badge # 1340, as the
> defendant named in the Complaint.

In its Order, this Court dismissed Plaintiff's claims
against Officer Hager for failure to effect service
and against the NYCDOC because it is not a suable
entity. Additionally, this Court held that Vatansever
presented no evidence that the City of New York
(the "City") has a policy or custom of not informing
pretrial detainees about grievance procedures or of
failing to ensure that doctors' recommendations for
inmates are followed. Accordingly, this Court
granted the City summary judgment. This Court
also granted summary judgment to Raco on the
excessive force claim, holding that Vatansever
failed to exhaust his administrative remedies.
Finally, because there was no evidence that Raco
was involved in the events alleged to constitute
deliberate indifference to Plaintiff's medical needs,
this Court dismissed that claim against Raco and
declined to exercise supplemental jurisdiction over
the state law claims for assault and battery.

*DISCUSSION*
I. *Rule 60(b) Standard*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 2396904 (S.D.N.Y.)

**(Cite as: 2005 WL 2396904 (S.D.N.Y.))**

In pertinent part, Rule 60(b) provides that "the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). Thus, "Rule 60(b) provides an opportunity for courts to balance fairness considerations present in a particular case against the policy favoring the finality of judgments." *Williams v. New York City Dep't of Corrs.,* 219 F.R.D. 78, 84 (S.D.N.Y.2003). The decision to grant or deny a Rule 60(b) motion for relief from a judgment or order is within the sound discretion of the district court. *New York v. Green,* 420 F.3d 99, 104 (2d Cir.2005); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991). However, a proper case for Rule 60(b) relief is made "only on a showing of exceptional circumstances." *Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). The evidence presented in support of a Rule 60(b) motion must be "highly convincing." *Kotlicky v. United States Fid. & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987).

II. *Plaintiff's Motions*

*2 Vatansever moves this Court to vacate its grant of summary judgment with respect to his excessive force and deliberate indifference claims against Hager, the City of New York and Raco.

First, Vatansever contends that Hager was not served through no fault of his but because Defendants' counsel failed to identify the "Officer Hager" named in the Complaint or to accept service on his behalf. This argument was raised by Plaintiff in his opposition to Defendants' summary judgment motion and was rejected by this Court. Moreover, Defendants' counsel was neither obstructionist nor evasive. Instead, based on the allegations in the Complaint and information otherwise provided by

Plaintiff, counsel was unable to match either the name or the badge number of the defendant to any officer at Rikers Island. Further, Plaintiff never pursued service on Officer Haber, whose name was contained in the documents produced by Defendants. Accordingly, this Court properly dismissed the claims against Hager for failure to effect service and denies Vatansever's motions in that regard.

With respect to Vatansever's claims against the City and his deliberate indifference claim against Raco, Plaintiff does not point to any controlling decisions or data that this Court overlooked. *Cf. Shrader,* 70 F.3d at 257. Rather, Plaintiff rehashes the same arguments previously raised and rejected by this Court. Accordingly, this Court properly dismissed those claims and denies Vatansevers' motions in those regards.

Finally, Vatansever contends that summary judgment was inappropriate on his claim against Raco for use of excessive force. This Court dismissed that claim on the ground that Plaintiff had failed to exhaust his administrative remedies. In fact, as Plaintiff submits and Defendants concede, there were no administrative remedies to pursue because the NYCDOC specifically exempts excessive force claims from administrative review. (Letter to the Court from Deborah I. Meyer, Esq., dated Oct. 22, 2004.) "[A] court considering dismissal of a prisoner's complaint for non-exhaustion must first establish from a legally sufficient source that an administrative remedy is applicable and that the particular complaint does not fall within an exception." *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir.2003). This Court now recognizes that it failed to adequately establish that an administrative remedy was available on Vatansever's excessive force claim. Accordingly, this Court withdraws its prior holding that Plaintiff failed to exhaust his administrative remedies.

Nonetheless, addressing the excessive force claim on its merits, summary judgment remains proper because Vatansever has failed to raise a genuine issue of material fact that Raco used excessive force against him. *See* Fed.R.Civ.P. 56(c) (summary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2005 WL 2396904 (S.D.N.Y.)

**(Cite as: 2005 WL 2396904 (S.D.N.Y.))**

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986).

**\*3** Although Raco denies being on duty on November 11, 2000, Plaintiff contends that the facility's logbooks reflect his presence. However, the overwhelming evidence of Vatansever's medical records belies his unsupported assertions that the assault occurred, or that it was as brutal as he describes it to be. *See United States v.. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) ("The litigant opposing summary judgment ... may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." (internal quotation and citation omitted)); *Jeffreys v.. Rossi,* 275 F.Supp.2d 463, 477 (S.D.N.Y.2003) ("[A] party cannot rely upon implausible testimony to create a triable issue of fact."). The absence of any reference to physical injury in Vatansever's voluminous medical for five months after he claims he was brutally beaten undermines his excessive force claim. (Defendants' Rule 56.1 Statement ("Defs. 56.1 Stmt.") ¶¶ 3-4; Plaintiff's Rule 56.1 Counter-Statement ("Pl. 56.1 Stmt.") ¶¶ 12-13; Declaration of Deborah I. Meyer, dated Jan. 23, 2004 ("Meyer Decl.") Ex. C: New York City Health & Hospital Corp. Correctional Health Service records, at 101-15, 142.) One doctor hypothesized that Vatansever had "projected his mother's health issues onto himself." (Meyer Decl. Ex. C. at 129.) Vatansever's medical records also reflect that he did not complain of head injuries or mention the alleged assault until two months after it occurred. (Meyer Decl. Ex. C at 110.) *See Shabazz v. Pico,* 994 F.Supp. 460, 470 (S .D.N.Y.1998) (granting summary judgment because "Plaintiff offer[ed] no reasonable basis for disbelieving his medical records, but only assert[ed] that his medical records are inaccurate.").

Finally, in his second, more recent motion, Vatansever argues that this Court should vacate the Order pursuant to Fed.R.Civ.P. 60(b)(2) in light of new evidence, namely magnetic resonance imaging films ("MRIs") taken over four years after the alleged incident occurred. However, the medical records closer to the date of the alleged incident are far more probative of any injury than MRIs taken four years after the fact. Accordingly, the MRIs are not "highly convincing" evidence warranting vacatur of the Order. *Kotlicky,* 817 F.2d at 9; *accord Wolf v. Bd. of Educ. of City of New York,* 162 F.Supp.2d 192, 203 (S.D.N.Y.2001); *see also Fid. Partners, Inc. v. First Trust Co. of New York,* 58 F.Supp.2d 55, 59 (S.D.N.Y.1999) (holding that the newly discovered evidence presented by a Rule 60(b)(2) motion must be "admissible and probably effective to change the result of the former ruling ... [and] not merely cumulative ... of evidence already offered" (internal quotation omitted)).

