Not Reported in F.Supp.2d                                                                                          Page 12

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

to the court that the sky is blue, and the judge must step down from the bench, walk to the window, and lower the blinds himself. This is a case where the judge needed to look.

The Court asked counsel if there existed a list of the employees selected by management for the layoff. (*Id.* at 33.) Counsel replied that he did not know. The Court stated that "[t]here ought to be some list that was prepared that everybody signed off, all the executives signed off on that says seven people were laid off." (*Id.* at 34.) The Court invited Defendants to address the Court's concern by providing some documentation of the VeriSign employees laid off in February 2001. (*Id.* at 34.)

Despite the Court's admonition and request, Defendants did not initially produce *any* documents substantiating the layoff. For instance, notwithstanding that Defendants repeatedly referred to a "list" of employees selected for layoff compiled by Defendants Johnson and Smith and submitted to Wolford and Ms. Serice, Defendants failed to provide a tangible, written list. In fact, Defendants did not provide a single document identifying any of the VeriSign employees who were laid off in February 2001. Defendants did not provide any memoranda or emails from Johnson or Smith to Wolford or Serice identifying the other employees selected for layoff. Neither did Defendants produce a discharge letter sent to any of the other employees who were laid off in February 2001. [FN10]

> FN10. As discussed in detail above, Defendants eventually provided the Court with documentation substantiating the layoff pursuant to the January 23rd Order. Some of these documents appeared to list various employees in VGI selected for layoff. *See supra* note 6 and accompanying text. None of the documents listed Plaintiff. *Id.*

Upon discovery that the underlying factual predicate of Defendants' non-pretextual justification was suspect, that not one, but four witnesses had possibly conspired to introduce false testimony

regarding a material issue in the case, it was incumbent upon the Court to inquire into the facts. "The power to unearth ... fraud is the power to unearth it effectively." *Universal Oil,* 328 U.S. at 580. Relying on its "historic power of equity to set aside fraudulently begotten judgments," *Chambers,* 501 U.S. at 44 (quoting *Hazel-Atlas,* 322 U.S. at 245), the Court determined that temporarily vacating the judgments in favor of Defendants until they provided bona fide documentation addressing the Court's concerns was appropriate to prevent a possible miscarriage of justice.

B. Motion for New Trial under Rule 59.

**\*11** The Court first turns to the Plaintiff's central argument--requesting the Court to set aside the jury verdict and grant a new trial because of Defendants' alleged misrepresentations. Plaintiff's original motion for new trial was timely filed pursuant to Rule 59 of the Federal Rules of Civil Procedure. At the Court's direction, Plaintiff filed an amended motion for new trial after reviewing and incorporating the submissions of Defendants pursuant to the January 23rd Order. The amended motion for new trial relies more heavily on the Court's power under Rule 60(b) to set aside the verdict and grant a new trial for "fraud on the court," rather than Rule 59. [FN11]

> FN11. The gravamen of Plaintiff's legal argument in his amended motion for new trial centers on the Court's authority to set aside a verdict based on "fraud on the court." Pl.'s Am. Mot. at 19-20. Plaintiff also cites Rule 60 as the authority under which the Court can grant such relief. *Id.* at 2. However, Plaintiff's amended motion also cites to *Gill v. Rollins,* 773 F.2d 592 (4th Cir.1986), a Rule 59 case, for the proposition that Defendants' proffer of false testimony warrants a new trial. (*See* Pl.'s Am. Mot. at 6.) Further, the fraud on the court argument under Rule 60(b) is framed as *additional* grounds for relief. (*Id.* at 18) ("Asserting Statements Known to be False to the Court *also* Constitutes a 'Fraud on the Court." ') (emphasis added).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 13

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

Defendants addressed the issue of a new trial under both Rule 59 and Rule 60 in their Opposition to Plaintiff's Amended Motion. Plaintiff also explicitly cites to Rule 59 in his Reply to Defendants Opposition. (*See* Pl.'s Reply at 14.) Based on the foregoing, the Court addresses Plaintiff's grounds for new trial under both Rules 59 and 60.

The Court will review Plaintiff's motion for a new trial under both Rules 59 and 60(b). Plaintiff's principal contention under either rule is that the Court should grant a new trial because Defendants proffered false testimony. The difference is that under Rule 60(b), Plaintiff must demonstrate more than false testimony to warrant vacating the verdict for "fraud on the court." Further, Plaintiff's contention of "fraud on the court" extends to the Court's December 18th Order. The Court first turns to whether the Court should grant a new trial under Rule 59 because the jury verdict was based on false testimony, and addresses the thornier question as to whether the conduct in this case rises to the level of fraud on the court in part C.

1. Standard of review.

Rule 59 states that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Fed. R. Civ. P. 59(a). In considering a motion for a new trial under Rule 59 in this circuit "a trial judge may weigh the evidence and consider the credibility of the witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Poynter by Poynter v. Ratcliff,* 874 F.2d 219, 223 (4th Cir.1989); *Conner v. Schrader-Bridgeport Int'l, Inc.,* 227 F.3d 179, 200 (4th Cir.2000); *Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 108 (4th Cir.1991); *Aetna Cas. & Sur. Co. v. Yeatts,* 122 F.2d 350, 352-353 (4th Cir.1941).

The first two prongs of this standard requires the district court to determine "purely factual questions," whether (1) the verdict is "against the weight of the evidence" or (2) "based upon evidence which is false." *Atlas Food Sys. and Servs., Inc., v. Crane Nat'l Vendors Inc.,* 99 F.3d 587, 594 (4th Cir.1996) (discussing new trial standard within context of jury damages). If the court is of the opinion that the verdict is based on any of these enumerated grounds, the court has a duty to remove the case from the jury and recommit it to a new one. *See Mattison,* 947 F.2d at 108. The trial court's exercise of its power to grant a new trial "is not in derogation of the right of trial by jury but is one of the historic safeguards of that right." *Id.* (quoting *Aetna Cas.,* 122 F.2d at 352-53).

*12 The decision to grant or deny a motion for a new trial lies at the heart of the district court's sound discretion and "will not be disturbed absent a clear showing of abuse of discretion." *Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). Where a new trial is granted on the grounds that "some undesirable or pernicious influence has intruded into the trial," the trial court's discretion is broader than if the new trial "is granted on the ground that the verdict is against the weight of the evidence." *A.I. Massey, et al., v. Gulf Oil Corp.,* 508 F.2d 92, 94 (5th Cir.1975) (contrasting appellate standard of review of trial court's decision to deny a motion for new trial with the decision to grant the motion). The burden of demonstrating harmful error warranting a new trial falls on the party seeking the relief. *See Equal Employment Opportunity Comm'n v. Marion Motel Ass'n,* 763 F.Supp. 1338, 1341 (W.D.N.C.1991) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2803 (1973) (citing and collecting cases)).

2. Motion for new trial based on false evidence.

[1] Plaintiff moves for a new trial on the basis that Defendants proffered false testimony at trial involving a material issue. [FN12] A verdict based on perjury is one example of the injustice to be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 14

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

avoided through the grant of a new trial, if necessary. *See, e.g., Isley v. Motown Record Corp.,* 69 F.R.D. 12, 16-17 (S.D.N.Y.1975). Although the Fourth Circuit has not precisely addressed the standard for granting a new trial based on the contention that the jury verdict was based on false testimony, the Sixth Circuit applies a three prong test which the Court adopts herein.

