UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA LORUSSO and : | |
| DEBORAH EVANGELISTA, : | |
|     Plaintiffs, : | CIVIL NO. 3:03CV504(MRK) |
| : | |
| VS. : | |
| : | |
| H. RICHARD BORER, JR., : | JANUARY 25, 2006 |
|     Defendant. : | |
| : | |

**NON-PARTY WITNESS RALPH DeLUCCA JR.'S MEMORANDUM
OF LAW REGARDING INVOCATION OF FIFTH AMENDMENT PRIVILEGE**

Non-party witness Ralph DeLucca, Jr. respectfully submits this memorandum of law pursuant to the Court's direction at the evidentiary hearing this matter held on December 22, 2005. This memorandum addresses generally the question of Mr. DeLucca's privileges under the Fifth Amendment with respect to his testimony, and specifically discusses those rights in the context of certain questions put to him at the December hearing and highlighted by the Court for further examination. As we discuss below, we believe that Mr. DeLucca's invocations of the privilege were proper and permissible, and that the Court should not order him to answer any of the questions as to which he asserted his privilege at the prior hearing.

I.   BACKGROUND

The Court is fully familiar with the background of this case from the pre-trial and trial proceedings. For purposes of this memorandum, we will discuss briefly the current controversy before

the Court, as it does bear on the questions that have been raised regarding the scope of Mr. DeLucca's Fifth Amendment rights. The matter at issue is the plaintiffs' Motion for Relief from Judgment dated October 19, 2005. That motion is expressly based on a claim that "after the entry of judgment in accordance with the jury's verdict in this action, a material witness, namely Ralph DeLucca, Jr., came forward and admitted to having lied under oath at the jury trial of this action." Id.

In support of this motion, in addition to their memorandum of law, plaintiffs have submitted (1) an affidavit from John Pascale, brother of the plaintiffs, recounting a conversation he allegedly had with Mr. DeLucca on August 25, 2005, in which Mr. DeLucca supposedly stated "that he lied under oath while on the witness stand at the trial . . . ." Pascale Aff't, ¶ 4. Plaintiffs also rely on a transcript of a conversation between Mr. DeLucca and Deborah Evangelista on September 8, 2005, in which, plaintiffs claim, Mr. DeLucca admitted committing perjury at trial. The authenticity, integrity and admissibility of this tape recording have been questioned by defense counsel, and are in dispute.

II. DISCUSSION

1. Applicable Legal Standards

The general legal standards applicable to the question before the Court are well settled. First, as noted by the Court at the outset of the December 22, 2005 hearing, an allegation of perjury is of course a very serious matter. Any individual who, having

taken an oath before a competent tribunal or officer that he will testify, declare, depose or certify truly, "willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true" is guilty of perjury under 18 U.S.C. § 1621. Section 1621 is a felony punishable by up to five years imprisonment.

The Fifth Amendment provides in relevant part that "[n]o person . . . shall be compelled in any criminal proceeding to be a witness against himself. . . ." U.S. Const., amend. V. The privilege may be asserted in any civil, criminal or administrative proceeding. Kastigar v. United States, 406 U.S. 441, 444; 92 S. Ct. 1653, 1656 (1972). The privilege against self-incrimination "must be accorded liberal construction." Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951). It must be "broadly construed to serve the right it was designed to protect." Estate of Fisher v. Commissioner of Internal Revenue, 905 F.2d 645, 648 (2d Cir. 1990).

The Fifth Amendment privilege "may properly be invoked whenever a witness reasonably believes that his testimony could 'furnish a link in the chain of evidence needed to prosecute' him for a crime." Fisher, 905 F.2d at 648 (quoting Hoffman, 341 U.S. at 486). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious

3

disclosure could result." Hoffman, 341 U.S. at 486-87, 71 S. Ct. at 818; see also United States v. Lumpkin, 192 F.3d 280, 285 (2d Cir. 1999).

In some post-Hoffman cases, the Supreme Court has indicated that the "central standard" for application of the privilege is whether "'the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination.'" United States v. Apflebaum, 445 U.S. 115, 128, 100 S. Ct. 948, 956 (1980)(quoting Marchetti v. United States, 390 U.S. 39, 53, 88 S. Ct. 697, 705 (1968)). However, the availability of the privilege does not turn on the likelihood that the government would prosecute, or its intention to do so; the relevant inquiry focuses simply on "whether answering the question would tend to incriminate the witness." Fisher, 905 F.2d at 649.

Allegations of perjury in prior testimony clearly implicate the Fifth Amendment privilege. A witness "may claim the privilege if his new testimony might suggest that he had perjured himself in testifying on the same subject at a prior proceeding." United States v. Partin, 552 F.2d 621, 632 (5th Cir.), cert. denied, 434 U.S. 908 (1977); see also In re Corrugated Container Antitrust Litigation, 644 F.2d 70, 75 n.7 (2d Cir. 1981)(same); United States v. DeSalvo, 26 F.3d 1216, 1220 (2d Cir. 1994).

