UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SANDRA LORUSSO and
DEBORAH EVANGELISTA

              :      Civil No.  3:03CV00504 (MRK)

        Plaintiffs

V.

H.  RICHARD BORER, JR.        :  February 14, 2006

        Defendant

**PLAINTIFFS' POST-HEARING MEMORANDUM OF LAW ON
THE ISSUE OF ADVERSE INFERENCES TO BE DRAWN FROM WITNESS'
INVOCATION OF THE PRIVILEGE AGAINST SELF-INCRIMINATION**

**I.  BACKGROUND**

On February 7, 2006, this court concluded an evidentiary hearing on plaintiffs' Motion for

Relief from Judgment.  Plaintiffs requested and received permission of this court to submit an

additional memorandum on the following issue: the extent to which the court should draw adverse

inferences against the defendant based on Ralph DeLucca, Jr.'s invocation of the Fifth Amendment

privilege against self-incrimination.  Uncontested evidence admitted at the hearing establishes that

Mr. DeLucca, in separate conversations with John Pascale and plaintiff Deborah Evangelista,

admitted that he lied under oath at the jury trial of this action.  Although Mr. DeLucca did not , in

either conversation, itemize each instance or otherwise provide an inventory of the extent of his false

testimony, to both individuals DeLucca consistently offered the same motive for having lied and in

the conversation with Evangelista, gave at least some specifics.[1]

In taking advantage of the privilege, Mr. DeLucca effectively prevented plaintiffs' counsel from examining him regarding these statements (and the meaning of a number of them) and determining the full extent of his false testimony at trial. In addition, in light of DeLucca's statement to Evangelista (p. 16, lines 4-8) that, among other reasons for lying, he was aware of the content of Richard Legg's trial testimony, DeLucca's invocation of the privilege further prevented plaintiffs' counsel from examining DeLucca regarding this matter and the source of his knowledge of Legg's testimony given this Court's sequestration order in place during the trial.

On October 19, 2005, plaintiffs submitted an extensive memorandum of law in support of their motion for relief from the judgement and set forth therein twenty-three enumerated examples of DeLucca's trial testimony the veracity of which is implicated by DeLucca's post-judgment admissions. See Plaintiffs' Memorandum of Law at pp. 27-31.

II.    **ARGUMENT**

A.    The Court Need Only Draw The Inference That Ralph DeLucca's Trial Testimony Was Sufficiently False And Suspect That The Instant Judgment Should Be Vacated.

----

[1] Apart from those particular instances he spoke of, DeLucca admitted his awareness that no matter what, the Mayor was not going to re-employ Lorusso, see Pltfs' Exh. 3, p. 13, lines 7-13; p. 14 at lines 2-7. DeLucca also made other references, including the unspecified reference to the regret he expressed to his wife ("I said some things I shouldn't have said and I should have said some things I didn't say, but I got caught up in it ..."). See p. 15 at lines 17-20.

2

There is ample authority to permit the drawing of adverse inferences against a defendant in a civil case based on a non-party witness' invocation of the Fifth Amendment privilege.  It should be noted, however, that the cases cited and discussed below arose in the context of the role the adverse inference(s) should play in a jury's determination of the defendant's <u>liability</u> in the underlying cause of action.  In other words, the issue was whether an adverse inference could be used by jurors as a basis, among others, for concluding that the defendant engaged in the acts complained of.  There is a conceptual difference and a meaningful distinction in the case at bar.  In this instance, the court will not make a decision as to whether defendant Borer violated the plaintiffs' rights.  The court is to decide only whether, under applicable Rule 60 authority, there is sufficient basis for concluding that false testimony may have tainted the verdict such that a new trial is warranted.  Thus, plaintiffs submit that the court need not draw an adverse influence against defendant Borer *per se* but need only draw an inference, and a reasonable one at that, that the jury's verdict was tainted by perjury such that a new trial is in order to prevent a miscarriage of justice and otherwise protect the integrity of judicial proceedings.  See <u>Williams v. United Dairy Farmers</u>, 188 F.R.D. 266, 275 (S.D. Ohio 1999).  See <u>also Johnson v. Verisign</u>, 2002 U.S. Dist.  LEXIS 13229 (E.D. Va.) ("[C]ourts should not countenance verdicts that *even appear to be based* on false testimony.") (Emphasis supplied.)  Plaintiffs submit that Mr. DeLucca's post-verdict admissions to two individuals alone suffice for these reasons and those set forth in the authority submitted in plaintiffs' October 19, 2005 memorandum.

