UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
* * * * * * * * * * * * * * * * * * * * * * * * * * *
SANDRA LORUSSO and DEBORAH      *   CIVIL ACTION NO.
EVANGELISTA                     *   3:03CV00504 (MRK)
            PLAINTIFFS
VS.                             *
H. RICHARD BORER, JR.           *   FEBRUARY 21, 2006
            DEFENDANT           *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

**DEFENDANT'S MEMORANDUM OF LAW RE: DRAWING ADVERSE INFERENCE AGAINST THE DEFENDANT BASED ON NON-PARTY WITNESS' INVOCATION OF FIFTH AMENDMENT PRIVILEGE NOT TO TESTIFY**

I.   **INTRODUCTION:**

On October 19, 2005, the Plaintiffs filed a motion under Fed. R. Civ. P. 60(b)(2) on the grounds of newly discovered evidence of perjury by Ralph DeLucca, Jr., a witness who testified for both the Plaintiffs and the Defendant at trial of the above captioned matter. On December 22, 2005, a hearing was commenced and continued to February 7, 2006. At the hearing, over the objection of the Defendant, DeLucca was permitted to invoke his Fifth Amendment privilege not to testify. Plaintiffs requested and received permission to brief the issue of whether or not it is appropriate for the Court to draw an adverse inference against the Defendant based on DeLucca's claim of privilege.

The Defendant submits this memorandum in response to the Plaintiffs' February 14, 2006 memorandum on this issue. The circumstances of this case demonstrate that such an inference is not trustworthy nor will it advance the search for the truth. Specifically, (1) Mr. DeLucca's relationship with the Defendant is not a close relationship based on loyalty; (2) as evidenced by the fact that the Defendant objected to DeLucca's invocation of the Fifth Amendment, the Defendant does not control DeLucca; (3) also evidenced by the fact that DeLucca invoked the Fifth Amendment over the Defendant's objection, DeLucca's assertion of the privilege is not compatible

with the interests of the Defendant; and (4) DeLucca was not the key witness in the case. Accordingly, an adverse inference against thee Defendant is not warranted.

II.  **ARGUMENT:**

    A.  **An Adverse Inference Against the Defendant Is Not Appropriate Since the Plaintiffs Have Not Made a Specific Showing about what Exactly Is to Be Inferred.**

In general, the drawing of an adverse inference against a party based on a non-party's claim of privilege is done to show that the party is liable. *See Brinks Inc. v. City of New York*, 717 F. 2d 700, 710 (2d Cir. 1983)(noting that the key issue was the knowledge of the Plaintiff of the alleged thefts and that this is the inference to be drawn from the silence of the non-party witnesses); *LiButti v. United States*, 107 F.3d 110, 121-24 (2d Cir. 1997)(discussing *Brinks* and surveying case law from other circuits). Where a party seeks to have the Court draw an adverse inference based on a non-party's claim of privilege, the party seeking the inference must "elaborate upon the substance and application of the requested inference." *Wechsler v. Hunt Health Syst., Ltd*, No. 94 Civ. 8294 2003 WL 21998980 at *3 (S.D.N.Y. Aug. 22, 2003). Absent such a demonstration, it is improper for a Court to draw an adverse inference. *Id*. Here, the Plaintiffs have not made such a showing. Indeed, the Plaintiffs concede that it is unclear what inference is to be drawn against the Defendant. *(Pls' 2/14/05 Brief, p. 4, n.2.)* Accordingly, a negative inference is not warranted against the Defendant.

While conceding that there is no specific negative inference to be drawn against the Defendant, the Plaintiffs claim that the inference to be drawn is against DeLucca. *Id*. The Plaintiffs invite the Court to speculate that the questions which DeLucca refused to answer would have established that his so-called perjury was extensive. *Id at pp. 2-4.* The Plaintiffs claim that this speculation as to the extent of DeLucca's so-called perjury justifies the granting of a new trial. This, of course, is not the standard against which claims of perjury are measured when they are used as

the basis for a motion for a new trial. Rather, the party seeking a new trial must show by clear and convincing evidence that the perjury was material such that it likely would have affected the result at trial. *See (Def's 12/19/05 Brief, pp. 3-5, 7-9.)* Evidence of perjury which is merely cumulative and serves only to impeach a witness' credibility does not justify the requested relief. *See Id. at pp. 14-15.*

### B. Even if the Specific Adverse Inference to be Drawn Against the Defendant Could be Articulated, the Circumstances of this Case Do Not Warrant a Negative Inference.