Accordingly, Raco was entitled to summary judgment on Plaintiff's excessive force claim. However, this Court withdraws its prior ruling that Plaintiff failed to exhaust his administrative remedies and deems the Order modified to incorporate the above analysis on the merits of Plaintiff's excessive force claim.

*CONCLUSION*

**\*4** For the foregoing reasons, Plaintiff's October 3, 2004 and June 15, 2005 motions for relief from this Court's September 17, 2004 Order are denied. The Order is deemed modified as set forth above. The Clerk of the Court is directed to mark this case closed.

Slip Copy, 2005 WL 2396904 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01cv11621 (Docket) (Dec. 20, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 1878417 (S.D.N.Y.)

**(Cite as: 2003 WL 1878417 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Gil A. SANCHEZ, Plaintiff,
v.
Chris DANKERT, et al., Defendants.
**No. 00 CV 1143(GBD).**

April 14, 2003.

**Background:** Former employee brought pro se action against, inter alia, former employer, customer of former employer, and union, alleging race discrimination in violation of Title VII and retaliatory discharge in violation of state labor laws. The District Court dismissed complaint. Former employee moved for relief from judgment.

**Holding:** The District Court, Daniels, J., held that materials submitted in support of motion for relief from judgment did not constitute newly discovered evidence.
Motion denied.

West Headnotes

**[1] Federal Civil Procedure ⊙⇒2659**
170Ak2659 Most Cited Cases
Motion titled as one seeking reconsideration under rule governing motions to alter or amend judgment was properly analyzed as motion for relief from judgment, given that plaintiff argued that he had newly discovered evidence and filed motion more than 10 days after entry of judgment. Fed.Rules Civ.Proc.Rules 59(e), 60(b)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure ⊙⇒2655**

170Ak2655 Most Cited Cases
Materials submitted by former employee, in support of motion for relief from judgment dismissing his claims alleging race discrimination and retaliatory discharge, were not "newly discovered evidence," given that certain documents had already been submitted and were considered by court in dismissing complaint, tape and transcript of conversation between one defendant and former employee's coworker did not reveal any racial remarks or overtures, and letters pertaining to former employee's general anxiety disorder were not relevant to issue of liability, were available to former employee in opposing dismissal, and were cumulative of previously submitted evidence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 60(b)(2), 28 U.S.C.A.

*MEMORANDUM OPINION AND ORDER*

DANIELS, J.

**\*1** Plaintiff, a *pro se* litigant, commenced this action against defendants alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* and retaliatory discharge in violation of New York labor laws. In a Report and Recommendation by Magistrate Judge Frank Maas, it was recommended that defendants' motion to dismiss and motion for summary judgment be granted, [FN1] and that plaintiff be allowed to submit a second amended complaint as to certain claims provided he could cure the pleading defects. A second amended complaint was submitted by plaintiff and considered by this Court. In an order dated July 19, 2002, this Court adopted the Report and Recommendation, and upon review, dismissed plaintiff's second amended complaint for failure to cure pleading defects. Plaintiff now moves for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). For the reasons set forth below, plaintiff's motion is denied.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 1878417 (S.D.N.Y.)

**(Cite as: 2003 WL 1878417 (S.D.N.Y.))**

FN1. The management defendants associated with New York University and Harvard Maintenance, Inc. filed a motion to dismiss, while the remaining union defendants filed a motion for summary judgment.

[1] Plaintiff argues that the evidence he presented in his second amended complaint was sufficient under pleading standards to survive both a motion to dismiss and summary judgment. Plaintiff also submits additional evidence appended to his motion for reconsideration that he claims shows that his complaint should not have been dismissed. Although plaintiff titles his motion as one for reconsideration under Federal Rule of Civil Procedure 59(e), this Court finds that it is more properly analyzed as a motion for relief from judgment under Rule 60(b). [FN2] *See In re Holocaust Victim Assets Litig.,* 282 F.3d 103, 107 (2d Cir.2002) (construing defendants' letter submissions as a Rule 60(b) motion).

FN2. Plaintiff argues that he has "newly discovered evidence." Submissions of newly discovered evidence are more properly analyzed under Rule 60(b) than under Rule 59(e). Further, plaintiff filed his motion for reconsideration more than 10 days after the entry of the judgment. "If a motion to modify or set aside the judgment ... is served more than 10 days after entry of the judgment, it is properly considered a motion under Fed. R. Civ. P. 60(b), not one under Rule 59(e)." *Branum v. Clark,* 927 F.2d 698, 704 (2d Cir.1991).

[2] Federal Rule of Civil Procedure 60(b) provides for six enumerated circumstances whereby a district court may relieve a party from a final judgment. The two relevant circumstances in this instance are:
...
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
...
(6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

Where the motion is based upon newly discovered evidence under 60(b)(2), the movant must demonstrate that: (1) the newly discovered evidence was of facts that existed at the time of the dispositive proceeding; (2) the movant was justifiably ignorant of them despite due diligence; (3) the evidence would have been admissible and likely would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching. *See United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir.2001). This circuit has described the movant's burden under Rule 60(b) as "onerous." *Id.*

Plaintiff submitted various documents with his motion for reconsideration for this Court to consider. One of those documents is an affidavit from a co-worker stating that one of the defendants made a racist remark to plaintiff. However, this document does not constitute newly discovered evidence as plaintiff had already submitted that affidavit with his second amended complaint, and this Court duly considered it when it dismissed that complaint. Plaintiff also has submitted a letter from the U.S. Department of Labor discussing the results of a safety and health inspection at plaintiff's workplace. This letter, as well, was previously submitted and this Court found it insufficient to substantiate plaintiff's retaliatory discharge claim.

*2 Plaintiff has further submitted a tape and transcript of a conversation that took place between defendant Carl Rinaldi and one of plaintiff's co-workers as support for his racial discrimination claim. The conversation generally concerns various open positions at the defendants' work site. Defendant Rinaldi also discusses on the tape what he perceives as insubordination towards him by plaintiff's co-worker. On occasion, Rinaldi uses expletive in speaking with plaintiff's co-worker. The content of the conversation, however, is not probative of anything. The plaintiff is never mentioned on the tape. The expletives that are used are not racially motivated or tinged. In fact, the tape does not reveal any racial remarks or overtures at all.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 3

Not Reported in F.Supp.2d, 2003 WL 1878417 (S.D.N.Y.)