> FN12. Defendants attempt to frame the question as whether Defendants' allegedly false testimony constitutes newly discovered evidence warranting a new trial. The Court finds the Plaintiff's formulation of the issue more on point. What we have here is a case where three defendants and one material witness are accused of falsely testifying to material issues in their defense--the layoff of the Plaintiff. The proper question then is whether the jury verdict was "based on false evidence" as understood under Rule 59, not whether the evidence of false testimony is newly discovered.

The standard for granting a new trial based on false testimony is set forth in *Davis v. Jellico Comty. Hosp., Inc.,* 912 F.2d 129, 133 (6th Cir.1990).

> [A] new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that without it, a jury might have reached a different conclusion; that the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial.

*Id.* at 133; *Williams v. United Dairy Farmers, et al.,* 188 F.R.D. 266 (S.D.Oh.1999) (applying *Davis* standard to motion for new trial based on false testimony under Rule 59 in employment discrimination case). *See also Antevski v. Voklswagenwerk Aktiengesellschaft,* 4 F.3d 537, 540 (7th Cir.1993) (citing *Davis* for proposition that if the verdict is based on false testimony, district judge has the discretion to grant the injured party a new trial under Rule 59). Applying this three-pronged standard, the Court finds that a new trial is warranted.

a. Defendants proffered false testimony.

Ostensibly, the threshold question is whether Defendants proffered false testimony. *See Sanden v. Mayo Clinic,* 495 F.2d 221, 225 (8th Cir.1974). The Court finds that in testifying to the facts surrounding the critical event of the layoff, Defendants represented to the Court on summary judgment and to the jury at trial, the existence of a tangible layoff "list." [FN13] Having observed the demeanor of Defendants and witnesses and assessed their credibility, combined with the fact that Defendants failed to provide a written list after two requests from the Court, the Court finds reasonable cause to believe that testimony introduced at trial regarding the existence of a layoff list including the Plaintiff was false. The reference to a "list" is particularly central to Defendants' defense that Plaintiff was removed from employment because VeriSign had a legitimate business reason--a company wide reduction in payroll by elimination of positions. The credibility issue of the defense is whether the employer here represents truthful information about a company decision to include a particular employee in a layoff. Layoff lists are certainly not required to substantiate a lawful reduction in force. However, the facts in this case involve a technology company that transmits data and management information electronically, orally and written; it is an odd occurrence not to find a single email, memorandum, list or note of any sort that mentions Plaintiff in the context of a layoff.

> FN13. Plaintiff also contends that Defendants submitted false testimony regarding the fact that the other six VGI employees laid off with the Plaintiff in February 2001 were actually employees of Great Domains in California. However, Defendants and Ms. Serice never testified that the six other VGI employees laid off were *not* from California. At most, the fact that the six VGI employees worked in the Great Domains department was an omission by Defendants, not false testimony. The Court addresses this omission within the context of Plaintiff's motion to amend the December 18th Order

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 15

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

below.

**\*13** Defendants' misrepresentations regarding the existence of a layoff list began on summary judgment. In his declaration submitted on summary judgment, Defendant Wolford represented that "I was *presented with lists* of affected individuals by each staff member, and *I approved the lists.*" (Wolford Decl. ¶ 18) (emphasis added). Similarly, Jeff Johnson related that "[b]efore making the final decision about who should be *included in the list of people being laid off,* Rob Smith and I spoke with Heather Serice ... about the candidates we proposed for layoff. We also spoke with Doug Wolford, my supervisor about the *list of candidates for layoff.* Both Ms. Serice and Mr. Wolford approved the decision *to include Mr. Johnson in this list* of people, as well as the other individuals we had selected." (Johnson Decl. ¶ 18) (emphasis added).

Defendant Robert Smith stated "[w]e *came up with a list of people* based upon performance and job duties." (Smith Decl. ¶ 19) (emphasis added). Smith also said that "some of [Plaintiff]'s deficiencies ... occurred while the *layoff list was being generated."* (*Id.* ¶ 20) (emphasis added). He added that "[b]oth Ms. Serice and Mr. Wolford approved of the decision *to include Mr. Johnson in this list of people."* (*Id.* ¶ 21) (emphasis added). Based on these affidavits, Defendants represented in the summary judgment motion that "Ms. Serice ... approved the list of people selected for layoff." (Defs.' Summ. J. Mot. at 13.)

Defendants' testimony at trial continued to refer to a list of individuals selected for layoff. Defendant Wolford testified that his direct reports "came back to me [in] late January or early February, with *lists of people* that they had selected for layoff. And I got *lists* from at least three different departments within my division." (Trial Tr. Vol. III at 184) (emphasis added). Wolford elaborated: "the leadership of the group would sit with me and *have a list, and I would look at the list* and I would say, you know, 'Are these your underperformers?' ... then I would *approve the list."* (*Id.* at 185.) Wolford testified that he was "sad ... to see [Plaintiff's] name there [on the list], but I wasn't suprised." (*Id.* at 187.)

Defendants Johnson and Smith also made several references to a layoff list. Defendant Johnson testified that in early February 2001, "we were finalizing a list, hav[ing] been in the process of communicating with several managers across VeriSign, to identify people who were going to be [laid off]." (Trial Tr. Vol. II at 148.) He further explained that "[u]ltimately, Human Resources and my boss *approves the list ... then I have to present that list to my boss,* Doug Wolford...." (*Id.* at 151) (emphasis added). Smith stated that "I had been *reviewing the lists of names with Jeff Johnson ... and had been putting together a list of names* of people that would be part of a reduction in force." (Trial Tr. Vol. III at 90) (emphasis added). He further testified that neither Wolford nor Serice changed the list after Smith and Johnson presented them with the list of selected employees. (*Id.* at 96.)

**\*14** Finally, Ms. Serice made numerous references to a layoff list in her testimony. Ms. Serice began by testifying that "Rob Smith and Jeff Johnson *showed me the list* that they had selected, and *I reviewed the list,* ultimately said it was okay and approved it." (Trial Tr. Vol. II at 277) (emphasis added). Ms. Serice then outlined the process for selecting employees for the layoff. First, she testified that "Jeff Johnson and Rob Smith *actually put together the list* and selected individuals for layoff ... And they also *ran the list by me and I approved it."* (*Id.* at 279) (emphasis added). Ms. Serice further testified that "I *reviewed the list* to make sure that there was not *anybody on the list* that I had additional information that I needed to alert the manager prior to them making the final call that this person was going to be on the layoff." *Id.* (emphasis added). On crossexamination, Ms Serice testified that she could not recall the date when she *received the list* identifying the Plaintiff for layoff. (Trial Tr. Vol. III at 19.)

In sum, the Court finds that Defendants represented to the Court and the jury that they (1) engaged in a reasoned, deliberate analysis of who should be included in a layoff list, (2) reviewed names of selected individuals on a layoff list, (3) approved the individuals appearing on a layoff list, (4) included the Plaintiff on a layoff list, and (5)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 16

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

approved the layoff list selecting the Plaintiff for termination.

The problem is that there is no layoff list identifying the Plaintiff for layoff. Defendants have several responses to this apparent misrepresentation. First, they argue that "defendants have never suggested that they had any formal written list that identified the individuals selected for layoff from within VGI in February 2001 and why they were selected, which was signed off on by all of the relevant decision makers." (Defs.'s Opp'n at 12.) This is patently false. As summarized above, the record demonstrates that Defendants testified to a list of individuals selected, reviewed and approved by Defendants for layoff. To argue that the above record does not even so much as *suggest* the existence of a formal written list is disingenuous at best.

Defendants' second contention fares no better. Defendants argue that "the testimony in which the term 'list' is used is different for each witness, and could be interpreted to refer to a verbal or written list." (*Id.*) This argument is also meritless. The common definition of the term "list" is a "series of names or other items written or printed together in a meaningful grouping or sequence so as to constitute a record." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1121 (2ed.1987). In certain contexts, a list can refer to a verbal list of names.