2.  Mr. DeLucca's Invocations of the Fifth Amendment Were Proper

During the December 22, 2005 hearing, Mr. DeLucca, on advice of counsel, invoked his privilege in response to many questions put

to him. Several of his assertions of the Fifth Amendment were not challenged by the Court or any of the parties. For instance, Mr. DeLucca invoked the privilege in response to a question from plaintiffs' counsel whether he had stated to John Pascale that he had lied under oath at the jury trial of this action. Transcript of December 22, 2005 hearing (hereinafter "Transcript"), p.20. The Court indicated that no briefing was necessary as to this question, and likewise allowed Mr. DeLucca to invoke in response to other core questions designed to establish the basic factual predicate for plaintiffs' motion, i.e., alleged trial perjury. Transcript, pp. 21-23. With respect to other questions, however, the Court did request briefing regarding Mr. DeLucca's right to invoke the Fifth Amendment. We discuss below the questions as to which the Court raised an issue regarding the right to invoke, applying the general legal principles set out above.

    a.   <u>Discussion with John Pascale</u>

Mr. DeLucca first invoked the Fifth Amendment privilege in response to a question about an alleged conversation with John Pascale on August 25, 2005. As noted, plaintiffs' moving papers included an affidavit from Mr. Pascale in which he claimed that Mr. DeLucca had admitted, during a conversation at West Haven City Hall on that date, to lying in his trial testimony. Plaintiffs' counsel first asked Mr. DeLucca about this broad allegation:

> Q   In connection with the matters in this case, did you have a conversation with John Pascale on or about September -- I'm sorry, August 25th, 2005, in the hallway of West Haven

> city hall and in the course of that conversation, make a
> statement to him that you lied under oath at the jury trial in
> this action?

Transcript, p.8.

Later, after defense counsel objected, the question was narrowed:

> Q   Mr. DeLucca, did you have a face-to-face conversation with John Pascale on August 25th, 2005?

Id., p.8. The Court opined that this question was "completely innocent," and directed briefing regarding Mr. DeLucca's right to invoke. Transcript, pp. 9, 11. A similar issue arose as to a related question regarding Mr. DeLucca's subsequent statements regarding the alleged August 25th conversation with Mr. Pascale:

> Q   On any date after August 25th, 2005, did you make a statement to Deborah Collins in which you flatly denied ever having a conversation with John Pascale on August 25th, 2005, regarding your trial testimony in this case?

Transcript, pp. 15-16; see also Transcript, pp. 56-58 (same or similar questions followed by invocation of privilege).

We believe that these questions, considered in context, clearly satisfy the "link in the chain" standard for availability of the privilege. "[T]he Supreme Court has long recognized that the real danger of self-incrimination may exist even when it is not readily apparent from the implications of the questions asked or the circumstances surrounding the inquiry." Fisher, 905 F.2d at 649 (citing Hoffman, 341 U.S. at 486). These seemingly innocuous questions put to Mr. DeLucca must be considered in the context in which they were posed -- the sworn statement from John Pascale

6

claiming that Mr. DeLucca admitted lying at trial during a conversation on August 25th. Plaintiffs are seeking to prove that fact, and anything bolstering Mr. Pascale's credibility would assist that effort. Thus, were Mr. DeLucca to admit even to speaking face-to-face with Mr. Pascale on the date in question, that answer could (and likely would) be used against Mr. DeLucca, to bolster and corroborate Pascale's credibility. Likewise, an admission that Mr. DeLucca had lied about whether he had such a conversation with Mr. Pascale could similarly be used to incriminate him -- either to show a "pattern of lying", as plaintiffs' counsel alleged (Transcript, p.16) or as some "consciousness of guilt" regarding the alleged conversation. Put otherwise, were Mr. DeLucca on trial for perjury at trial, the government likely would seek to offer the answers to both these questions in evidence against him.

    b.   <u>Questions about Richard Legg Testimony</u>

The next disputed questions focused on whether Mr. DeLucca was aware of the testimony of Richard Legg before taking the stand, and whether he made any admissions to Ms. Evangelista regarding that alleged awareness. The questions were as follows:

> Q   On or about September 8th, 2005, did you make a statement to Deborah Evangelista to the effect that before you took the witness stand in the jury trial of this action, you were aware of the content of the testimony of Richard Legg made before the same jurors?
>
> \* \* \* \*

> Q   Were you, in fact, apart from any statements you made to Deborah Evangelista on or about September 8th, 2005, were you in fact aware, before you took the witness stand in the jury trial of this case, of the content of Richard Legg's testimony?

Transcript, pp. 18-19, 20.

Mr. DeLucca's position with respect to these questions is similar to that regarding the questions about the alleged Pascale conversation. Plaintiffs theorize that a motive for Mr. DeLucca's alleged perjury was his belief that the case was "already won" -- and that he formed that belief before he took the stand when he learned of Mr. Legg's testimony, which supposedly was very helpful to the plaintiffs' cause. Memorandum in Support of Motion for Relief from Judgment, pp.17-18. Viewed in this context, Mr. DeLucca's answers to these "motive" questions clearly would provide a link in the chain of evidence needed to prosecute, and his exercise of privilege should be sustained. See Booth v. Wilson, 208 F.3d 202, 2000 WL 268567 (2d Cir. 2000)(copy attached) (reversing district court and sustaining witness's invocation of Fifth Amendment because, inter alia, answers "'would add to the sum total of a case against [the witness]'")(quoting United States v. Edgerton, 734 F.2d 913, 921 (2d Cir. 1984))[1]; see also Sharma v.