In the cases cited by plaintiffs where new trials were granted upon evidence of perjury, none

3

appear to involve an exercise in adverse inferences against a named party; rather, the inquiry focused simply on whether sufficient evidence of perjury existed to implicate the integrity of the verdict. Plaintiffs submit that the issue of the drawing of adverse inference(s) against the defendant is an issue that would arise upon a retrial and not at this stage.[2]

        B.      <u>Adverse Inferences Against Defendant Are Otherwise Appropriate From DeLucca's Status as the Mayor's Appointed Personnel Director and DeLucca's Role As a Key Witness at the Trial.</u>

It is well-established that appropriate adverse inferences may be drawn against a party based on a non-party witness' invocation of the Fifth Amendment and refusal to answer questions. <u>See</u> <u>e.g.</u>, <u>Brink's, Inc. v. City of New York</u>, 717 F.2d 700, 710 (2nd Cir. 1983); <u>LiButti v. United States</u>, 107 F.3d 110, 121-124 (2nd Cir. 1997). If there is a constant in these and other cases, it is the courts' rejection of a bright-line rule in favor of the sound exercise of discretion based on the unique circumstances of a given situation and on a case-by-case basis. <u>LiButti</u> at 121 ("Accordingly, as in *Brink's*, the circumstances of a given case, rather than the status of a particular non-party witness, is the admissibility determinant.") The goal in all cases is "to secure fairness in the administration of justice; to guarantee that the truth would be ascertained and proceedings would be determined justly".

_____

[2]This appears as the more logical course for what exactly is the "adverse inference" which the court is to draw against defendant? The adverse inference to be drawn from Mr. DeLucca's appearance at the hearing, under these circumstances, is simply the inference that the questions which DeLucca refused and would have refused to answer (upon the necessary predicate that the answers would have *incriminated* him) would, *a fortiori*, if answered, establish that his trial perjury was extensive.

Id. at 122, quoting Rosebud Sioux Tribe v. A & P Steel, Inc. 733 F.2d 509, 522-23 (8th Cir. 1984),
citing Fed.R.Evid. 102 (holding that plaintiffs should have been permitted "to call the recalcitrant
non-party" witness "to avoid the manipulation of the rules of evidence for the purposes of 'obscuring
the truth'.") In Libutti, the Second Circuit suggested a number of non-exclusive factors to guide courts
under these circumstances, among them, applicable here, the nature of the relationship between
DeLucca and Borer, the compatibility of their interests in the outcome of the litigation and, perhaps
most pertinent here, "whether the non-party witness was a key figure in the litigation and played a
controlling role in respect to any of its underlying aspects ..." Id. at 123-124.  As the court stated,
these are non-exclusive suggestions.  "Whether these or other circumstances unique to a particular
case are considered by the trial court, the overarching concern is fundamentally whether the adverse
inference is trustworthy under all of the circumstances and will advance the search for the truth."  Id.

Mr. DeLucca was an appointee, and re-appointee, of Mayor Borer.  He was a direct report to
the Mayor.  Despite his mid-litigation retirement, he continued to enjoy part-time employment and
compensation pursuant to a personal services contract granted to him by the Mayor through use of
his executive authority.  His contract was terminable at will by the Mayor.  Moreover, Mr. DeLucca,
apart from this relationship, clearly had a compatibility of interest in the outcome given that plaintiffs'
theory of liability rested on the argument that DeLucca was the knowing and willing buffer or straw

man through whom the Mayor accomplished his unlawful retaliation against plaintiffs.[3]   Perhaps the one suggested factor which is most apparent here is the role Mr. DeLucca played in the litigation. Without question, DeLucca was the most critical witness in this trial, especially in respect to Lorusso's claims since DeLucca served both to provide the lawful "explanations" for Lorusso's exclusion from continued employment past her lay-off date and her exclusion from re-employment in other available positions.  DeLucca also served to sever any connection jurors may have drawn between his conduct and the Mayor's expressed animus by: 1) pretending throughout that he acted independently of the Mayor's desires and without reference to them, and 2) claiming, at the invitation of defense counsel, to be utterly unafraid to differ with the Mayor.  This testimony lent an air of neutrality to DeLucca which served to buttress his credibility.  This was especially important to the outcome because of DeLucca's singular role as the most important trial witness.  No doubt aware of the importance of this aspect of his appearance, Attorney Shancupp employed it as her mantra