In civil cases, there is no bright line rule regarding the drawing of inferences against a party based on a non-party witness' invocation of the privilege not to testify. *Brinks Inc.*, 717 F. 2d at 708. Rather, the determination is to be made on a case by case basis. *Id.* at 710; *LiButti*, 107 F.3d at 121. This case by case determination is appropriately guided by several non-exclusive factors, namely: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party; (3) the compatibility of the interests of the party and the non-party witness in the outcome of the litigation; and (4) the role of the non-party in the litigation. *LiButti*, 107 F. 3d at 123-24. "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124. The circumstances of this case do not warrant an adverse inference against the Defendant.

#### 1. DeLucca's relationship with the Defendant is not one of loyalty.

The nature of the relevant relationship is considered the most significant circumstance. *Id.* at 123. It is examined from the perspective of the non-party witness' loyalty to the plaintiff or the defendant, as the case may be, at the time the privilege is invoked. *Id.*; *Brinks*, 717 F. 2d at 710. Here, the evidence offered at the hearing (and at trial) concerning DeLucca's relationship with the Defendant demonstrates that DeLucca was not beholden to the Defendant at the time he invoked the

privilege.

As the former Personnel Director of the City of West Haven and the current part-time pension administrator for the City of West Haven, DeLucca served as a subordinate to the Defendant, the former Mayor of the City of West Haven. *(Trial Transcript, hereinafter "TT" at 385-86, 389-90.)* However, at the time DeLucca invoked the privilege, the Defendant was no longer the Mayor of West Haven and DeLucca was not his subordinate. Accordingly, at the time he invoked the privilege, DeLucca did not owe any loyalty to the Defendant. Indeed, at the hearing, Plaintiffs' counsel questioned DeLucca concerning whether or not he felt gratitude to the Defendant for coming to his defense when the Plaintiffs' claims that DeLucca committed perjury were reported in the newspaper. DeLucca testified that he was "[n]ot particularly" grateful to the Defendant for sticking up for him and feels "no obligation [to him] because of that." *(Hearing Transcript, hereinafter "HT" at 52-53.)* Plaintiffs' counsel also questioned DeLucca about whether or not anyone other than himself was paying his legal fees. *(HT at 8.)* DeLucca testified that he is paying his attorney's fees and that he has no source of payment other than his own funds. *(Id.)* In short, the adverse inference is not warranted because the evidence is insufficient to show that DeLucca's claim of the privilege is motivated by anything other than personal reasons. *See Veranda Beach Club Ltd. P'ship v. Western Sur. Co.*, 936 F. 2d 1364, 1374 (1st Cir. 1991)(invocation inadmissible against party where evidence insufficient to indicate that non-party witness motivated by anything other than personal reasons); *Kontos v. Kontos*, 968 F. Supp. 400, 406-08 (S.D. Ind. 1997)(discussing case law and holding that insufficient basis to draw adverse inference).

Moreover, even if DeLucca's relationship to the Defendant is examined as of the time of the claimed adverse employment actions to the Plaintiffs, the facts here do not show a close relationship. Indeed, DeLucca is far more aligned with the Plaintiffs than the Defendant. DeLucca and the Defendant were not "buddy-buddy" and their relationship was just "okay." *(TT at 441.)*

4

Prior to the Defendant becoming Mayor, DeLucca served as Personnel Director for the City of West Haven. Inclusive of the Defendant's terms in office, DeLucca served in this capacity through five mayoral administrations for both Democrats and Republicans. *(Id. at 385-86. 389.)* While DeLucca was technically a mayoral appointee as Personnel Director, the Defendant could not have freely discharged DeLucca. *(Id. at 386-89.)*