**(Cite as: 2003 WL 1878417 (S.D.N.Y.))**

Lastly, plaintiff submits a number of letters from his doctor and psychologist that state that he has been diagnosed with general anxiety disorder. However, this evidence would only be relevant to damages. It is not relevant to his initial burden of proving a set of facts that, if taken as true, could establish defendants' liability, nor relevant to demonstrating a genuine issue of material fact regarding whether defendants discriminated against him. Moreover, these letters refer to treatment that took place before the case was dismissed. Hence, these materials were available to plaintiff when he opposed defendants' motions, and plaintiff provides no explanation as to why he did not include these materials with his submissions at that time. In any event, this evidence is merely cumulative as plaintiff previously submitted similar evidence regarding his anxiety disorder in response to defendants' motions. This Court had the opportunity to fully consider the relevance of that evidence.

Therefore, none of the additional materials submitted by plaintiff constitute newly discovered evidence. Further, plaintiff has not presented any other reason under Rule 60(b)(6) justifying relief from the July 19 Order. This Court is mindful of the fact that plaintiff is *pro se* and that his complaint must be held to less stringent standards than those drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curium); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989). Yet, even relaxing the pleading standards, this Court still does not find that plaintiff's second amended complaint states a claim, or that any of the evidence submitted in support of that complaint creates a genuine issue of material fact with regard to the claims that defendants racially discriminated against plaintiff or discharged him in violation of state labor laws.

Accordingly, plaintiff's motion for reconsideration is denied. [FN3]

       FN3. Plaintiff's remaining motions are denied and dismissed as moot.

Not Reported in F.Supp.2d, 2003 WL 1878417 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv01143 (Docket) (Feb. 16, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Virginia.
Michael Andrew JOHNSON, Plaintiff,
v.
VERISIGN, INC., et al., Defendants.
**No. Civ.A.01-765-A.**

Aug. 15, 2002.

In employment discrimination suit, former employee filed motion for new trial, motion to alter or amend the court's ruling on employer's motion for summary judgment, and motion for relief from judgment of the verdict. The District Court, Lee, J., held that: (1) new trial was warranted on former employee's retaliatory discharge claim because employer's witnesses gave false testimony regarding the existence of a written, tangible layoff list, and the false testimony seriously undermined employer's non-pretextual rationale for employee's termination, and (2) false testimony did not rise to the level of "fraud on the court."

Motions granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure ☞2332**
170Ak2332 Most Cited Cases
New trial was warranted on former employee's retaliatory discharge claim because employer's witnesses gave false testimony regarding the existence of a written, tangible layoff list, the false testimony seriously undermined employer's non-pretextual rationale for employee's termination, and employee was unaware of the falsity of the testimony until after trial. Fed.R.Civ.P. 59, 28 U.S.C.A.

**[2] Federal Civil Procedure ☞2654**
170Ak2654 Most Cited Cases
Although employer submitted false testimony at trial regarding the existence of a written, tangible layoff list, those misrepresentations did not rise to the level of "fraud on the court" so as to warrant vacating verdict and summary judgment order in favor of employer on race discrimination and ERISA claims; there was no evidence that employer's counsel was an active participant in the presentation of employer's false testimony. Fed.R.Civ.P. 60(b), 28 U.S.C.A.

**[3] Federal Civil Procedure ☞2651.1**
170Ak2651.1 Most Cited Cases
No grounds existed for amending summary judgment order dismissing former employee's race discrimination and ERISA claims against employer; employee did not have any evidence that similarly situated employees outside his protected class were treated differently than him, and employee failed to provide any evidence that he actually suffered any damages in the form of unpaid medical bills triggering a cause of action under ERISA. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

*AMENDED MEMORANDUM OPINION AND ORDER*

LEE, J.

**\*1** THIS MATTER is before the Court on Plaintiff Michael Andrew Johnson's Amended Motion for New Trial, Motion to Alter or Amend the Court's Ruling on Defendants' Motion for Summary Judgment, and Motion for Relief from Judgment of the Verdict. The instant Opinion is about alleged misrepresentations made by Defendants and their counsel in their motion for summary judgment and by Defendants' in their testimony introduced at trial. The Court granted partial summary judgment in favor of Defendants on December 18, 2001,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

(Cite as: 2002 WL 1887527 (E.D.Va.))

dismissing the Plaintiff's race discrimination and Employment Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") claims. The Court denied summary judgment, however, on Plaintiff's unlawful retaliation claim. On January 9, 2002, a jury returned a verdict in favor of Defendants on Plaintiff's remaining retaliatory discharge claim. Although the Plaintiff raises a litany of issues regarding alleged material misrepresentations made before this Court on summary judgment and the jury, the case boils down to two basic questions: (1) whether Defendants falsely testified as to the existence of a written, tangible layoff list; and (2) if so, what is the effect of that false testimony on the December 18th Order and the January 9th jury verdict.

As elaborated below, the Court finds that Defendants did in fact submit false testimony at trial regarding the existence of a written, tangible layoff list. Because this false testimony seriously undermines Defendants' non-pretextual rationale for Plaintiff's termination, the Court finds that a new trial is warranted under Rule 59 of the Federal Rules of Civil Procedure ("FRCP"). [FN1] Accordingly, Plaintiff's motion for a new trial on his retaliatory discharge claim is granted.

> FN1. The Court's ruling on January 8, 2002, dismissing Defendant Benjamin Turner for lack of evidence of his involvement in the termination of the Plaintiff was unaffected by the Court's January 23, 2002, Order temporarily vacating the December 18th Order and January 9th verdict. To be clear, there remains no evidence that Turner was involved in the layoff of the Plaintiff and therefore Turner is not a Defendant in this case.

However, the Court will not disturb the December 18th Order granting Defendants' summary judgment motion on Plaintiff's race discrimination and ERISA claims. Plaintiff essentially seeks to set aside the summary judgment Order, as well as the jury verdict for that matter, under FRCP 60(b) for fraud on the court. Plaintiff's motion to vacate the rulings

in favor of Defendants based on allegations of fraud on the court are unfounded. Fraud on the court is a serious allegation that demands proof that counsel were active participants with Defendants in a deliberate scheme to obtain a judgment by proffering false testimony. Plaintiff has failed to provide any evidence of such a conspiracy to warrant a finding of fraud on the court. Similarly, the Court declines to amend the December 18th Order dismissing Plaintiff's race discrimination and ERISA claims under FRCP 59(e). Notwithstanding the misrepresentations by Defendants, the fact remains that Plaintiff cannot establish a prima facie race discrimination or ERISA claim.