However, it is clear that in this case Defendants were referring to a *tangible* list of names of individuals selected, reviewed and approved for layoff; one that was "written or printed" so as to "constitute a record." Much of Defendants' representations on summary judgment unambiguously use the term list in the tangible sense. (*See, e.g.,* Wolford Decl. ¶ 18 ("I was *presented* with lists of affected individuals...."); Smith Decl. ¶ 20 (Plaintiff's deficiencies occurred "while the layoff list was being *generated.*" )). The testimony at trial was even more explicit. (Trial Tr. Vol. III at 184 ("my direct reports ... came back to me with lists of people...."); *Id.* at 185 ("I would *look* at the list ..."); Trial Tr. Vol. II at 151 ("I have

to *present* that list ..."); Trial Tr. Vol. III at 90 ("[I] had been putting together a list of names ..."); Trial Tr. Vol. II at 277 ("Rob Smith and Jeff Johnson *showed* me the list that they had selected and I reviewed the list ...").

**\*15** Faced with these facts, Defendants switch gears and contend that even if there is no list the absence is immaterial. (*See* Defs.' Opp'n at 14.) Defendants essentially resort to the argument that this Court has no role in second-guessing business decisions and Defendants' decision to layoff their employees without the benefit of a list falls within that sphere of corporate independence. Defendants simply miss the point. The Court has no interest in participating in personnel matters of the company. Federal law proscribes unlawful discrimination in the workplace and Defendants are answerable under the law to produce accurate evidence in court supporting their legitimate non-discriminatory reason for Plaintiff's termination. Defendants are being sued for retaliatory discrimination for the termination of Plaintiff's employment in violation of federal law. The facts surrounding whether Plaintiff was terminated as part of a legitimate layoff of employees or for an unlawful purpose are integral to the critical question in this case. Indeed, these facts are essential to the defense of the non-pretextual rationale for termination. The issue is whether Defendants lied to the jury by stating the Plaintiff was included in a layoff or whether termination of the Plaintiff was because of protected activity.

The Court finds that Defendants presented false testimony to this Court and the jury concerning the existence of a tangible layoff list of VeriSign employees selected for termination that purportedly included Plaintiff. Review of the record indicates that Defendants provided clear, unambiguous testimony that Defendants assembled a tangible list of employees selected for layoff and that Plaintiff was on that list. There is, of course, no written list or evidence that there ever was a list. Simply put, Defendants lied.

b. The jury might have reached a different conclusion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 17

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

Having found that the testimony given by several material witnesses was false, the next question is whether the jury might have reached a different conclusion without the false testimony. *Williams,* 188 F.R.D. at 275. The Court holds that the jury may have reached a different verdict if they were presented with all the relevant facts, and combined with the appearance of impropriety, a new trial is warranted.

This case turned on questions of credibility, quintessential questions for a jury. *See Williams,* 188 F.R.D. at 276 (finding that possibility that jury verdict might have been tainted by false testimony in employment discrimination case was sufficient to warrant new trial where issues at trial "turned on accusations and denials."). The jury was presented with two starkly different stories. Plaintiff and his witnesses presented a case where his superiors had conspired against him to have him terminated under the guise of a layoff because of his complaints about management's treatment of fellow employees. Defendants portrayed a Plaintiff with performance and personnel problems who was selected for inclusion in a layoff based on these deficiencies. Since there was very little documentation by either side, the case boiled down to whose story the jury believed.

**\*16** Defendants' consistent testimony about a written, tangible layoff list including the Plaintiff unquestionably bolstered the credibility of Defendants in a case where credibility was key. Defendants' non-pretextual rationale for the Plaintiff's termination was that he was selected to be laid off because of his recent deficiencies. Defendants did not produce any documentary evidence that Plaintiff was subject to any disciplinary action or formal poor performance appraisals. Defendants largely proffered testimony indicating that the decision to eliminate Plaintiff's position was undertaken in a deliberate and equitable fashion. The most salient support for this proposition was Plaintiff's inclusion in a layoff list generated by Defendants Johnson and Smith and then reviewed and approved by Defendant Wolford and Ms. Serice.

Excising the testimony referring to the layoff list from Defendants' case paints a wholly different picture of the layoff and how Plaintiff was included in that layoff. Without lengthy testimony concerning a reasoned, deliberate inclusion of Plaintiff's name on a tangible list, Defendants' non-pretextual rationale does not appear as credible. The lack of a tangible layoff list identifying Plaintiff for termination, the fact that Defendants misrepresented the existence of such a list, and the paucity of documentation of Plaintiff's poor performance, reasonably suggest an illicit motive for termination. Under these circumstances, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose ... the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citations and internal quotations omitted).

The lack of a written, tangible layoff list with Plaintiff's name on other documents showing a layoff in his group, also lends support to the claim that Defendants' shifting non-pretextual rationale indicates that Plaintiff was terminated for reasons other than the ones cited by Defendants. At first, Defendants stated that the Plaintiff's position was eliminated because of the redundancy of his position. At his termination meeting and in his termination letter, Plaintiff was informed that he was being laid off as part of a company wide reduction in force. (Trial Tr. Vol. III at 98-99; Pl.'s Tr. Ex. 7). Plaintiff was not told he was being fired for poor performance or for engaging in sexual harassment. It was only later, at summary judgment, that Defendants first asserted that Plaintiff was selected for layoff because of performance and potential harassment problems.

Defendants' proffer of additional reasons over time for the elimination of Plaintiff's position, although not inconsistent, is an additional ground for a trier of fact to infer that Defendants' explanations may be pretext. *Equal Employment Opportunity Comm'n v. Sears Roebuck & Co.,* 243 F.3d 846, 852-53 (4th Cir.2001); *Perfetti v. First Nat'l Bank of Chicago,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 18

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

950 F.2d 449, 456 (7th Cir.1991) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence, the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification."). Evidence that there is no tangible list identifying Plaintiff for layoff and that Defendants falsely testified to one, combined with the absence of any memoranda, email or written notes indicating that Plaintiff was selected for layoff, may lead a jury to question Defendants' changing non-pretextual rationale and return a verdict in favor of Plaintiff.

**\*17** Finally, courts should not countenance verdicts that even appear to be based on false testimony. "[T]here is a class of cases where some irregularity so taints the trial that the appearance of impropriety compels a new trial as a prophylactic rather than remedial measure. As was stated long ago, the fountains of justice must be kept pure and free from suspicion, or the citizen will lose all respect for the laws, and the rights of persons, and property will become insecure." *Budoff v. Holiday Inns, Inc.,* 732 F.2d 1523, 1526 (6th Cir.1984) (internal quotes and citations omitted) (holding that district court had abused its discretion in denying motion for new trial on basis of improper communication between counsel and juror). Defendants' evidence regarding the layoff is so thoroughly undermined by their false testimony involving a layoff list that failing to grant a new trial would be tantamount to approving the use of false evidence to garner a favorable jury verdict.

c. Plaintiff was unaware of the falsity of Defendants' testimony.

The final question is whether the party seeking the new trial was taken by surprise of the false testimony or was unaware of the false testimony until after trial. The falsity of Defendants' testimony regarding the absence of a layoff list was not even implicated until the testimony of Ms. Serice. Ms. Serice was the fifth witness in Defendants' case. By the time the jury heard the testimony of Ms. Serice, it had already listened to at least one other Defendant discuss the existence of a layoff list. Further, the extent of Defendants' false evidence was not fully revealed until after Defendants complied with the January 23rd Order. It was not until after a review of the documents regarding the layoff that it became clear that a layoff list including the Plaintiff does not exist.