---

[1] The Booth decision is an unreported Second Circuit opinion. That court typically discourages reliance on such opinions; however, in this case the Court of Appeals reversed district court rulings regarding a witness's right to invoke the Fifth Amendment in the context of a civil case. In counsel's experience the fact that a reversal would not be published is most unusual, and we believe this ruling has clear "jurisprudential purpose." Cf. Second Circuit Rules § 0.23.

8

New Opal Corp., 2005 WL 1086459 (S.D.N.Y. May 6, 2005)(copy attached)(upholding broad invocation of Fifth Amendment rights even though basis not apparent at first).

    c.    <u>Questions Regarding Truthfulness of Other Trial Testimony</u>

During the December hearing, the Court questioned whether plaintiffs' counsel could examine Mr. DeLucca about other aspects of his trial testimony, to determine, in the words of plaintiffs' counsel, whether there was "a much greater breadth" to the alleged false statements, beyond any statements made to Pascale and Evangelista. Transcript, pp.26, 27. As to the propriety of such a line of questioning, we largely rest on the arguments made at the hearing. However such an inquiry might be fashioned, the answers could only incriminate, or potentially incriminate, Mr. DeLucca.

The key legal principle underlying our argument is that "a witness may not claim the privilege out of fear that he will be prosecuted for perjury for what he is about to say, [but] he may claim the privilege if his new testimony might suggest that he had perjured himself in testifying on the same subject at a prior proceeding." <u>United States v. Partin</u>, 552 F.2d at 632. Any answers to questions about the scope of alleged untruthfulness of prior testimony necessarily are potentially incriminating, either directly or by negative inference. The prior testimony was sworn, so there is no need for Mr. DeLucca to affirm its truthfulness. Direct questions such as "Was that answer false" clearly implicate valid Fifth Amendment concerns. However, even if Mr. DeLucca were

9

asked a broader question about his trial testimony, such as "Identify all truthful answers given at trial", the answer would also potentially be incriminating, since the omission of any responses would no doubt be taken as an indirect admission of falsity. For this reason, we believe that the objection a question-by-question review of his trial testimony was well founded.

d.  Questions About Out-Of-Court Statements to Others

Mr. DeLucca testified at the hearing that, after the allegations that he had lied became the subject of considerable press attention, some people asked him whether he in fact had lied. Mr. DeLucca testified that he said he had not lied. Transcript, p.53. Following this short exchange, the Court asked Mr. DeLucca to state what he had said regarding the allegations, and Mr. DeLucca invoked his privilege on advice of counsel. The Court expressed its concern, stating "If he's telling people in city hall but he won't come into this court and tell me under oath, I've got a bit of a problem about that . . . ." Transcript, p.53. The Court requested briefing on this issue as well.

The fact that a witness has made out-of-court statements on a particular subject matter does not affect the individual's Fifth Amendment rights when compelled to submit to questioning about the same subject matter in court. This point is best illustrated with an example from the criminal arena. Criminal defendants often have given post-arrest statements, out of court, to law enforcement

10

personnel. Such statements are routinely offered at trial, through the testimony of the law enforcement personnel. However, the fact that a defendant has given a statement regarding the charges against him does not permit the government to compel his testimony at trial about the charges against him, or even to question him about what he allegedly said to law enforcement personnel regarding the criminal charge. Similarly, the fact that Mr. DeLucca may have discussed with others in West Haven the allegations leveled by the plaintiffs does not preclude him from asserting the privilege and declining to answer direct questions about those allegations, or even to declining to reveal what he has previously said to others about the allegations.

## Conclusion

For these reasons, we respectfully submit that witness Ralph DeLucca, Jr.'s invocations of his Fifth Amendment privilege should be sustained in all respects.

RALPH DeLUCCA, JR.
THIRD-PARTY WITNESS

By _____
David T. Grudberg, ct01186
JACOBS, GRUDBERG, BELT, DOW & KATZ, P.C.
350 Orange St.
P.O. Box 606
New Haven, CT 06503
phone: (203) 772-3100
fax: (203) 772-1691
email: dgrudberg@jacobslaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was faxed and/or mailed first class, postage prepaid to the following this 25th day of January, 2006:

Karen Lee Torre, Esq.
51 Elm Street
Suite 307
New Haven, CT 06510


Jennifer L. Schancupp, Esq.
Thomas Katon, Esq.
Susman, Duffy & Segaloff, P.C.
P.O. Box 1684
New Haven, CT 06507

Paul J. Dorsi, Esq.
Donahue, Votto & DeGennaro, P.C.
415 Main Street
West Haven, CT 06516-0411

_____
David T. Grudberg