---

[3]DeLucca's hallway confession that his decision to lie stemmed from his awareness of Legg's testimony (which he believed would compel a plaintiffs' verdict) and DeLucca's stated regret at the trial outcome does not diminish this for it is clear that while DeLucca sympathized with plaintiffs and supported their cause (and would have been pleased with a plaintiffs' verdict) it is equally clear that he did not wish to be considered by the Mayor as having played a role in a successful outcome for plaintiffs.  Among other things, this is borne out by DeLucca's confessed lying to the defense lawyers on the issue whether he was supporting the plaintiffs.  He did not want the Mayor to know this and accordingly lied to the Mayor's lawyers when questioned about it.  What this all says is that the relationship between the two men was such that DeLucca wished not to displease the Mayor and indeed cited the Mayor's physical presence in the courtroom as something that gave him sufficient shudders as to provoke his dishonesty on the witness stand.

6

throughout her summation.  <u>See</u> Plaintiffs' October 19, 2005 Memorandum of Law at pp. 13-15.[4]  Of

course, these considerations upon which defense counsel relied heavily in her summation turned out

to be false since DeLucca, by his own uncontested post-trial admissions, was well aware that the

Mayor accomplishes his ends tacitly through department heads, that the Mayor was "smart" because

he "didn't go around telling everybody" and that he did fear the Mayor's reaction upon being told of

his private support for and assistance to the plaintiffs drove his decision to lie.  Under three, if not

four, of the criteria set forth by the <u>LiButti</u> court, DeLucca's invocation of the privilege should not

inure to the benefit of this defendant.

     In <u>Brink's Inc. v. City of New York</u>, the Second Circuit opined that ex-employees' refusals

to testify could properly be construed as an admission against the defendant.  717 F.2d at 710.  In so

doing, the Second Circuit embraced the approach advocated by a professor who noted that "it is unfair

to prevent a jury from drawing inferences against *defendants* when they or their employees exercise

a privilege."  <u>Id.</u> at 709, citing Heidt, The Conjurer's Circle: The Fifth Amendment Privilege in Civil

Cases, 91 Yale L.J. 1062, 1087-88, 1107-35 (1982).  There is no logical basis for drawing a

---

[4]Recounting defense counsel's summation to jurors in which she made repeated references to DeLucca's testimony that the Mayor was completely uninvolved directly or indirectly in the adverse actions, that DeLucca solely made all decisions independent of the Mayor's animus and further emphasizing DeLucca's testimony that he felt "free" to disagree with the Mayor thus presenting him as a critical witness whose testimony can be credited lock, stock and barrel because he had no fear of displeasing the Mayor by his testimony and had no interest in the outcome.  For any jury, evidence that a witness is of such character often serves to make or break a case.

distinction between an entity employer and an individual for presumably the same reasoning applies to both.

In Rad Servs., Inc. v. Aetna Casualty & Surety Co., 808 F.2d 271 (3rd Cir. 1986), the Third Circuit affirmed the trial court's decision to permit the jury to draw adverse inferences against the defendant based on witnesses' invocation of the privilege, irrespective of whether they were still employees. Likewise adopting Professor Heidt's views, the court opined that any factors suggesting that a former employee still retains loyalty to his employer is relevant. Id. at 276. In the instant case, DeLucca was not even an ex-employee but someone who, at the time of his trial appearance, was enjoying generous compensation pursuant to a personal services contract granted to him by the defendant.

In SEC v. Herman, 2004 US Dist. LEXIS 7829, the District Court permitted negative inferences to be drawn against the defendant based on non-party witnesses' invocation of the Fifth Amendment privilege. Employing the suggested criteria of the LiButti court, the District Court found that the witnesses, one an independent consultant and the other an accountant, held a sufficient place in the defendant's hierarchy to justify the inferences. Both witnesses were privy to the money transactions involved in the SEC's investigation in that case and their use of the privilege "blocked questions about a number of issues centrally relevant to the alleged fraud ..." Id. at *20-21. In comparison, Mr. DeLucca was intimately involved in the very transactions at issue in this case and, with respect to the current issue before the court, DeLucca's invocation of the privilege likewise has

8

served to block all inquiry into the details and full extent of his perjury.[5]