By contrast, DeLucca testified that he considers both the Plaintiffs as friends; *(Id. at 393, 441)*; and would often engage in "chitchat" with Evangelista about her personal life; *(Id. at 212-14)*; and would visit Lorusso in her office to gab. *(Id. at 393.)* Further, DeLucca testified that he had discussions with both the Plaintiffs about the case and expressed moral support when they sued. *(Id. at 431-32, 438.)* DeLucca testified that when informed of the Plaintiffs' suit against the Defendant, he said words to the effect of "good, I don't blame you." *(Id. at 407.)*

Plaintiffs argue that DeLucca's status as an employee of the City of West Haven compels the drawing of an adverse inference against the Defendant. However, the City of West Haven is not the Defendant. Rather, this is an action against Richard Borer, the former Mayor of the City of West Haven, in his individual capacity only. Accordingly, the rationale which supports the drawing of an adverse inference against a corporate party when an individual employee invokes the Fifth Amendment is simply not applicable. That rationale is that while an employee is still working for the corporate defendant, the claim of privilege and whether or not an adverse inference against the employer is warranted should be analyzed as a vicarious admission under Fed. R. Evid. 802(d)(2)(D). *See Brinks,* 717 F. 2d at 710, *citing* Robert Heidt, *The Conjurer's Circle: The Fifth*

5

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

*Amendment Privilege in Civil Cases,* 91 Yale L.J.1062, 1119-22; *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.,* 808 F. 2d 271, 275 (3d Cir. 1986), *citing Heidt.* [1]

Here, DeLucca's alleged statements were not made within the scope of his current position as a contract employee administering the City of West Haven's pension plan. Accordingly, these statements do not satisfy the requisites of Rule 801(d)(2)(D).[2] Specifically, the recording and the testimony of Pascale and Evangelista as to what DeLucca purportedly said was offered against DeLucca, a non-party, in an effort to show that he lied at trial and not to show anything in particular against the Defendant. *(See Pls' 2/14/06 Brief at p. 4, n.2.)* In other words, the Plaintiffs concede that other than tarnishing the Defendant with the general claim of DeLucca's perjury, they do not seek to have the Court draw any specific adverse inference against the Defendant from DeLucca's invocation of the Fifth Amendment privilege. *(Id.)*

Moreover, at the time the alleged statements were made in August and September, 2005, DeLucca was a contract employee, working one day per week, charged with administering the City's pension plan. *(TT at 389-91.)* He had long since retired as Personnel Director. *(Id.; HT at 29-30.)* There is no evidence that these statements come within the scope of DeLucca's position as pension administrator. Indeed, Pascale has testified that DeLucca's statements to him regarding his

---

[1] The Defendant concedes that *Brinks* and *RAD Services* also note that the fact the employment relationship has ended does not preclude the drawing of an adverse inference against the corporate defendant. Both *Brinks* and *RAD Services* cite footnote 214 of Professor Heidt's article for this proposition. *Brinks,* 717 F. 2d at 710; *RAD Servs.,* 808 F. 2d at 275-76. This footnote states: "That the invoker is no longer the defendant's employee at the time of his invokings need not necessarily bar admitting the invokings as a vicarious admission. The fact of present employment serves primarily to reduce the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable. Any factors suggesting that a former employee retains some loyalty to his former employer – such as the fact that the employer is paying for his attorney – would serve the same purpose." As discussed above, however, the facts here demonstrate that DeLucca had no particular loyalty to the Defendant while both were employed by the City of West Haven and retains no particular loyalty to him.

[2] Indeed, at the February 7, 2005 hearing, Plaintiffs' counsel abandoned any claim that DeLucca's statements were admissible as the admissions of the Defendant's agent and instead argued that DeLucca's statements were admissible as admissions against penal interest.

"admitted" perjury were restricted to the issue of any assistance rendered by DeLucca to the Plaintiffs. *(HT at 84-85.)* Consequently, DeLucca's alleged statements do not qualify as admissions of Mayor Borer's agent regarding the personnel decisions at issue at the trial. *See Wahad v. F.B.I., 179 F.R.D. 429, 441 n.22 (S.D.N.Y. 1998)* (paragraph of criminal defendant's former attorney's affidavit which related information allegedly obtained from former district attorney not admissible as admission by party-opponent because there was no evidence that statements by former district attorney were made by employee during time of his former employment). *See also Pappas v. Middleearth Condo A'ssn, 963 F.2d 534, 538 (2d Cir. 1992)* ("the authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate").