## I. BACKGROUND

The procedural posture of this case is not ordinary. This matter may have begun as an employment discrimination case, but it has evolved into one of candor by Defendants and their counsel before this Court. The facts set forth below begin with a review of the December 18, 2001, Order granting summary judgment in Defendants favor on Plaintiff's racial discrimination and ERISA claims, but denying summary judgment with respect to his retaliatory discharge claim. The Court then discusses the three day jury trial from January 7-9, 2002, and verdict in this case concerning the Plaintiff's retaliatory discharge claim. The following section addresses the Court's January 23, 2002, Order temporarily vacating the judgments in this case until Defendants provided certain documents to assuage the Court's concerns regarding possible misrepresentations by Defendants before the Court on summary judgment and at trial. Finally, the Court reviews Defendants' submissions pursuant to the Court's document request and the March 8, 2002, hearing where the parties argued Plaintiff's amended motion for new trial, motion to amend the Court's December 18th Order, and motion to vacate the judgments rendered in favor of Defendants.

A. The December 18th Summary Judgment Order.

*2 In March 2001, Plaintiff Michael Johnson filed a Complaint in this Court against Defendants VeriSign, Inc., Network Solutions, Inc ., Douglas L. Wolford, Benjamin R. Turner, Jeffrey W. Johnson,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

and Robert Smith, alleging, *inter alia,* racial discrimination and retaliatory termination in violation of 42 U.S.C. § 1981 and a violation of the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). [FN2] Plaintiff's allegations involved the termination of his employment with VeriSign. Plaintiff, an African-American male, alleged that Defendants fired him because of his race and in retaliation for protected activity he engaged in opposing alleged racially discriminatory practices by VeriSign management against other employees. Plaintiff also alleged that he was due benefits denied to his daughters under his medical plan by Defendants in violation of ERISA.

> FN2. In July 2001, with leave from the Court, Plaintiff filed a seven count Amended Complaint. On October 2, 2001, the Court dismissed five of the seven counts leaving the § 1981 and ERISA claims.

Defendants moved for summary judgment on Plaintiff's claims on November 29, 2001. In their memorandum in support of their summary judgment motion, Defendants asserted that Plaintiff's position was eliminated on February 9, 2001, as part of a company wide layoff. (Defs.' Mem. in Supp. of Summ. J. at 2, 12-13, 19-20) ("Defs.'s Summ. J. Mem.") Defendants presented sworn declarations from current and former VeriSign employees Doug Wolford, Jeff Johnson, Robert Smith and Heather Serice, to substantiate this claim. (Defs.' Summ. J. Mem. Ex. 5, Decl. of Doug Wolford ("Wolford Decl."); Defs .' Summ. J. Mem. Ex. 6, Decl. of Jeff Johnson ("Johnson Decl."); Defs.' Summ. J. Mem Ex. 7, Decl. of Robert Smith ("Smith Decl."); Defs.' Summ. J. Mem. Ex. 8 Decl. of Heather Serice ("Serice Decl.")). The sworn declarations of these individuals attached to the motion made numerous references to a list of affected individuals by the layoff. [FN3]

> FN3. Wolford stated that "I was presented with lists of affected individuals by each staff member, and I approved the lists." (Wolford Decl. ¶ 18.) Similarly, Jeff

Johnson related that "I came up with a list of people ... [Rob Smith and I] spoke with Doug Wolford ... about the list of candidates for layoff ... Both Ms. Serice and Mr. Wolford approved the decision to include Mr. Johnson in this list of people." (Johnson Decl. ¶ 16-18.) Robert Smith stated "We came up with a list of people based upon performance and job duties." (Smith Decl. ¶ 19.) Smith also said that "some of [Plaintiff]s deficiencies ... occurred while the layoff list was being generated." (*Id.* ¶ 20.) And that "[b]oth Ms. Serice and Mr. Wolford approved of the decision to include Mr. Johnson in this list of people." (*Id.* ¶ 21.)

Based on these affidavits, Defendants represented that "Ms. Serice ... approved the list of people selected for layoff." (*Id.* at 13.) In sum, Defendants argued that

> in the month of February 2001, the same month that plaintiff was laid off, 12 individuals were laid off within the group in which the plaintiff was employed. Plaintiff was the only African-American laid off. Eleven of the people laid off were white, and one was Asian. Seven of the twelve individuals selected for layoff, including the plaintiff, were selected by ... Jeff Johnson and Mr. Smith, and the selection of each of these seven individuals was expressly approved by Mr. Wolford.

(Defs.' Summ. J. Mem. at 14)(internal citations omitted). Defendants represented that the Plaintiff was selected for layoff because of redundancy and job performance problems, including recent failings in January 2001 and complaints against the Plaintiff lodged by fellow employee April Griggs. (*Id.*)

Relying on Defendants' proffers, the Court granted Defendants' motion for summary judgment on Plaintiff's racial discrimination claim. The Court found that "it is an undisputed fact that VeriSign laid off 12 employees in February 2001. Ten of the employees laid off were White, one Asian and one African-American. Seven of the employees selected were from Plaintiff's department and were chosen by the same decision makers who selected the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

Plaintiff." (December 18th Order at 26.) The Court held that Plaintiff could not satisfy the fourth element of a prima facie case for racial discrimination because there was no evidence that employees outside his protected class were treated more favorably than Plaintiff. (*Id.*) The Court also granted summary judgment on Plaintiff's claim under ERISA because Plaintiff failed to submit any evidence of any viable injury in the form of unpaid medical bills. (*Id.* at 27.)

**\*3** However, the Court denied Defendants' motion for summary judgment on Plaintiff's retaliatory discharge claim under 42 U.S.C. § 1981. The Court found that a material issue of fact existed as to whether Defendants eliminated Plaintiff's position because of his alleged history of protected activity, the last incident involving one of the decisionmakers in the elimination of Plaintiff's position occurring less than a few weeks before Plaintiff's termination. Further, Plaintiff successfully rebutted Defendants' non-pretext rationale for the elimination of his position. One of Defendants' proffered non-discriminatory rationales for dismissing Plaintiff was the assertion that Ms. Griggs complained of Plaintiff's unwelcome behavior toward her. Plaintiff provided a sworn declaration from Ms. Griggs indicating that Plaintiff did not make her feel uncomfortable and that Defendants' counsel allegedly attempted to persuade her to sign a false affidavit concerning Plaintiff.