Under these circumstances, the Court finds that Plaintiff was unable to meet the false testimony presented at trial, and was unaware of the extent of the falsehood until after trial. Defendants argue that the Court should fault Plaintiff for failing to depose any witnesses and the failure to unearth the absence of a written list is a burden borne by the Plaintiff. To be sure, failure to depose any witnesses suggests that Plaintiff's counsel was not as diligent in its trial preparation as they could have been. However, Defendants could have just as easily falsely testified to the existence of a layoff list during deposition and again at trial. Each of Defendants and the material witness had no hesitation signing affidavits asserting the existence of a list or testifying in court to that effect. The fact that there was no tangible list was not revealed by Defendants until trial. And the fact that Defendants falsely testified to conceal that fact is unaffected by Plaintiff's failure to depose them.

In sum, the Court holds that a new trial is warranted in this case on Plaintiff's retaliatory discrimination claim under Rule 59 because (1) the testimony given by several material witnesses regarding an essential element of the case was false; (2) without this testimony, the jury may have reached a different conclusion; and (3) Plaintiff was unaware of the falsity of the testimony until after trial. The Court now turns to the motion for new trial based on fraud on the court under Rule 60(b).

C. Fraud on the Court.

**\*18** Plaintiff also moves to vacate the jury verdict and the December 18th summary judgment Order and grant a new trial on the retaliation, race discrimination claim, and ERISA claims under Rule 60(b) of the Federal Rules of Civil Procedure. Specifically, Plaintiff contends that the verdict and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 19

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

the summary judgment Order should be vacated because Defendants conspired with counsel to proffer false, misleading, and perjurious testimony amounting to "fraud on the court." As discussed below, notwithstanding that the Court finds that Defendants submitted false testimony at trial, these misrepresentations do not rise to the level of "fraud on the court."

1. Fraud on the court under Rule 60(b).

Under Rule 60(b), a district court has "the power in certain restricted circumstances to 'vacate judgments whenever such action is appropriate to accomplish justice." ' *Compton v. Alton Steamship Co., Inc.,* 608 F.2d 96, 101-102 (4th Cir.1979) (citations omitted). This is an "extraordinary [remedy] and is only to be invoked upon a showing of exceptional circumstances." *Id.* (citations omitted). In considering whether to vacate a judgment under 60(b), "courts must engage in the delicate balancing of 'the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts." ' *Id.* [FN14]

> FN14. Rule 60(b), entitled "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc." provides in pertinent part:
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no

longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Rule 60(b) provides various grounds for relief from a judgment. Rule 60(b) specifically provides for relief based upon (1) "newly discovered evidence which by the due diligence of the parties could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2), and (2) "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." *Id.* 60(b)(3). A motion to vacate based on newly discovered evidence or fraud must be made within one year of the judgment. *Id.* 60(b). Rule 60(b) also provides that a court may vacate a judgment when it determines that a party has perpetrated a "fraud upon the court." *Id.* Unlike a motion under Rule 60(b)(2) or (3), a motion to vacate under Rule 60(b) for fraud on the court does not have any time limit.

Fraud on the court under Rule 60(b) is materially different from the fraud or misconduct referred to in Rule 60(b)(3). *See Kupferman v. Consol. Research and Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir.1972). As the Fourth Circuit has explained, "[n]ot all

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 20

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

'fraud is fraud on the court." ' *Great Coastal Express v. Int'l Bhd. of Teamsters,* 675 F.2d 1349, 1356 (4th Cir.1982) (citing 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2870 at 253 (1973)). Courts have construed the concept of fraud on the court very narrowly to prevent it from being "overwhelm[ed][by] the specific provision of 60(b)(3) and its time limitations and thereby subvert the balance of equities contained in the Rule." *Id.*

**\*19** Mildly stated, a party "must clear a high hurdle in order to set aside the verdict based" on fraud on the court. *Perez-Perez v. Popular Leasing Rental, Inc., et al.,* 993 F.2d 281, 285 (1st Cir.1993). Fraud on the court is a "serious allegation ... involving corruption of the judicial process itself." *Cleveland Demolition Co. v. Azcon Scraps Corp.,* 827 F.2d 984, 986 (4th Cir.1987) (citation and internal quotes omitted). As Professor Moore's often cited formulation explains:

> Fraud upon the court should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud inter partes without more should not be a fraud upon the court, but redress should be left to a motion under Rule 60(b)(3) or to the independent action.

7 MOORE'S FEDERAL PRACTICE § 60.33 at 515 (1971) (cited in *Great Coastal Express,* 675 F.2d at 1356). *See also Demjanjuk v.. Petrovsky,* 10 F.3d 338, 352 (5th Cir.1994) (following Moore); *Kupferman,* 459 F.2d at 1078 (same).

Applying such a rigorous standard, courts have ordinarily limited the term "to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express,* 675 F.2d at 1356. *See also Lockwood v. Bowles,* 46 F.R.D. 625, 631-32 (D.D.C.1969) (listing examples of conduct rising to level of fraud on the court). In contrast, courts have held that "perjury or fabricated evidence are not

grounds for relief as 'fraud on the court." ' *Great Coastal Express,* 675 F.2d at 1357 (finding that fabricated testimony did not constitute fraud on the court) (citations omitted); *Lockwood,* 46 F.R.D. at 630 (same). False testimony, standing alone, does not qualify as fraud on the court because it is an "evil[ ] that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible." *Great Coastal Express,* 675 F.2d at 1357.

However, notwithstanding that perjury is insufficient, "the involvement of an attorney, as an officer of the court, in a scheme to suborn perjury should certainly be considered fraud on the court." *Cleveland Demolition,* 827 F.2d at 986; *Great Coastal Express,* 675 F.2d at 1357. Attorneys are held to the highest standards of integrity and have an obligation as officers of the court to be candid before the Court in conducting litigation. Indeed, "[c]ases dealing with fraud on the court often turn on whether the improper actions are those of parties alone, or if the attorneys in the case are involved." *Demjanjuk,* 10 F.3d at 352; *Hazel-Atlas Glass Co.,* 322 U.S. at 245-46 (finding that attorney's role in submitting false article constituted a "deliberately planned and carefully executed scheme" to defraud the court).

2. Plaintiff's allegations of fraud on the court.

**\*20** [2] Turning to the facts of the case at bar, Plaintiff contends that Defendants committed perjury by testifying to the existence of a tangible layoff list regarding Plaintiff's termination when in fact no such list existed. Plaintiff maintains that Defendants' counsel had a role in the perjury because, in his view, "it is inconceivable that defendants' lawyers were not aware of their clients' deceit." (Pl.'s Am. Mot. at 20.) Plaintiff relies on the fact that Defendants made similar representations concerning the existence of a tangible list in sworn, written declarations prepared by counsel and submitted to the Court on summary judgment.