In <u>Wechsler v. Hunt Health Systems, Ltd.</u>, 2003 US Dist. LEXIS 14594, the District Court observed that a negative inference would be appropriate based upon the invocation of privilege by a non-party who was a senior officer and who actively participated in the underlying transactions. <u>Id</u>. at *9. More recently in <u>In Re: WorldCom Inc., Securities Litigation</u>, 2005 U.S. Dist. LEXIS 2214, the District Court, acting on motions in limine, indicated its intention, based on the <u>Libutti</u> criteria, to permit negative inferences to be drawn against WorldCom based on the invocation of the Fifth Amendment privilege by former WorldCom employees.  <u>Id</u>. at **14-16; <u>see</u> <u>also</u> <u>United States v. District Council of New York City</u>, 832 F.Supp. 644 (S.D. N.Y. 1993) (Fifth Amendment invocation of employee properly admitted against his employer); <u>Cerro Gordo Charity v. Fireman's Fund American Life Insurance</u>, 819 F.2d 1471 (8th Cir. 1987) (Fifth Amendment invocation of controlling member of a charity admissible against the defendant – witness stood in the same position as the non-party witnesses in <u>Rad Services</u> and <u>Brink's</u>).

Once again, plaintiffs cite and discuss these cases to address the court's questions regarding whether and to what extent inferences must be drawn against the defendant although, as above-stated, plaintiffs hold to the view that under the present circumstances and procedural posture of the case, this authority may not bear on the court's task which is to determine whether justice would be served

---

[5]For similar reasons, this court, in a similar SEC case, drew adverse inferences against an entity based on an individual party's assertion of the privilege.  <u>SEC v. Prater</u>, 289 F.Supp. 2d 39 (D.Conn. 2003).

9

by allowing this judgment to stand in light of: 1) DeLucca's post-verdict admissions, 2) his invocation of the privilege based on the claim that his answers to particularized questions designed to discover the full extent of his trial perjury may incriminate him and 3) the blithe manner in which he gave false answers to this court's own questions at the evidentiary hearing conducted, no less, to determine how much he lied to the jurors. Upon this record and Mr. DeLucca's own conduct at the hearing, allowing this judgment to stand would contravene basic notions of justice and the integrity of judicial proceedings.

Finally, defendant's argument that plaintiffs "were aware" of DeLucca's perjury at the time of trial and thus should have raised the issue then is simply frivolous. All the plaintiffs had at the point of trial was their opinion that DeLucca lied based on their own knowledge of the facts. But a party's "opinion" that a witness has lied under oath is worthless. In every case tried in our courts, the reason why a jury has to be brought in is that the parties differ over the facts. Indeed, it can fairly be said that a jury's role in any given is to decide who is lying and who is telling the truth. A losing party is hardly entitled to relief under Rule 60 by exclaiming to the court, "He lied and I know it for a fact". If that were the case, every disappointed litigant would file a Rule 60 (b) motion based on his belief that the jury ought to have credited his version of the facts and not the contrary witness' version. In this case, we have a rare occurrence where a key witness has admitted lying under oath at the trial. Indeed, his utter disregard for the seriousness of the oath was on full display at the evidentiary hearing. Under the circumstances of this case, permitting the judgment to stand will send

10

a terrible message to parties and witnesses that they can not only poison the jury trial process with perjury but then succeed in stymieing an effort at remedy by invoking the Fifth Amendment, effectively declaring, "You'll never know just how much I lied."

For all of the above reasons, the plaintiffs urge this court to grant the motion and the requested relief.

THE PLAINTIFFS,
SANDRA LORUSSO and
DEBORAH EVANGELISTA


BY:_____
    KAREN LEE TORRE
    Fed. Bar No. ct01707
    Law Offices of Karen Lee Torre
    51 Elm Street, Suite 307
    New Haven, Connecticut 06510
    Tel. (203) 865-5541
    Fax: (203) 865-4844

    Their Attorney

11

**<u>CERTIFICATION</u>**

      I hereby certify that a copy of the foregoing was mailed on this 14th day of February, 2006 to the following:

Paul J. Dorsi, Esq.
Donahue Votto & DeGennaro PC
415 Main Street
PO Box 411
West Haven CT 06516-0411

Thomas E. Katon, Esq.
Jennifer L. Schancupp, Esq.
Susman, Duffy & Segaloff, P.C.
PO Box 1684
New Haven CT 06507

                                   _____
                                   Karen Lee Torre