> 2. **The Defendant does not control DeLucca and DeLucca's assertion of the privilege does not advance the Defendant's interests.**

Here, the facts show that the Defendant does not control DeLucca and that the Defendant's interests are certainly not served by DeLucca's invocation of the privilege. At the hearing, the Defendant objected to DeLucca's claim of privilege and sought to have the Court compel his testimony. If DeLucca were within the Defendant's control, DeLucca would have testified.

Likewise, as the Defendant believes that there is probably a benign explanation for DeLucca's statements in the recording and as the Defendant sought to compel DeLucca to testify, the assertion of the privilege does not advance the interests of the Defendant. By contrast, at the hearing, the Plaintiffs specifically stated that they did not object to DeLucca's invocation of the privilege. The Plaintiffs also now seek to benefit from DeLucca's assertion of the privilege.

> 3. **While DeLucca gave important testimony at trial, much, if not all, of his testimony was corroborated by the testimony of other witnesses and by documentary evidence.**

In stark contrast to their claim at trial that they "didn't need Mr. DeLucca" to prove their claims; *(TT at 1002)*; the Plaintiffs now argue that DeLucca was the key witness at trial for the

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

defense. This current claim regarding the importance of DeLucca's trial testimony is also inconsistent with the Plaintiffs' claim in their August 26, 2005 motion for a new trial pursuant to Fed. R. Civ. P. 59, that the verdict was against the great weight of the evidence. If DeLucca's testimony was so crucial to the defense, then the evidence must support the verdict. Furthermore, as the Plaintiffs' claims were brought against Richard Borer, in his individual capacity only, and as Richard Borer testified, it is fair to assume that he was the witness the jurors were most interested in and that he was the key witness in his own defense. Indeed, Plaintiffs' closing argument devoted considerable time to attempting to brand the Defendant a liar. *(See TT at 957-966.)*

Furthermore, much of DeLucca's trial testimony was helpful to the Plaintiffs. Moreover, even if DeLucca's so-called admitted perjury in the recording were presented to a jury, a jury might well give greater credence to the balance of DeLucca's testimony. Regardless, almost all of DeLucca's testimony was corroborated by the Plaintiffs themselves, by the documentary evidence and by the testimony of other defense witnesses. The extent to which DeLucca's testimony is corroborated by that of the documentary evidence and the testimony of other witnesses is more fully laid out in the Defendant's September 16, 2005 Memorandum of Law in Opposition to Plaintiffs' Motion for a New Trial. To demonstrate the extent to which other evidence supported that supplied by DeLucca's testimony, attached hereto as Exhibit A, is a copy of the Defendant's September 16, 2005 Memorandum with notations correlating the transcript notations therein to the individual witnesses who testified.

In an apparent effort to bolster their latest contention regarding the importance of DeLucca's testimony, the Plaintiffs claim in their brief that they previously pointed out twenty three instances of DeLucca's trial testimony, the veracity of which is called into question by his so-called admitted perjury. *(See Pls' 2/14/06 Brief, p. 2, citing Pls' 10/19/05 Brief, pp. 27-31.)* In fact, their October 19, 2005 Memorandum argues that these enumerated instances are evidence of the extent to which

the verdict was reliant upon DeLucca's testimony, not instances of perjury. More importantly, as indicated on Exhibit A, most, if not all of these claims were supported not only by DeLucca, but also by the documentary evidence and the testimony of other witnesses. Thus the claim that "DeLucca was the most critical witness in this trial", *Pls' 2/14/06 Brief at p. 6*, is simply inaccurate.[3]