**B. The Trial.**

The Court held a jury trial on Plaintiff's retaliation claim from January 7 to January 9, 2002. At the trial the jury was presented with the following evidence:

In October 1999, Network Solutions hired Plaintiff as the Director of the Business Affairs Office ("BAO"). Network Solutions was later acquired by Defendant VeriSign in June 2000. Plaintiff was interviewed by two of Defendants, Doug Wolford and Ben Turner. Wolford, Turner, and Jim Rutt collectively made the decision to hire Plaintiff.

In the fall of 2000, VeriSign began to reorganize

the company into three groups--Corporate, Enterprise, and Mass Markets. Around this time, the BAO, a department in the Mass Markets group, was reorganized and eventually dissolved. Several changes with respect to Plaintiff's employment with VeriSign resulted from reorganization of the BAO, including Plaintiff's job title, supervisory role and duties. During the transition, Plaintiff reported to Defendant Robert Smith, Assistant General Manager of the VeriSign Global Identity Group ("VGI"), a department within the Mass Markets group. Smith, in turn, reported to Defendant Jeff Johnson, Vice President of VGI, who in turn reported to Wolford, Group General Manager of the Web Presence Services Group. VGI included employees in IdNames, Great Domains (a unit within VGI based in California formed after acquisition of a company called Great Domains by VeriSign in 2000), and the BAO. (Trial Tr. Vol. III at 173-75.) Great Domains employees also fell under the supervision of Defendants Johnson, Smith and Wolford. (*Id.*) Two-thirds of VGI employees were located outside of Virginia. (*Id.* at 73, 92-94.)

1. Plaintiff's work product and the situation with Ms. Griggs.

In January 2001, two concomitant and contested series of events transpired. First, Defendants claim that Plaintiff failed in several respects to perform his job adequately. At trial, Smith and Jeff Johnson testified extensively regarding Plaintiff's inability to operate basic computer programs, as well as his failure to: (1) create a minority marketing business project, (2) draft a memo concerning his ICANN duties, and (3) coordinate and reorganize the training curriculum for new employee's in Jeff Johnson's group. (Trial Tr. Vol. II at 124-138; Vol. III at 54-84.) Jeff Johnson and Smith testified that the training curriculum was particularly problematic because they had to relieve Plaintiff of the assignment and perform the task themselves to meet the deadline. Defendants also presented an email where Smith questioned Plaintiff's knowledge of basic marketing concepts concerning VeriSign. Defendants did not present any formal poor performance appraisals of Plaintiff's work nor memoranda admonishing Plaintiff's substandard

Not Reported in F.Supp.2d                                                                                                           Page 5

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

performance prior to his termination. Plaintiff testified that Defendants did not alert him of their disapproval with his work product.

**\*4** Second, Human Resources Manager Heather Serice, Smith and Johnson, testified that in January 2001 they were approached by Ms. April Griggs, a former secretary of the Plaintiff from February 2000 to November 2000. (Trial Tr. Vol. II. at 139-146 273-276; Vol. III at 85-90.) They testified that Ms. Griggs expressed concern and discomfort working with Plaintiff. Elysa Darling, another VGI employee, also testified that Ms. Griggs had approached her stating that she was uncomfortable working with Plaintiff. Ms. Darling wrote an email to Smith and other VGI management discussing her conversation with Ms. Griggs. (Defs.' Tr. Ex. 32.) In a December 8, 2000, memorandum, Plaintiff expressed to Ms. Griggs that he desired to address the "uncomfortable" situation between the two. VeriSign management held two meetings with the Plaintiff to discuss his relationship with Ms. Griggs on January 31, 2001, and February 1, 2001. In a memorandum discussing the February 1, 2001, meeting, Plaintiff acknowledged that Ms. Griggs had accused him of making her "uncomfortable at work," and stated that "April is lying about me and damaging my reputation." (Pl.'s Tr. Ex. 53.) Plaintiff expressed that "this matter is getting out of hand and I am concerned about being fired from my job." (*Id.*) Defendants did not present any formal documentation reprimanding or counseling Plaintiff regarding the alleged harassment.

Ms. Griggs testified, however, that Plaintiff never said anything inappropriate, improper or offensive to her. (Trial Tr. Vol. III. at 195-197.) Ms. Griggs testified that her discomfort involving Plaintiff after her transfer in November 2000 stemmed from management's instructions not to perform secretarial work for the Plaintiff. She denied ever telling anyone that Plaintiff had harassed her or otherwise treated her improperly by making any unwelcome advances. Plaintiff also emphatically denied any harassment of Ms. Griggs at trial.

2. The layoff.

Plaintiff's position was eliminated on February 9, 2001. Plaintiff, Ms. Griggs, and Henry Howell, testified that management stated that Plaintiff's position was eliminated because of redundancy. Plaintiff's termination letter does not mention poor performance nor allegations of harassment, it simply states that Plaintiff was laid off because of job elimination. (Pl.'s Trial Tr. Ex. 7.) Defendants Johnson and Smith testified that the laid off employees were selected based on redundancy and job performance. Defendants Johnson and Smith attested that Plaintiff was selected in particular because of the redundancy of his position, his inadequate job performance, and Ms. Griggs' complaints.

Defendants repeatedly referred to a "list" of employees selected for layoff compiled by Johnson and Smith and submitted to Wolford and Ms. Serice for review and approval. Specifically, Wolford referred on several occasions to a list of people selected for layoff, his review of this list and his final approval of the list of affected employees. (Trial Tr. Vol. III at 184-87.) Jeff Johnson and Robert Smith provided similar testimony concerning the finalization and approval of a layoff list. (Trial Tr. Vol. II at 148-153; Vol. III at 90-91.) Ms. Serice likewise testified on several occasions to reviewing a list of proposed laid off employees provided by Smith and Jeff Johnson. (Trial Tr. Vol. II at 277, 288; Vol. III at 16, 21.)

**\*5** Twelve VeriSign employees in the Mass Markets group were laid off in February 2001, ten of whom were White and one Asian. Seven of the employees were from Plaintiff's department--VGI--and selected by Smith and Johnson. Ms. Serice testified that Plaintiff was the only VGI employee laid off in the Herndon, Virginia office. (Trial Tr. Vol. III at 12-15.) [FN4] Ms. Serice believed that the six other employees laid off in the Plaintiff's group were not from the Herndon, Virginia office, but could not identify what offices the other employees had worked in. (*Id.* at 12-13.) In general, Ms. Serice could not provide much detail concerning the February 2001 layoff, including the names of the other employees laid off. (*See id.* at 10-18.) Plaintiff's counsel did not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

cross-examine Ms. Serice regarding her use of the word "list."