As discussed above, the Court finds that Defendants' proffered false testimony warranting a new trial on Plaintiff's retaliatory discharge claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 21

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

under Rule 59. However, Defendants' false testimony at trial, as well as on summary judgment, does not constitute fraud on the court under Rule 60(b) because perjury alone does not constitute fraud on the court. Plaintiff argues that counsel was an active participant in the presentation of Defendants' false testimony and therefore the conduct constitutes fraud on the court. However, Plaintiff offers nothing more than speculation to base such a serious charge. Unfortunately, clients may present half-truths and whole lies to their attorneys as well as the court. To a certain extent, attorneys are entitled to rely on their clients' representations when drafting declarations and placing a client on the stand. But a client's false testimony, by itself, cannot constitute fraud on the court by simply alleging that their attorney should have or had to have known about the falsity of the testimony. [FN15]

> FN15. Plaintiff's reliance on *Demanjanjuk,* 10 F.3d at 338, is misplaced. In that case, the Sixth Circuit found that the record demonstrated that government attorneys had engaged in prosecutorial misconduct by failing to disclose to the court or detainee exculpatory information in their possession. *Demjanjuk* is factually inapposite from the case at bar because it addresses the fundamental question of the government's duty to disclose exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The Fourth Circuit rejected a similar argument in *Cleveland Demolition, Co.,* 827 F.2d at 986. In that case, the court rejected the defendant's Rule 60(b) motion to set aside the jury verdict in favor of the plaintiff on the basis that the plaintiff's counsel conspired with a witness to present perjured testimony. The court denied the defendant's motion to set aside the verdict based on allegations of fraud on the court because, *inter alia,* the defendant did not produce any evidence of a conspiracy to present false testimony between the counsel and the witness. *Id.* at 986-87.

In this case, Plaintiff would have the Court adopt the "automatic rule that, whenever a witness lies on the stand his attorney must have known about and actively participated in the perjury." *Cleveland Demolition, Co.,* 827 F.2d at 987. Plaintiff seeks the Court to do precisely what *Cleveland Demolition, Co.,* instructs not to--presume that Defendants' counsel knowingly participated in presenting false testimony. Therefore, because Plaintiff has not presented any evidence that Defendants' counsel conspired with Defendants to present false testimony regarding the layoff, Plaintiff has failed to demonstrate fraud on the court.

D. Motion to Amend or Set Aside the December 18th Order.

**\*21** Having found that the December 18th summary judgment Order cannot be vacated under Rule 60(b), the Court turns to whether it should amend the order under Rule 59(e). The Court finds that Plaintiff has not met his burden demonstrating that the Court should reconsider the December 18th Order to reinstate the Plaintiff's racial discrimination and ERISA claims.

1. Rule 59(e).

The Fourth Circuit recognizes Rule 59(e) as inherently providing "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (citations omitted). Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.' " *Id.* (citations omitted).

"Rule 59(e) motions may not be used ... to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* (citations omitted). In the event that "a party relies on newly discovered evidence in its Rule 59(e)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 22

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

motion, the party 'must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." ' *Id.* (citations omitted). As a general proposition "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.*

2. Amending the December 18th Order is unwarranted.

[3] The December 18th Order granted Defendants' partial summary judgment and dismissed Plaintiff's race discrimination and ERISA claims. In contrast to the earlier motions, the motion to amend the December 18th Order involves another possible misrepresentation by Defendants. In addition, to the false testimony regarding a layoff list, there is also the issue regarding Defendants' representations as to the other employees laid off from VGI in February 2001. At trial, it was revealed for the first time that the Plaintiff was the only employee in the VGI group to be laid off in Virginia. After Defendants complied with the January 23rd Order, it became clear that the six other VGI employees laid off in February 2001 were part of Great Domains, another department of VGI located entirely in California. Plaintiff contends that since the Court's summary judgment Order dismissing Plaintiff's race discrimination claim was premised on the existence of a layoff list and the inference that the six other employees were part of VGI's Virginia office, the Court should amend the December 18th Order to reinstate the race discrimination claim.

Admittedly, Defendants misrepresented the existence of a layoff list in their affidavits submitted on summary judgment. Also, Defendants presented the facts of the layoff in such a way that it was entirely reasonable for this Court to conclude that the other employees laid off in February 2001 were actually Plaintiff's co-workers in the Herndon, Virginia office. The fact that the six employees were actually employed by Great Domains in California did not become apparent until long after summary judgment was entered. The fact that the six other employees were not part of the Virginia office and were in fact located on the other side of the country is a significant detail in the Plaintiff's

termination. After all, the six other employees were the similarly situated employees the Court looked to in determining whether there was any discriminatory animus in the decision to terminate Plaintiff. The Court finds that Defendants' failure to mention that the six other employees laid off by VeriSign in February 2001 were employees of Great Domains in California was a material omission. The issue of whether counsel's failure to alert the Court to this fact is sanctionable under Rule 11 is addressed below. *See* discussion *infra* Part II.E.

*22 Nonetheless, the Court declines to amend the December 18th Order and reinstate the race discrimination and ERISA claims. Plaintiff cannot overcome the fatal fact that what was true at the summary judgment stage remains true now: the Plaintiff does not have any evidence that similarly situated employees outside his protected class were treated differently than Plaintiff. The following facts are undisputed: (1) VeriSign went through a series of layoffs in 2001; (2) the VGI department experienced layoffs in February 2001; (3) Defendants Johnson and Smith selected Plaintiff for termination in February 2001; (5) Defendants Johnson and Smith selected six other employees from VGI, albeit a VGI group named Great Domains located in California, for layoff in February 2001; (6) twelve total employees in the Mass Markets group (VGI's parent group) were laid off in February 2001; and (7) Plaintiff was the only African-American terminated in February 2001. [FN16] The lack of a layoff list or the fact that the six other VGI employees were located in California does not change the reality that the Plaintiff still fails to make a prima facie claim of racial discrimination. (*See* December 18th Order at 26); *see also Brown v. Runyon,* No. 96-2230, 1998 WL 85414, *2 (4th Cir. Feb.27, 1998) (unpublished); *Reese v. Dobson,* Civ. Action No. 3:01cv181, 2001 U.S. Dist. LEXIS 12853, at *10 (E.D.Va.2001). [FN17] Similarly, Plaintiff provides no grounds for amending the summary judgment Order with respect to his ERISA claim. Plaintiff has still failed to provide any evidence that he actually suffered any damages in the form of unpaid medical bills triggering a cause of action under ERISA.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 23

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**

FN16. The Court has reviewed Plaintiff's new racial discrimination claim based on the allegation that Bruce Beckwith was his replacement and finds that it is wholly unsupported by the record.

FN17. Plaintiff's failure to state a prima facie race discrimination claim stands in contrast to his retaliation claim where, as explained in the December 18th Order, Plaintiff met his prima facie case for retaliation and raised an issue of fact regarding Defendants' rationale for the elimination of his position.

E. Sanctions under Rule 11.

Finally, the misrepresentations by Defendants in their affidavits presented on summary judgment raise the issue of whether Rule 11 sanctions should be imposed against Defendants' counsel. [FN18] The issue is limited to counsel's representations on summary judgment because Rule 11 only applies to pleadings and written motions that have been presented to the court. *See Adduono v. World Hockey Ass'n,* 824 F.2d 617 (8th Cir.1987).

FN18. Plaintiff did not follow proper procedure under Rule 11 and file his motion for sanctions separately from his motion for new trial. Nonetheless, the Court retains the power to impose sanctions *sua sponte* under Rule 11 if it first enters an order describing the specific conduct violative of Rule 11 and directing the alleged offender to show cause as to why the conduct did not violate Rule 11. Fed. R. Civ. P. 11.

Rule 11 imposes an obligation on all officers of the court to ensure that the allegations and other factual contentions in their written submissions have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). Several obligations flow from this basic rule. First, reasonable inquiry must precede the presentation of any pleading, written motion or other paper. *See Cabel v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). Second, a deliberate misstatement may not be

presented as a statement of fact. *See Frazier v. Cast,* 771 F.2d 259, 265 (7th Cir.1985). Third, an omission may be equally misleading as an affirmative false statement. *See In Re Ronco,* 838 F.2d 212, 218 (7th Cir.1988).