Indeed, an examination of the case law from this and other circuits indicates that this case does not possess the factual circumstances upon which courts have based a determination that an adverse inference is trustworthy. For example, in *Brinks*, 717 F. 2d 700 (2d Cir. 1983) and in *RAD Services*, 808 F. 2d 271 (3rd Cir. 1986), the non-party witnesses were present and former employees of the corporate employer plaintiffs against whom the inference was drawn. The non-party witnesses were specifically questioned about their knowledge and participation in the alleged wrongdoing of the plaintiff corporations and refused to testify. The non-party witnesses' status as present or former employees was regarded as evidence of the plaintiff employer's control over them since having them invoke the privilege effectively stymied the ability of the defendant to prove its case directly. *See also LiButti,* 107 F. 3d at 123 (noting that *Brinks'* treatment of the claim of privilege by present and former employees as vicarious admissions under Fed. R. Evid. 801(d)(2) is evidence of control); *Contrast Veranda Beach Club Ltd. Partnership* 936 F. 2d at 1374 (invocation of privilege by non-party witness inadmissible where evidence insufficient to show that invoking witness motivated by anything other than personal reasons.) Here, as evidenced by the Defendant's objection to DeLucca's invocation of the privilege, the Defendant neither controls the non-party witness nor benefits from his claim of privilege.

Similarly, in *LiButti*, 107 F.3d 110 and in *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F. 2d 1471 (8th Cir. 1987), the adverse inference was permitted because the non-party

---

[3] Plaintiffs claim that the import of DeLucca's testimony was made evident by the Defendant's closing argument concerning DeLucca's neutrality. It is worth noting that not only DeLucca, but all other defense witnesses employed by West Haven testified as to the independence of their decision making.

witness and the party had the same interest in the assertion of the privilege. As noted above, however, the Defendant objected to DeLucca's claim of privilege and sought to have DeLucca compelled to testify. Thus the Defendant and DeLucca do not possess the same interest in the assertion of the privilege.

### 3. The prejudicial impact upon the Defendant outweighs the probative value of the adverse inference.

Most importantly, the probative value of the adverse inference is far outweighed by its prejudicial impact. The Plaintiffs have failed to advance any specific adverse inference to be drawn against the Defendant and, in fact, concede that the adverse inference to be drawn against the Defendant is unclear. *(See Pls' 2/14/06 brief at p. 4, n. 2.)* Rather, the value of DeLucca's claim of privilege to the Plaintiffs is its prejudicial impact upon the Defendant. *(Id.)* However, the desire to tarnish the Defendant in general cannot justify the adverse inference sought. *See Wechsler* 2003 WL 21998980 at *3 (S.D.N.Y. 2003)(the party seeking the inference must "elaborate upon the substance and application of the requested inference"); *Veranda Beach Club Ltd. P'ship* 936 F. 2d at 1374 (invocation of privilege by non-party witness inadmissible where evidence insufficient to show that invoking witness motivated by anything other than personal reasons); *Kontos v. Kontos*, 968 F. Supp. 400, 406-08 (S.D. Ind. 1997)(evidence insufficient to warrant inference).

## CONCLUSION

The circumstances of this case indicate that the adverse inference is not trustworthy under all of the circumstances nor will it advance the search for the truth. Indeed, the Plaintiffs have failed to articulate any specific adverse inference to be drawn against the Defendant. Under the facts presented, it is apparent that DeLucca's invocation of the privilege is motivated by personal reasons rather than any allegiance to the Defendant. Accordingly, an adverse inference against the Defendant is not warranted.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

THE DEFENDANT,
H. RICHARD BORER, JR.

By: *[signature]*
Jennifer L. Schancupp
Federal Bar No. ct11876
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue
P.O. Box 1684
New Haven, CT 06507

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed this day, via first class mail, postage prepaid, to the following:

<u>Counsel for the Plaintiffs</u>
Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510


<u>Co-Counsel for the Defendant</u>
Paul J. Dorsi, Esq.
Assistant Corporation Counsel
Office of the Corporation Counsel
City of West Haven
355 Main Street
West Haven, CT 06516


<u>Counsel for Ralph DeLucca</u>
David T. Grudberg, Esq.
Jacobs, Grudberg, Belt & Dow P.C.
350 Orange Street
P.O. Box 606
New Haven, CT 06503

*[signature]*
Jennifer L. Schancupp

I:\Client W\West Haven\Lorusso-Evangelista\Post Trial Motions etc\memo re adverse inference on fifth amendment invocation.wpd