> FN4. Defendant Smith later confirmed Ms. Serice's testimony stating that Plaintiff was the only VGI employee laid off in the Herndon office and the remaining six of the seven employees were terminated from the VGI's California office. (Trial Tr. Vol. III at 93.)

Ms. Serice's testimony raised concerns to the Court, which it voiced to the parties in a side bar conference during Ms. Serice's testimony. (*See id.* at 32-37.) The Court explained that it was bothered by the fact that Defendants' memorandum in support of their summary judgment motion implied that the other employees laid off in Plaintiff's group worked in the Plaintiff's office. (*Id.* at 35-37.) Defendants' brief did not present that employees from other offices had been laid off; indeed, Ms. Serice's testimony was "completely different from what [the Court] inferred from reading [Defendants'] brief." (*Id.* at 36.) The Court stressed that it was concerned that Ms. Serice could provide little detail regarding the layoff. The fact that Ms. Serice could provide little detail concerning the February 2001 layoffs was especially disconcerting since the circumstances of the layoff of the Plaintiff and other VeriSign employees were central to Defendants' defense in this case. (*Id.* at 34-36.) The Court invited Defendants to address the Court's concern by providing some documentation of the other VeriSign employees laid off in February 2001. (*Id.* at 34-36.) No documentation was forthcoming.

3. Plaintiff's alleged protected activity and retaliation.

The jury was also presented with testimony regarding Plaintiff's alleged protected activity. Between May 2000 and August 2000, Plaintiff testified that he made several reports concerning discrimination and disparate treatment by VeriSign supervisor Lori Davis toward Yolanda Hernandez. Plaintiff testified that he alerted Serice, Turner, and Charlotte Norris, Acting Vice President of the Human Resources Department of the

discrimination. Serice and Turner denied that Plaintiff ever approached them with concerns of racial discrimination against Ms. Hernandez. Ms. Hernandez testified that she had complained to the Plaintiff about management over-working her. However, she did not testify that she had been the victim of racial discrimination or ever complained to the Plaintiff or others about it.

Plaintiff testified that in October 2000 he complained to Norris, Serice, Wolford, Turner and Jeff Johnson that Henry Howell, an African-American employee, was being discriminated against. Plaintiff's concerns were twofold. Plaintiff and Howell testified that they believed Howell was not being paid the equivalent of White managers and this disparity was racial discrimination. Plaintiff claimed that Jeff Johnson retaliated against him by harshly admonishing Plaintiff for interfering with Defendant Johnson's plans to "cancel" Howell. Plaintiff testified that he continued to complain about treatment of Howell through November and December. Jeff Johnson eventually agreed to transfer Howell and promoted him to manager but Johnson did not agree to meet Howell's salary request. Jeff Johnson, Serice, Smith, Turner, and Wolford, all denied that Plaintiff or Howell had complained of racial discrimination. On cross-examination, Defendants' counsel confronted Howell with his previous deposition testimony stating that he had never complained about racial discrimination to anyone.

*6 Finally, Plaintiff testified to engaging in protected activity involving his former secretary Ms. April Griggs, an African-American woman. During the month of January 2001, Plaintiff testified that he became aware that Johnson was considering taking adverse action against Ms. Griggs by placing her on performance review. Under a performance review, the employee is given a time-frame to improve her performance or the employee will be terminated. Plaintiff opposed placing Ms. Griggs on performance review. On January 19, 2001, Plaintiff testified that he met with Jeff Johnson to discuss, *inter alia,* Ms. Griggs' placement on performance review. According to Plaintiff, at the January 19th meeting Defendant

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

Johnson attempted to coerce Plaintiff into cooperating with him to fire Ms. Griggs, including falsely accusing Ms. Griggs of having an affair with the Plaintiff. Jeff Johnson denied Plaintiff's allegations.

At closing arguments, Plaintiff argued that he was the victim of a "layoff of one" prompted by his protected activity on behalf of Ms. Hernandez, Mr. Howell, and Ms. Griggs. Plaintiff explicitly argued that Defendants' testimony was not credible because of the paucity of independent documentary evidence supporting their claims regarding the layoff and Plaintiff's termination. (Trial Tr. Vol. III. at 265.) On January 9, 2002, the jury returned a verdict in favor of Defendants.

C. The Court's Sua Sponte January 23, 2002, Order.

On January 22, 2002, Plaintiff filed a motion for a new trial, motion to alter or amend judgment and motion for relief from judgment of the verdict. Plaintiff moved for a new trial based on alleged misrepresentations made on summary judgment and at trial by Defendants and defense counsel in connection to the layoff of the Plaintiff and other VeriSign employees in February 2001.

On January 23, 2002, this Court issued a *sua sponte* Order addressing its concerns with the same representations made by defense counsel on summary judgment and Defendants at trial identified by Plaintiff in his motion for new trial. Although close in time, the Court's Order had no connection to Plaintiff's motion. The January 23rd Order was spurred by testimony concerning the circumstances surrounding the layoff of VeriSign employees in February 2001. As discussed above, Ms. Serice's testimony raised doubts involving Defendants' previous representations concerning the February 2001 layoff.

The January 23rd Order expressed the Court's concern that despite its admonition Defendants did not produce any documents substantiating the layoff. The Court noted that notwithstanding Defendants repeated references to a "list" of seven employees selected for layoff compiled by Johnson

and Smith, and submitted to Wolford and Ms. Serice, Defendants failed to provide any list. In fact, Defendants did not provide a single document identifying any of the VeriSign employees who were laid off in February 2001. The lack of documentation, combined with Ms. Serice's testimony, raised serious concerns about Defendants' representations involving the February 2001 layoff. The Court also reiterated its concern that Ms. Serice's testimony revealed for the first time that the six other VGI employees laid off were not from Plaintiff's office in Herndon, Virginia, but were laid off from offices in California.

*7 To allay its concerns, the Court ordered Defendants to submit to the Court, on or before February 4, 2002, any and all documents concerning VeriSign employees laid off in February 2001. [FN5] Defendants were directed to submit copies of the documents to the Plaintiff. The Court also vacated the December 18th Order entering summary judgment in favor of Defendants on Plaintiff's racial discrimination and ERISA claims, as well as the January 9, 2002, judgment entered in favor of Defendants on Plaintiff's unlawful retaliation claim. The Court indicated that it would reinstate the judgments after Defendants had complied with the document request and the matter was adequately resolved. The Court also directed Plaintiff to file an amended motion for new trial.