Here, there is no evidence demonstrating reasonable cause to believe that counsel of record for Defendants actively or passively participated in a fraud on the court. The evidence indicates highly motivated executives extending the English language far beyond truthful grasp. The Court declines to engage in a probe of counsel's conduct in the absence of some reasonable cause that counsel failed to conduct a reasonable inquiry into the existence of layoff list or the location of the six other VGI employees.

III. CONCLUSION

*23 For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Amended Motion For New Trial on his retaliatory discharge claim is GRANTED, and it is

ORDERED that Plaintiff's Motion for Additional Discovery on the retaliation claim is GRANTED. It is further

ORDERED that Plaintiff's Motions to Vacate, or in the alternative Amend the December 18, 2001, summary judgment Order are DENIED, and finally it is

ORDERED that the December 18, 2001, summary judgment Order in favor of Defendants dismissing Plaintiff's race discrimination and ERISA claims is REINSTATED.

The Court will issue a forthcoming Order setting a status conference date to schedule a new trial date on Plaintiff's unlawful retaliation claim under § 1981 .

The Clerk is directed to forward a copy of this Order to counsel.

Not Reported in F.Supp.2d, 2002 WL 1887527

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 24

Not Reported in F.Supp.2d, 2002 WL 1887527 (E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769

**(Cite as: 2002 WL 1887527 (E.D.Va.))**


(E.D.Va.), 89 Fair Empl.Prac.Cas. (BNA) 769


   **Motions, Pleadings and Filings (Back to top)**

• 1:01CV00765 (Docket) (May. 16, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                  Page 1

Not Reported in F.Supp.2d, 2000 WL 1876917 (S.D.N.Y.)

**(Cite as: 2000 WL 1876917 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Stephen PEYSER d/b/a One By Diana, Diane
Moss, Plaintiffs,
v.
SEARLE BLATT & CO., LTD., et al., Defendants.
**No. 99 CIV. 10785 WK.**

Dec. 22, 2000.
Steven J. Hyman, McLaughlin & Stern, LLP, New
York, for Plaintiffs.

Robert P. Lynn, Jr., Mineola, Joel K. Bohmart,
Bohmart & Sacks, P . C., New York, for
Defendants.

MEMORANDUM & ORDER

KNAPP, Senior District J.

*1 In this intellectual property lawsuit, plaintiffs
Stephen Peyser d/b/a "One By Diana" and Diane
Moss (collectively, "plaintiffs") move for relief
from our Order granting summary judgment to
defendants Searle Blatt & Co., Steve Searle, and
Alice Blatt (collectively, "Searle"), claiming that
newly discovered evidence (namely, an exemplar of
an allegedly infringing sweater sold by Searle)
should alter the outcome. For reasons noted below,
we deny plaintiffs' motion.

BACKGROUND
We assume the reader's acquaintance with our
underlying Memorandum & Order (hereinafter,
"our Order" or the "August 2 Order"), *Peyser v.
Searle Blatt & Co.* (S.D.N.Y. Aug. 2, 2000) 2000
WL 1071804, 2000 U.S. Dist. LEXIS 10793.

Contrary to what we said in the "Background"
section of that Order, a company called Pamela
Pappas Designs, Inc. (and not Carol Horn or Roni
Rabl) sold approximately 160 sweaters to Searle.
*Cf. Pevser,* 2000 U.S. Dist. LEXIS 10793, at *2.
These sweaters allegedly bear a substantial
similarity to plaintiffs' protected "Basket Weave"
design. The vendor, Pamela Pappas Designs, is now
defunct.

According to plaintiffs, about three weeks after we
issued our Order, they were exhibiting their
company's clothing at the Javits Center. One
Barbara Shuser approached the exhibit booth and
began to talk with Peyser. Plaintiffs had never met
her before. She pointed out a sweater in plaintiffs'
collection and stated that she had "bought a sweater
like this from Searle" several years before. From the
ensuing discussion, it came to light that Shuser still
owns a garment that she says she bought from a
Searle store "in or about 1994" (Shuser Decl. ¶ 3).
Shuser subsequently has been able to remember
with more precision the circumstances and timing of
her purchase, and she now recollects that she made
the purchase in the summer of 1994, "most likely in
August, because the weather was hot" (Shuser
Supplemental Decl. ¶ 4). Although Shuser no
longer has the receipt, the original labels still hang
from the sweater, stating "Searle Blatt... Rayon
Chenille" (Shuser Decl. ¶ 4 & Ex. A). Plaintiffs
claim that the sweater's weave mimics their own
product from that era.

Plaintiffs at first declared that their "discovery of
the existence of this Searle sweater was purely
serendipitous" (Peyser Decl. ¶ 11). But, in
subsequent papers, they allege that they had made
significant efforts to locate such an exemplar. These
efforts supposedly included: (1) engaging in
hundreds of conversations with attendees at trade
shows concerning plaintiffs' "Basket Weave"
design, which discussions led plaintiffs to evidence
about the other defendants in this case but to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2000 WL 1876917 (S.D.N.Y.)

**(Cite as: 2000 WL 1876917 (S.D.N.Y.))**

nothing about Searle until plaintiffs met Ms. Shuser; and (2) mailing out "thousands of postcards offering a reward in the form of a free hat to any individual who had purchased a sweater other than one produced by [plaintiffs] but which had a similar design." (Peyser Reply Decl. ¶ 6 & Ex. B). Plaintiffs also affirm that they mailed out with invitations to their shows a circular offering the same reward on the same basis. (*Id.* ¶ 6 & Ex. C).

## DISCUSSION
**\*2** Under Fed.R.Civ.P. 60(b)(2), a district court may relieve a party from a final judgment upon newly discovered evidence that by due diligence could not have been discovered prior to the judgment. [FN1] In order to obtain such relief, the movants must show that:

> FN1. This rule refers to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." However, "the same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or 60(b)(2), and decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2)." *United States v. 710 Main Street, Peekskill* (S.D.N.Y.1990) 753 F.Supp. 121, 126 (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* (1973 & Supp.1990) § 2859, at 182).

(1) the evidence existed at the time of the summary judgment hearing but was discovered thereafter;
(2) they could not with due diligence have discovered the evidence earlier;
(3) the evidence is material to the issues and not merely cumulative or impeaching; and
(4) a new hearing considering the evidence would probably produce a different result (*i.e.,* the evidence is of such significance that production of it earlier would likely have changed the disposition of the case).
*Alpern v. Utilicorp United, Inc.* (8th Cir.1996) 84 F.3d 1525, 1535 (citation omitted); *see also MTB*

*Bank v. Federal Armored Express, Inc.* (S.D.N.Y. Feb. 2, 1998) No. 93 Civ. 5594, 1998 WL 43125, at \*3, *appeal of this issue dismissed as moot,* 175 F.3d 283, 287 (2d Cir.1999).

Generally, courts apply this test stringently, requiring that the conditions "be strictly met" and that the new evidence be "highly convincing"; hence, courts grant relief only under "extraordinary" or "exceptional" circumstances. *Id.* (quoting *710 Main Street,* 753 F.Supp. at 126); *Reforms Int'l v. Bush* (S.D.N.Y. Dec. 5, 1994) No. 94 Civ. 5964, 1994 WL 681890, at \*1 (quoting *Kotlicky v. United States Fidelity & Guar. Co.* (2d Cir.1987) 817 F.2d 6, 9; *Nemaizer v. Baker* (2d Cir.1986) 793 F.2d 58, 61). [FN2]

> FN2. Incidentally, we note (for its amusement value) that the plaintiffs' "newly discovered evidence" in the *Reforms International v. George Bush et al.* case consisted of an affidavit from the Reverend Joseph Geronimo, a voter in the 1992 Presidential election, who (along with some of his associates and followers) "became so confused... that he was thus unable to cast his vote in favor of any Presidential candidate." *Id; cf Bush v. Gore* (U.S. Dec. 12, 2000) No. 00-949, 2000 WL 1811418

Plaintiffs argue that the new evidence meets all of these above factors. We conclude, however, that plaintiffs have satisfied neither factor # 4 (material impact on outcome) nor factor # 2 (due diligence).