> FN5. The January 23rd Order further directed that "[a]t minimum, these documents should include original documents of the following materials:
> (1) VeriSign records listing the names of the employees laid off in February 2001;
> (2) memoranda or emails explaining the selection of such employees for layoff;
> (3) the originals of management memoranda ordering a layoff in Plaintiff's group and any memoranda sent to management discussing the layoff in Plaintiff's group;
> (4) the complete personnel files of the twelve VeriSign employees terminated in the layoff referred to in Defendants' memorandum in support of summary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 8

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

judgment; and
(5) letters of discharge sent from VeriSign to each employee laid off in February 2001." (Jan. 23rd Order at 7.)

D. Defendants' Submissions and the March 8, 2002, Hearing.

Pursuant to the Court's Order, Defendants filed various materials with this Court on February 4, 2002. Along with the documents, Defendants submitted an explanatory memorandum. Defendants filed additional materials responsive to the Court's January 23rd Order on February 14, 2002.

In general, Defendants substantially complied with the Court's Order. In particular, Defendants provided voluminous emails, memoranda, slide presentations, "headcount" projections, etc ..., that addressed the layoff of what appears to be hundreds of employees beginning in January 2001. There are also charts, emails, memoranda, and the like, discussing about 100 layoffs in the Mass Markets group, the division wherein VGI is located. Defendants also provided the complete original personnel files of the twelve Mass Markets group employees laid off in February 2001.

However, review of the hundreds of documents revealed several significant facts. First, there is no contemporaneous list of employees selected for layoff in February 2001 concerning Plaintiff Michael Johnson. In fact, Defendants did not submit a single document, email, or memorandum that mentioned Plaintiff within the context of a layoff. [FN6] Second, the documents submitted confirmed that six of the seven employees laid off in VGI were in the Global Domains branch of VGI in California.

    FN6. Defendants provided a post-termination list of all employees laid off in the year 2001 numbered exhibit 42. The list indicates that fourteen VeriSign employees were laid in February 2001. Although Defendants did not identify any other "list" as such, in the hundreds of ancillary documents there are several "lists" that are somewhat revealing

submitted as exhibit 41. For instance, there is the February 15, 2001, email exchange listing various employees in Affiliate Operations, Partner Relations, and Sales, who will be "effected" by "headcount reductions." There is a also an apparent copy of an undated looseleaf notepad discussing "layoffs" "40 February all at same time." The notes go on to list various employees under supervisor's names. These employees are on the January 8, 2001, to February 2, 2001, payroll and were laid off on February 2, 2001. Some of the employees laid off in February 2001 are on the list. Some are not, including Plaintiff. There are additional notes discussing "12 underperformers" to be laid off. There is a note from January 19, 2001, implying that several employees discussed at the meeting will be laid off. Plaintiff is not mentioned. Finally, there is a note from January 24, 2001, again implicitly listing employees to be laid off, separated into "high"-- apparently defined as "within 1 week end of 2/9/01"--and low. The list apparently refers to employees to be laid off from Great Domains. Some of the employees terminated in February are on this list. Some are not, including Plaintiff.

The Court held a hearing on Plaintiff's amended motions and Defendants' submissions provided pursuant to the January 23rd Order on March 8, 2002. The Court structured the oral argument around several questions provided to the parties in written form at the hearing. (*See* March 8th Hr'g Tr. at 1.) [FN7] The first group of questions involved the use of the term "list" by Defendants and their counsel on summary judgment and during trial. On the that issue, the Court and Defendants' counsel exchanged the following colloquy:

    FN7. The questions raised in the memorandum were "[1] What does the word "list" mean to you? [2] How should the Court have construed the word? [3] In footnote 17 of Defendants' opposition, Defendants refer to lists submitted in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 9

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

response to the Court's January 23rd Order. Precisely, [4] Does the Judge have an independent duty to respect the integrity of a judicial proceeding when it appears that a party has made a misrepresentation to the Court and the jury? [5] Does an officer of the court violate Rule 11(b) by representing the existence of a list of employees selected for layoff when in fact such a list never existed? [6] Assuming that there was misrepresentation or fraud on the Court, yet it appears upon review of the evidence that Plaintiff still fails to state a prima facie claim of Race Discrimination, what should the Court do? [7] Defendants have provided substantial evidence that there was in fact a reduction in force, the question is whether the Plaintiff was terminated as part of that layoff or for some impermissible reason. Is this a question of law for the Court or one of fact for the jury? [8] If it is a question of fact for the jury, should the jury be appraised of prior misrepresentations made by Defendants or defense counsel concerning that reduction in force as it relates to the Plaintiff? [9] Apparently, Plaintiff failed to seek discovery on the circumstances of the "layoff" and the existence of a "layoff list." If true, how should this effect the Court's decision?"

The memorandum also posed a hypothetical concerning representations made by GM counsel on summary judgment representing to the court that the legitimate non-pretextual rationale for Plaintiff's dismissal in a discrimination lawsuit was a "layoff." GM represents that twenty other employees were laid off in Plaintiff's department in the same month as the Plaintiff. The questions posed to counsel were: "[1] If the twenty other employees actually worked for a Saturn plant in North Carolina and the plaintiff worked for a Chrysler plant in Detroit, is GM's failure to appraise the Court of these facts an affirmative misrepresentation?

What if the plaintiff was a senior level manager at the plant in Detroit, and the employees in North Carolina work on the assembly line? [2] With respect to this case, what is the relationship between Great Domains and VeriSign, and Great Domains and VGI? What evidence is there to substantiate the proposition that Great Domains is part of VGI other than Doug Wolford's testimony at trial?"

THE COURT: Let me be absolutely clear. I'm asking you as a member of the court, when you put in a pleading "list" and you're giving it to a United States District judge, what do you mean by that?

MR. SEEGULL: I do not mean a written list. I mean a verbal list ... I think the term "list" obviously has different meanings to different people. And I do not think the term "list" by definition means a written list ... For one instance, I can list for you right now bread, milk, cheese and juice.

**\*8** THE COURT: So, when Heather Serice, the HR director says I reviewed the list, I should take that to mean that she reviewed some mental list that was in Mr. Johnson's mind?

\* \* \*

THE COURT: [W]hen the judge is presented testimony about a list, when a jury is presented with testimony about a list, I think that has distinct me[aning]. So I want to be real clear that you're telling me that "list" means a mental list. Now whose mind are you talking about?

MR. SEEGULL: Let me be clear your honor. I don't think the testimony was that she guessed the names on the list. I think the testimony was she discussed the names on the list ...

THE COURT: You said there was no list. You said there was no document to review.

MR. SEEGULL: That doesn't mean there is no list ... Rob Smith and Jeff Johnson may have called Heather Serice and said here are the people we'd like to layoff. And then they list the names. That then becomes the list. It's a verbal list.