*A. Would the newly-found evidence probably have produced a different result?*

As our August 2 Order explained, we dismissed the case against Searle on grounds of laches because Searle demonstrated both (1) lack of diligence by plaintiffs and (2) resulting prejudice to itself. *Peyser,* 2000 U.S. Dist. LEXIS 10793, at \*12-13 (citing *Byron v. Chevrolet Motor Div.* (S.D.N.Y. Aug. 7, 1995) No. 93 Civ. 1116, 1995 WL 465130, at \*5). Courts apply a "sliding scale" for the amount of prejudice necessary to invoke laches. "Where there

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 2000 WL 1876917 (S.D.N.Y.)

**(Cite as: 2000 WL 1876917 (S.D.N.Y.))**

is no excuse for delay... defendants need show little prejudice; a weak excuse for delay may, on the other hand, suffice to defeat a laches defense if no prejudice has been shown." *Id.* at *21 (quoting *Byron,* 1995 WL 465130, at *7).

We adhere to our prior ruling that plaintiffs "slept on their rights": Their years-long "delay in notifying Searle was particularly inexcusable, so we need not find much prejudice in order to grant Searle's motion." *Id.* at *24, 25. That conclusion has not changed. We now further conclude that, even had we known about the existence of the Shuser sweater *before* we decided to grant summary judgment, we nevertheless would probably have resolved that sufficient prejudice to Searle had resulted from plaintiffs' delay to justify dismissal.

*3 Although we previously stressed the "appreciable prejudice" flowing from plaintiffs' and Searle's lack of exemplars, *id.* at *24, Searle has also suffered prejudice in other ways due to plaintiffs' procrastination. *See id.* at *21 ("Relevant kinds of prejudice include those resulting from unavailability of important witnesses, dulling of witness memories, loss of records, and continuing investments and outlays by the alleged infringer."). For example, the manufacturer that supplied Searle with the allegedly illegal garments has gone out of business and can no longer offer exemplars with which to compare the Shuser sweater and can no longer indemnify Searle (should justice ultimately so dictate). Also, Searle, its supplier, or its other agents may not be able to locate receipts, invoices, customer comments, and other potentially relevant documents.

Given the high standard for relief from judgment, we find that plaintiffs have not met their burden here.

*B. Did plaintiffs conduct a diligent search?*

For plaintiffs to prevail, they must show more than that they fortuitously came across the evidence. They must further evince that they took reasonably diligent (albeit unsuccessful) measures to find the evidence prior to our Order. The case law requires

that a movant provide specific examples of the attempts, if any, undertaken to locate the evidence at an earlier date. *710 Main Street,* 753 F.Supp. at 127; *see also Gemveto Jewelry Co. v. Jeff Cooper, Inc.* (S.D.N.Y.1985) 613 F.Supp. 1052, 1058-59, *vacated on other grounds,* 800 F.2d 256 (Fed.Cir.1986) (judgment vacated since affidavits detailing "sustained and intensive but unsuccessful" investigation satisfied due diligence requirement); *United States v. Walus* (7th Cir.1980) 616 F.2d 283, 303-04 (judgment vacated where "an affidavit of defendant's trial attorney accompanying the... motion describes in great detail the defendant's efforts to discover evidence").

In the case at bar, the following lingering concerns force us to conclude that plaintiffs failed to prove that they investigated in a sufficiently "intensive" manner:

(1) Plaintiff Diane Moss admits that she bought a Searle sweater in or around September or October 1994 but that she returned the garment to the store. *Peyser,* 2000 U.S. Dist. LEXIS 10793, at *5. Thus, "[i]n order to secure a refund amounting to a tiny fraction of the cost of a lawsuit, she inexplicably has forfeited key inculpating evidence." *Id.* at *24. This behavior casts doubt upon plaintiffs' self-serving, new assertion that "since 1994," they have asked at least hundreds of people about Searle exemplars. (*See* Peyser Supplemental Decl. ¶¶ 5-6). If plaintiffs were truly so concerned back in 1994, they certainly would not have cast away exactly what they were looking for once it fell into their hands during that year.

Plaintiffs suggest that they stepped up their crusade since 1997, but this claim also lacks credibility. Indeed, in Peyser's most recent affidavit, he makes a sweeping statement about inquiries allegedly made to "virtually every individual" identified on a variety of "Customer Lists." Common sense would oblige plaintiffs to identify at least some of the "individuals" in question, yet Peyser fails to name or describe his conversations with even one such customer. Thus, we conclude that to make his sweeping statement accurate, the word "must" should be added in an appropriate place, as follows:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 4

Not Reported in F.Supp.2d, 2000 WL 1876917 (S.D.N.Y.)

**(Cite as: 2000 WL 1876917 (S.D.N.Y.))**

*4 As to each of the Customer Lists, I can state with reasonable certainty that since 1994, we [ *must* ] have made inquiry with virtually every individual identified therein as to whether he or she had any knowledge of any [defendant] exemplar utilizing a Basket Weave Design... (*Id.* ¶ 6; italicized word added).

(2) Plaintiffs' proof of diligence is further marred by the lack of information about exactly when the claimed postcards and flyers were sent. Plaintiffs proffer cumulative "Customer Lists" but not precise dates. Thus, we cannot adequately reconstruct when, if ever, their alleged investigation began in earnest. Moreover, their search for exemplars remained far from comprehensive. Shuser herself "eventually" volunteered that she owned the Searle sweater--she had never directly been asked about exemplars. (Shuser Decl. ¶ 5; *see also* Peyser Decl. ¶¶ 7-8 (only after Shuser said that she owned the sweater did Peyser tell her about his lawsuit)).

(3) Via stickers attached to postcards, plaintiffs offered a free hat to "anyone who has purchased a sweater other than ours that uses our original basket weave design." This paltry offer does not impress us as a serious search for evidence. For example, it seems to us highly doubtful that anyone receiving Exhibit B to Peyser's Reply Declaration would realize that plaintiffs were seriously trying to gather important information.

CONCLUSION

The motion of plaintiffs Stephen Peyser (d/b/a One By Diana) and Diane Moss for relief from judgment as against defendants Searle Blatt & Co., Steve Searle, and Alice Blatt is hereby DENIED. Searle's prior motion for attorney's fees is still pending and will be considered at a later date.

SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 1876917 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:99cv10785 (Docket) (Oct. 25, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2005 WL 856839 (D.Conn.)

**(Cite as: 2005 WL 856839 (D.Conn.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Angel COLLAZO, Plaintiff,
v.
SIKORSKY AIRCRAFT CORP., Defendant.
**No. 3:03CV1620(MRK).**

April 13, 2005.
Angel Collazo, Bridgeport, CT, pro se.

Patrick J. Corcoran, Sikorsky Aircraft Corporation, Stratford, CT, for Defendant.

*RULING*

KRAVITZ, J.