\* \* \*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 10

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

THE COURT: I'm trying to make sure that I understand that when you, Mr. Seegull, tell a judge that there was a list and that judge is considering your submission, whether it's from you personally or whether it's from your management employees, what that means. And so, I want to be clear. I want you to tell me on the record, when you tell a judge that there was a list of employees laid off, what do you, Mr. Seegull, mean?

MR. SEEGULL: I mean there was a list of names. There were people that were laid off, group of people that were laid off.

(*See* March 8th Hr'g Tr. at 17-22.)

Later in the hearing, the Court noted that despite the Court's directive to produce some documentation about a layoff list, Defendants had failed to do so. (*Id.* at 28-29.) In response, counsel stated that there is no list existing today but that did not necessarily rule out the existence of a list in February 2001. (*Id* . at 29.) The Court questioned counsel concerning the six employees in the VGI group being laid off in a separate office and geographical location. The thrust of the Court's inquiry was whether Defendants had an obligation to inform the Court that six of the seven employees in Plaintiff's group--VGI--were actually part of a subgroup of VGI called Great Domains located in California. (*Id.* at 37-39.) Defendants' counsel maintained that: (1) Great Domains had been integrated into VeriSign; and (2) any questions concerning the geographic disparity between the Great Domain employees and the Plaintiff, should have been, and were raised by Plaintiff's counsel at trial.

Following the hearing, Defendants submitted affidavits from Ms. Serice, Jeff Johnson and Robert Smith. The substance of these affidavits attested that Ms. Serice and Defendants Johnson and Smith apologized for any misunderstanding the Court may have had regarding a tangible layoff list. The affidavits also confirmed that although Ms. Serice and Defendants may have used temporary lists of employees selected for layoff, e.g., listing names on a chalkboard or notes, they never compiled a formal tangible list of employees to be laid off, reviewed

and submitted for approval.

## II. DISCUSSION

*9 Plaintiff seeks various forms of relief based on Defendants' alleged misrepresentations. Plaintiff first requests that the Court use its inherent power to enter a verdict in favor of the Plaintiff. Plaintiff does not present any valid grounds for this extraordinary relief and the request is summarily denied. In the alternative, Plaintiff moves the Court to set aside the jury verdict and order a new trial. Plaintiff also moves that should the Court grant a new trial, the Court should vacate or alter its December 18th Order and reinstate Plaintiff's discrimination claim. [FN8]

> FN8. Plaintiff further moves for additional discovery. In light of the developments in this matter demonstrating the absence of a layoff "list" selecting the Plaintiff for termination and the fact that six of the seven VGI employees were actually laid off from VeriSign's California office, the Court finds that Plaintiff has set forth a valid basis for re-opening discovery in this case. Accordingly, the request for additional discovery is granted.

This case basically boils down to whether Defendants proffered false testimony and if so what the Court should do about it. As set forth below, part A briefly addresses the Court's obligation to effectively investigate the possibility of fraud in this case. Part B then discusses the grounds for granting a new trial under Rule 59 based on false evidence. Part C addresses the allegations of fraud on the court and part D discusses the grounds for amending the December 18th Order under Rule 59(e). Finally, the Court briefly attends to the issue of Rule 11 sanctions in part E.

A. The Court's Duty to Investigate Allegations of Fraud.

In their various submissions since the January 23rd Order, Defendants have questioned the Court's decision to investigate the possibility that the trial and summary judgment order were tainted by fraud.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 11

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

The Court pauses here to briefly address that contention.

Our courts of justice are an institution with certain inherent powers that naturally flow from the responsibility of being arbiters of the law. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution ... because they are necessary to the exercise of all others.") (citations and internal quotations omitted). One of the hallmarks of the judicial institution is the inherent power to ensure that a trial has proceeded fairly and within the law.

"Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Id.* (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Universal Oil Prods. Co. v. Root Ref. Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)). The power to vacate a judgment premised on fraud necessarily encompasses the power, and the responsibility, to conduct an independent investigation to determine whether the court itself has been the victim of fraud. *See Universal Oil,* 328 U.S. at 580 (citing *Hazel-Atlas Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250) ("The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."); *Alberta Gas Chems., Ltd. v. Celanese Corp.,* 650 F.2d 9, 12-13 (2d Cir.1981).

The circumstances in this case called for, at a minimum, an inquiry into the representations of Defendants and their counsel concerning the layoff of VeriSign employees in February 2001. The crux of Defendants' non-pretextual rationale for termination of the Plaintiff's position was that the decision had been undertaken as part of a company wide layoff. During the course of trial, the Court heard testimony that undermined Defendants' earlier representations involving the layoff of VeriSign employees in February 2001. Specifically, testimony from VeriSign Human Resources Manager Heather Serice raised serious doubts involving Defendants' previous representations. At trial, Ms. Serice's testimony revealed for the first time that Plaintiff was the only VGI employee laid off in the Herndon, Virginia office in February 2001. (Trial Tr. Vol. III at 12-14, 33.) Ms. Serice believed that the six other employees laid off in the Plaintiff's group were not from the Herndon, Virginia office, but could not identify what offices the other employees had worked in. (*Id.* at 12-13.) In general, Ms. Serice could not provide much detail concerning the February 2001 layoff, including the names of the other employees laid off.

**\*10** Ms. Serice's testimony raised concerns to the Court, which it voiced to the parties in a side bar conference during Ms. Serice's testimony. (*See id.* at 32-37.) The Court explained that it was bothered by the fact that Defendants' memorandum in support of their summary judgment motion implied that the other employees laid off in Plaintiff's group worked in the Plaintiff's office. (*Id.* at 32-33.) Defendants' brief did not present that "12 people all over the world" had been laid off. (*Id.* at 33.) [FN9] In fact, Ms. Serice's testimony was "completely different from what [the Court] inferred from reading [Defendants'] brief." (*Id.* at 36.) The Court stressed that it was concerned that the "HR manager [did not] know the names of who else was laid off and [did not] seem to have a lot of detail." (*Id.* at 36.) The fact that Ms. Serice could provide little detail concerning the February 2001 layoffs was especially disconcerting since the circumstances of the layoffs of the Plaintiff and other VeriSign employees were central to Defendants' defense in this case. (*Id.* at 34-37.)

> FN9. The Court is disturbed by counsel's contention that the omission of the location of the six other VGI employees was an insignificant fact. Although in the Court's opinion counsel's conduct was not sanctionable, it certainly reflects on his candor before this Court. When some attorneys stand at the podium and represent to the Court that the sky is blue, the judge can accept it as fact and move on. There are other lawyers that represent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.