**\*1** Plaintiff Angel Collazo, proceeding *pro se,* brought this action against his former employer, Defendant Sikorsky Aircraft Corporation, alleging that his termination was the result of improper race and national origin discrimination, as well as discrimination on the basis of a disability. *See* Amend. Compl. [doc. # 3] at 3-4. Currently pending before the Court is Mr. Collazo's motion for relief from judgment under Rule 60 of the *Federal Rules of Civil Procedure* [doc. # 41]. For the reasons set forth below, this motion is DENIED.

In its Ruling and Order dated June 23, 2004 [doc. # 36], the Court granted Defendant's Motion to Dismiss because (1) Mr. Collazo failed to timely file a charge with the United States Equal Employment Opportunity Commission ("EEOC") regarding his allegations that his termination was the result of improper discrimination, and (2) he

could not meet the legal standard for establishing that the statute of limitations on his claim should be equitably tolled. *Id.* at 3, 5-6. Judgment entered on June 25, 2004 [doc. # 37], and this case was terminated. Mr. Collazo filed an appeal to the Second Circuit on June 28, 2005. *See* Notice of Appeal [doc. # 38]. While his case was pending on appeal at the Second Circuit, Mr. Collazo filed his motion for relief from judgment under Rule 60 [doc. # 41] with this Court on October 12, 2004.

As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). Specifically, "once [a] plaintiff had filed a notice of appeal, the district court [is] divested of jurisdiction to grant or deny relief under either Rule 59 or Rule 60(b)," except with the permission of the Court of Appeals. *Weiss v. Hunna,* 312 F.2d 711, 713 (2d Cir.1963) (cited in *Kai Wu Chan v. Reno,* 932 F.Supp. 535, 537 (S.D.N.Y.1996)). There is one possible exception to this general rule, which is outlined in Rule 4(a)(4)(A) of the *Federal Rules of Appellate Procedure.* Rule 4(a)(4)(A) states in relevant part that:

> If a party timely files in the district court any of the following motions under the *Federal Rules of Civil Procedure,* the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: ...
> (iv) to alter or amend the judgment under Rule 59 ; ...
> (vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

Fed. R.App. Proc. 4(a)(4)(A). Thus, when a timely motion is made under Rule 59(e), or a motion for relief under Rule 60 is filed no later than ten days after a judgment is entered, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 856839 (D.Conn.)

**(Cite as: 2005 WL 856839 (D.Conn.))**

jurisdiction-divesting effect of a notice of appeal is nullified, and the district court is permitted to address the motion. *See Kai Wu Chan,* 932 F.Supp. at 538 (citing *Lowrance v. Achtyl,* 20 F.3d 529, 533 (2d Cir.1994)).

*2 Because Mr. Collazo's motion for relief under Rule 60 was filed more than three months after the judgment entered--not ten days thereafter--his motion did not qualify under the Rule 4(a)(4)(A)(vi) exception. Therefore, this Court did not have jurisdiction to consider Mr. Collazo's motion for relief under Rule 60, except by permission from the Second Circuit.

This Court never received permission from the Second Circuit to consider Mr. Collazo's motion for relief under Rule 60. In fact, as gleaned from Mr. Collazo's most recent filing with this Court [doc. # 45], Mr. Collazo apparently filed a motion with the Second Circuit for dismissal of his appeal without prejudice to reinstatement after this Court addressed his Rule 60 motion. The Mandate of the United States Court of Appeals for the Second Circuit [doc. # 46] (the "Mandate") lends support to this interpretation of Mr. Collazo's statement in his most recent filing. The Mandate states, in relevant part, that Mr. Collazo "moves for appointment of counsel and *to withdraw his appeal." Id.* (emphasis added). However, the Court of Appeals denied Mr. Collazo's motion to withdraw his appeal (along with his other pending motions) and dismissed his appeal because it "lack[ed] an arguable basis in law." *Id.* (citing *Nietzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); 28 U.S.C. § 1915(e)).

The Mandate issued on February 22, 2005, and a certified copy of the mandate was docketed in the District of Connecticut on March 3, 2005. *See* Mandate [doc. # 46]. Once the Mandate issued and Mr. Collazo's appeal was dismissed, this Court reacquired jurisdiction to consider his motion for relief under Rule 60.

In considering Mr. Collazo's motion for relief under Rule 60, this Court is well aware that most *pro se* plaintiffs "lack familiarity with the

formalities of pleading requirements," and because of this fact, courts "must construe *pro se* [pleadings] liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a [pleading] submitted by counsel." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002). Furthermore, it is well settled that *pro se* pleadings "should be read 'to raise the strongest arguments that they suggest.' " *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)).

However, the standard for granting a motion for relief from judgment under Rule 60 is strict. *See Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *cf. Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). "Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer,* 793 F.2d at 61 (quoted in *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994)). Rule 60 "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Nemaizer,* 793 F.2d at 61 (internal quotations and citations omitted). "Motions under Rule 60(b) are addressed to the sound discretion of the district court," *Mendell In Behalf of Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990), and Rule 60 is properly invoked "only upon a showing of exceptional circumstances." *Nemaizer,* 793 F.2d at 61.

*3 Rule 60(b) provides in relevant part:
On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 3

Not Reported in F.Supp.2d, 2005 WL 856839 (D.Conn.)

**(Cite as: 2005 WL 856839 (D.Conn.))**

Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
Fed.R.Civ.P. 60(b). Mr. Collazo primarily bases his motion for relief from judgment on "newly discovered evidence," and thus falls under Rule 60(b)(2). [FN1]

> FN1. The Court notes that Rule 60(b)(6)'s "catchall" provision does not apply in this case because "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391-92 (2d Cir.2001).

A party seeking relief from judgment under Rule 60(b)(2) "has an onerous standard to meet." *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir.2001). Specifically, the party seeking relief must demonstrate that
> "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the [party seeking relief] must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."
*Id.* (quoting *United States v. IBT,* 179 F.R.D. 444, 447 (S.D.N.Y.1998)).

Having carefully reviewed Mr. Collazo's motion for relief from judgment [doc. # 41], the Defendant's memorandum in opposition [doc. # 42], and Mr. Collazo's reply [doc. # 45], the Court finds that Mr. Collazo has failed to meet the onerous standard for granting his motion for relief from

judgment under Rule 60(b)(2). From the record before the Court, it appears that the majority of Mr. Collazo's allegedly "new" evidence--including his purported cassette recording of his unemployment benefits hearing with the Defendant--concerns events and acts that he personally knew about or was involved in that occurred prior to the filing of this lawsuit (and clearly prior to the Court's ruling on the motion to dismiss). Thus, Mr. Collazo was not justifiably ignorant of this allegedly new evidence, and it cannot be a basis for granting his motion for relief under Rule 60(b)(2). *See Int'l Bhd. of Teamsters,* 247 F.3d at 292. Furthermore, the letter from the Interim Executive Director of the State of Connecticut Commission on Human Rights and Opportunities (CHRO) to Mr. Collazo dated August 3, 2004 (attached to the motion for relief from judgment [doc. # 41] ) does not alter this Court's conclusion that Mr. Collazo did not meet the standard for equitable tolling of the statute of limitations for filing his EEOC charge. *See Int'l Bhd. of Teamsters,* 247 F.3d at 292.

*4 Therefore, Plaintiff's motion for relief from judgment [doc. # 41] is DENIED. It is apparent that Mr. Collazo feels very strongly about his case and believes that he was wronged. However, as sympathetic as the Court may be to Mr. Collazao's circumstances, he has not provided a proper legal or factual basis for the Court to grant him the extraordinary relief he requests from the Court's original ruling, which has already been effectively affirmed by the Second Circuit. Therefore, the Clerk is directed to close this file.
IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 856839 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:03cv01620 (Docket) (Sep. 22, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.