# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SANDRA LORUSSO               :
DEBORAH  EVANGELISTA,     :
                                        :
      Plaintiffs,               :                No. 3:03cv504 (MRK)
                                          :
v.                                      :
                                          :
H. RICHARD BORER, JR.,     :
                                        :
      Defendant.            :

## MEMORANDUM OF DECISION

This case arises from alleged retaliatory employment actions taken by the former Mayor of the City of West Haven ("City"),  H. Richard Borer, against two City employees, Sandra Lorusso and Deborah Evangelista.  Plaintiffs sued then-Mayor Borer[1] in his individual capacity and claimed that he had retaliated against them for backing one of his political opponents, in violation of their First Amendment rights, as enforced by 42 U.S.C. § 1983.  In a ruling on Mayor Borer's motion for summary judgment, the Court granted summary judgment to Mayor Borer on the portion of Plaintiffs' complaint that sought damages for alleged retaliatory conduct in connection with the West Haven City Council's adoption of a City budget in May 2002.  Among other things, that budget eliminated the position of Risk Manager – the job held by Mrs. Lorusso – and reduced the hours for the Assistant to the Registrar of Voters – a job held by Ms. Evangelista.   In its summary judgment decision, the Court concluded that Mayor Borer was entitled to absolute legislative immunity for his conduct in connection with the City Council's passage of the May 2002 budget.  However, the Court

---

[1]  In November 2005, following trial of this action, Richard Borer was defeated in his re-election bid, and is no longer Mayor of the City of West Haven.  Nevertheless, because he was Mayor both during the events in question and during trial, to avoid confusion the Court will refer to the former Mayor as "Mayor Borer" in this Memorandum of Decision.

denied summary judgment to the Mayor on the portion of Plaintiffs' claims that sought damages from him for retaliatory conduct that he allegedly engaged in after passage of the budget, because the Court concluded that Mayor Borer was not entitled to absolute legislative immunity for his post-budget conduct and there were material issues of fact that precluded summary judgment. The Court assumes familiarity with its summary judgment decision in this case. *See Lorusso v. Borer*, 359 F. Supp. 2d 121 (D. Conn. 2005).

Thereafter, the Court held a jury trial on Plaintiffs' remaining claims, which were limited to the Mayor's post-budget conduct. On August 11, 2005, the jury returned a verdict in favor of Mayor Borer and against each Plaintiff. In response to special interrogatories, the jury found that neither Ms. Lorusso nor Ms. Evangelista had proved by a preponderance of the evidence that they had suffered any adverse employment action in the post-budget time period or that their First Amendment protected conduct was a substantial or motivating factor in Mayor Borer's taking any adverse action against them in that time frame. Jury Verdict [doc. # 103]. The jury also found that Mayor Borer had proved by a preponderance of the evidence that he would have taken the same action against each Plaintiff regardless of her First Amendment protected conduct. *Id.; see generally Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977). In short, neither Plaintiff prevailed on a single issue before the jury. The Court thereupon entered judgment [doc. # 104] on the jury's verdict.

Plaintiffs have now filed two post-verdict motions seeking relief from the judgment and a new trial. *See* Motion for a New Trial [doc. # 105] and Motion for Relief from Judgment [doc. # 115]. For the reasons set forth below, the Court denies both motions.

# I.

On August 26, 2005, Plaintiffs moved this Court to set aside the jury's verdict and to order a new trial under Rule 59 of the *Federal Rules of Civil Procedure*. In their Rule 59 motion, Plaintiffs do not claim that any error occurred in the conduct of the trial or that the Court's instructions to the jury were erroneous in any respect. Rather, Plaintiffs assert that the jury's verdict was against the weight of the evidence and therefore the verdict against them represents a serious miscarriage of justice. *See* Memorandum of Law in Support of Plaintiffs' Motion for New Trial [doc. # 106].

On October 19, 2005, while the parties were completing briefing on the Rule 59 motion, Plaintiffs filed a second post-verdict motion – this time under Rule 60(b)(2) of the *Federal Rules of Civil Procedure*. Plaintiffs' Rule 60(b)(2) motion seeks relief from the judgment and a new trial on the basis of newly discovered evidence. *See* Motion for Relief From Judgment [doc. # 115]. Specifically, Plaintiffs alleged that following entry of the judgment against them, Mr. Ralph Delucca, Jr., who was Personnel Director during the time of the events that gave rise to this action and who was a witness at trial, admitted to Ms. Evangelista and her brother, John Pascale, that he had lied during his testimony in this case. *See* Memorandum in Support of Motion for Relief From Judgment [doc. # 116]. In support of their allegations, Plaintiffs submitted affidavits from Ms. Evangelista and Mr. Pascale as well as a transcript of a secretly recorded conversation between Mr. DeLucca and Ms. Evangelista on September 8, 2005. *See* Exhibits 1-3, Motion for Relief From Judgment [doc. # 115]. Following briefing on the issues raised by Plaintiffs' Rule 60(b)(2) motion and a telephonic conference with the parties, the Court held an evidentiary hearing on that motion. The hearing was held on December 22, 2005 [doc. # 126] and continued on February 7, 2006 [doc. # 137].

3

At the hearing, several witnesses testified for both Plaintiffs and Mayor Borer.  *See* Hearing Witness Lists [doc. ## 127, 139].  In particular, Mr. Pascale testified, subject to Mayor Borer's continuing hearsay objection (an issue discussed below), that on August 25, 2005, Mr. DeLucca told Mr. Pascale that he had lied during the trial because he was upset with counsel for Plaintiffs due to the fact that "he [Mr. DeLucca] had told my sister something and where to go to find something and I guess he figured you [Plaintiffs' counsel] weren't going to bring it out but it came out." Transcript of 12/22/05 Hearing at 70. According to Mr. Pascale, Mr. DeLucca said that he felt intimidated testifying in front of Mayor Borer "and so he lied under oath." *Id.* Mr. Pascale also testified that Mr. DeLucca stated that he believed that Plaintiffs would win the case after Mr. Legg (the City's Finance Director) testified and that, therefore, in his view, "it didn't matter a difference what he said." *Id.* at 72.  Under questioning from the Court, Mr. Pascale made it clear in his testimony (as he had in his affidavit) that the only matter Mr. DeLucca admitted lying about at trial was the assistance he had provided to Plaintiffs in connection with their lawsuit.  Thus, Mr. Pascale testified as follows:

> **Mr. Pascale**:   What he said to me was – I guess Ralph was trying to help my sister Debbie in this case and he told her where to go to find something.
> **The Court**:   Right.
> **Mr. Pascale**:   I guess Attorney Torre [Plaintiffs' counsel] was bringing it up in the trial.  The mayor was there and he said he was looking at the mayor and he didn't want to implicate himself so he lied about it, about helping my sister, giving her that information.
> **The Court**:   Did he say in a conversation with you that he had lied about anything else, other than that?
> **Mr. Pascale**:  No, he just said that. . . .
> . . .
> **The Court**:   Okay.  Now for all I know, he may have lied about a hundred different things but [the] only one he mentioned to you lying about was whether or not he had helped your sisters by pointing out evidence to her, right?
> **Mr. Pascale**:   Yes, sir.

*Id.* at 98-99.

Ms. Evangelista also testified at the hearing.  On August 25, 2005, Mr. Pascale told both Ms. Evangelista and Ms. Lorusso about  his conversation with Mr. DeLucca and his admission of lying at trial.  Plaintiffs and their counsel thereupon decided to have Ms. Evangelista secretly tape record Mr. DeLucca so that, in Ms. Evangelista's words, they would have proof in the event Mr. DeLucca later denied lying at trial.  To that end, Ms. Evangelista obtained a recording device from her counsel (who, in turn, had received it from a private investigator), and secreted the device on her person – placing the device in her pants and the microphone in her bra. When Mr. DeLucca stopped by Ms. Evangelista's office at City Hall on September 8, she arranged to meet him upstairs after she had had an opportunity to turn on the recording device. *Id.* at 107-09. Ms. Evangelista then engaged Mr. DeLucca in a twelve to thirteen minute conversation about the trial. During that conversation, Mr. DeLucca once again admitted that he had lied at trial, and the Court will discuss the extent of Mr. DeLucca's admissions later in this opinion.

When the conversation ended, Ms. Evangelista returned to her office (turning the recording device off while she was in the elevator) and then drove to her attorney's office to give her the recording device.  *Id*. at 132.  The device itself has a flash memory, rather than a tape, and the conversation was recorded onto the flash memory.  As a consequence, the device itself was marked as Exhibit 1 at the hearing.  Ms. Evangelista's attorney gave the recording device to her private investigator, who made a CD of the recording, and the CD was marked as Exhibit 2. From that CD, a court reporting agency prepared a transcript of the recording, and the transcript was marked as Exhibit 3.  Ms. Evangelista testified on December 22 that  the transcript of the recording is a fair and

accurate transcription of the conversation on September 8.[2] At the hearing on February 7, the parties stipulated that if asked to recount the substance of her conversation with Mr. DeLucca on September 8, Ms. Evangelista's testimony would be in accordance with the written transcript of the conversation.

Subject to Mayor Borer's objection, the recording device (as opposed to the CD) was played at the December 22 hearing, and the Court listened to the recorded conversation between Mr. DeLucca and Ms. Evangelista. Tom Owen, a forensic analyst who specializes in audio and video and voice identification, testified about the recording as an expert for Mayor Borer. Mr. Owen conducted a standard wave form analysis of the flash memory of the recording device Ms. Evangelista had used to record the conversation with Mr. DeLucca, and he demonstrated that wave form analysis at the hearing. Mr. Owen testified that as a result of his analysis, he had discovered an anomaly at one portion of the recording, an anomaly that is not evident from listening to the recording but that is only apparent as a result of his wave form analysis.

The transcript of the conversation at the point that Mr. Owen discovered the anomaly reads as follows :

**M** [**Mr. DeLucca**]: I don't understand what you're saying, all these lies.
**W**[**Ms. Evangelista**]: Well, that thing about when you came in the office and said "Have her ask me about Mr. Lake [sic[3]]," and then you said "No, I never said it," –
**M**: And the only reason –
**W**: – and you never said it to me.
**M**: The reason I said that, the reason I said that was because she [Plaintiff's counsel]

---

[2]  On its cover page, the typewritten transcript erroneously states that the conversation occurred on September 10, 2005. There are also other minor errors in the transcription (for example, Mr. Legg is shown as Mr. Lake) which are noted in Ms. Evangelista's affidavit in support of the Rule 60 motion.

[3]  References to "Mr. Lake" in the transcript should be to Mr. Legg.

put me in the position, as, you know, let everybody know that Ralph DeLucca said that, to ask that question the other way. Why did she do that, so that everybody – the lawyers all were asking me –

**W**: *But did you lie to the lawyers or did you tell them the truth?*

**M**: Well, I lied to the lawyers.

**W**: You lied to the lawyers?

**M**:Yeah, I told them no, it never happened.

Exhibit 3, at 8-9 (emphasis added).

According to Mr. Owen's analysis of the recording, Ms. Evangelista did not say the word "But" that is attributed to her in the highlighted sentence above. In fact, the word "but" was not spoken by anyone and is instead a leftover sound or fragment from something Mr. DeLucca was saying when he was cut off while speaking. Transcript of 12/22 Hearing at 152-53. Mr. Owen testified that every other time during the conversation where one individual spoke over another, which happened frequently, he could also hear the other speaker on the recording; thus, one can hear the voices of both speakers. At this point in the recording, however, Mr. DeLucca is cut off completely while speaking and that led Mr. Owen to conclude that the recording had been "edit[ed]" at this particular juncture. " *Id.* at 154; *see also id.* at 166 ("He started to say something and he was cut off – let me finish – in every other instance where he interrupts her and he does it a lot, you hear both voices clearly. This is the one instance where he's cut off and you no longer hear him at all.").

Mr. Owen could not say how much of the conversation had been edited out at this point or, obviously, what had been said during that gap, but testified that in his professional opinion the recording was "incomplete." *Id.* at 162.[4] Mr. Owen testified that he did not believe that the gap was created by the recording device itself but, rather, he believed that the unedited conversation had been

---

[4] Mr. Owen also noted that although the conversation occurred on September 8, the recording device, which has its own clock, inexplicably showed the conversation as occurring on September 9. *Id.*

edited in a wave file form and then loaded back onto the recorder in an edited form. According to Mr. Owen, that type of editing would not require any more sophistication than it took to upload the recording from the device onto a computer and then download it onto a CD, the procedure performed in this case. *Id*. at 167. Despite his concern about the incompleteness of the recording, Mr. Owen was also of the opinion that no other portion of the twelve- to thirteen-minute recording had been edited. *Id.* He also acknowledged that the text of the recording does not provide any support for his editing opinion because there is no change in the topic the parties are discussing. *Id*. at 176.

Mr. DeLucca, who was separately represented by his own counsel, was also called as a witness at the December 22 hearing. *Id*. at 7-59. At that hearing, Mr. DeLucca repeatedly invoked his Fifth Amendment privilege against self-incrimination when asked whether he had lied during his trial testimony in this action or whether he had told either Mr. Pascale or Ms. Evangelista that he had lied. However, at various points, Mr. DeLucca did provide testimony in response to questions from counsel and the Court. In particular, in response to questions from the Court, Mr. DeLucca admitted speaking to Mayor Borer about his conversation with Ms. Evangelista following disclosure of the secret taping, and Mr. DeLucca said , "I told him [Mayor Borer] that I did say that I lied on the tape." *Id*. at 43. The Court then sought to clarify Mr. DeLucca's answer as follows:

> **The Court**: . . . [A]ccording to the witness, he had in fact told Mr. Borer that he had spoken to Ms. Evangelista and told her that he had lied. Right?
> **The Witness**: I said to her, yes, I had said something about lying.
> . . .
> **The Court**: So let me just ask you again: When you spoke to Mr. Borer in October, did you tell him that you had lied during the trial?
> **The Witness**: No, I didn't tell him that I lied in the trial.
> **The Court**: Did you tell him that you did not lie in the trial?
> **The Witness**: Right, told him I did not lie in the trial.
> **The Court**: So as I understand it, you told Mr. Borer in October that you did not lie during the trial, right?

**The Witness**: Right.
**The Court**: And you told Ms. Evangelista prior to that time that you had lied during the trial?
**The Witness**: Right.

*Id*. at 43-45.

Following the December 22 hearing the parties and Mr. DeLucca submitted briefs on the propriety of Mr. DeLucca's invocation of his Fifth Amendment privilege as well as whether the Court should draw adverse inferences against Mayor Borer as a result of Mr. DeLucca's assertion of his privilege. *See* Memorandum re Invocation of 5th Amendment Privilege by Ralph DeLucca, Jr. [doc. # 134]; Defendants' Memorandum of Law Re: Issues Arising From December 22, 2005 Post Trial Motions Hearing [doc. # 136]; Plaintiffs' Post-Hearing Memorandum of Law Re Issue of Adverse Inferences to be Drawn From Witness's Invocation of the Privilege Against Self-Incrimination [doc. # 141]; Defendant's Memorandum of Law Re Drawing Adverse Inference [doc. # 148].

## II.

The parties agree that the Court should first decide Plaintiffs' motion under Rule 60(b)(2), since the Court's ruling on that motion might obviate the need to address their Rule 59 motion. Before discussing the Rule 60(b) motion, however, the Court must first address several procedural and evidentiary issues that arose in connection with that motion.

## A.

As a threshold matter, Mayor Borer argues that Plaintiffs' Rule 60(b)(2) motion is procedurally improper because they are using Rule 60 to evade the strict ten-day limitation on seeking relief under Rule 59. The Second Circuit has construed the ten-day limit for filing Rule 59

motions as "jurisdictional so that the failure to make a timely motion divests the district court of power to modify the trial verdict." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1346 (2d Cir. 1993); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir. 2000).   It is undisputed that the time for filing a Rule 59 motion in this case expired on August 26, 2005.[5] Mayor Borer argues, and Plaintiffs acknowledge, that they became aware of Mr. DeLucca's admission that he had lied at trial on August 25, 2005, when Mr. Pascale told Plaintiffs of his conversation with Mr. DeLucca earlier that day. According to Mayor Borer, it follows that if Plaintiffs wished to seek a new trial on the basis of Mr. DeLucca's alleged perjury, they were required to include that ground in their Rule 59 motion, which they filed on August 26.   *See* Memorandum of Law In Opposition to Motion for Relief From Judgment [doc. # 124].   Instead, Plaintiffs waited until October 19 to file their Rule 60(b)(2) motion, which, in Mayor Borer's view, renders their motion untimely.

Plaintiffs reply that they could not have included in their Rule 59 motion a claim for a new trial based upon Mr. DeLucca's August 25 conversation with Mr. Pascale, because Mr. DeLucca would simply have denied ever telling Mr. Pascale that he had lied at trial.  They assert that, in view of Mr. DeLucca's willingness to lie under oath, it was necessary to create a record of Mr. DeLucca's admitting his lies before moving for a new trial, and that they did so as soon as they could following

---

[5]  Rule 59 motions must be filed "no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(b).  Here, the Judgment [doc. # 104] is dated August 11, 2005; excluding intervening weekends, 10 days after August 11 is August 25, one day before Plaintiffs filed their Rule 59 motion. However, the 10 days provided for the filing of post-verdict motions under the *Federal Rules of Civil Procedure* begins on the date the judgment is entered on the docket sheet, not the date of the judgment itself.  *See, e.g.*, *Yaretsky v. Blum*, 592 F.2d 65, 66 (2d Cir. 1979) (per curiam) (reversed on other grounds by *Blum v. Yaretsky*, 457 U.S. 991 (1982)) ("[T]he date of entry in the docket, not the date of the order, begins the running of time for post-trial motions and appeals."). Here, the Judgment was not entered on the docket sheet until August 12, 2006, and accordingly, Plaintiffs had until August 26 to file a Rule 59 motion.

Mr. Pascale's revelations to them.  Moreover, they filed their Rule 60(b)(2) motion as soon as practicable after the recording was transcribed. [6]

Rule 60(b)(2) expressly provides that a motion for relief from judgment may be made based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  It is apparent from the plain language of the rule that insofar as newly discovered evidence is concerned,  Rule 60(b)(2) is not available to correct a party's failure to utilize Rule 59(b).  *See Lapiczak v. Zaist*, 54 F.R.D. 546, 548 (D. Vt. 1972) ("Nor is Rule 60 a corrective device to be used when counsel fails to avail himself of Rule 59(b) insofar as newly discovered evidence is concerned.").

In this case, it is rather odd (and the Court will return to this point later in this opinion) to speak of Mr. DeLucca's lying at trial as "newly discovered evidence," since Plaintiffs admit that they and their counsel were aware of his deception – at least insofar as he denied ever helping Plaintiffs in their lawsuit – as soon as he testified, and certainly well before the jury's verdict. To avoid this definitional difficulty, Plaintiffs assert that the newly discovered evidence is Mr. Delucca's admission that he lied on the stand, something which they did not obtain until after trial. But this raises a serious question with respect to the due diligence requirement imposed by Rule 60(b)(2). "The case law requires that a movant provide specific examples of the attempts, if any, undertaken to locate the evidence at an earlier date." *Peyser v. Searle Blatt & Co., Ltd.*, No. 99 CIV. 10785, 2000 WL 1876917, at *3 (S.D.N.Y.  Dec. 22, 2000); *see also* 11 Charles Alan Wright, Arthur R. Miller &

---

[6] Plaintiffs explain that they did not seek to amend their Rule 59 motion to include the claims regarding Mr. DeLucca because they were concerned that the Court could not consider an amendment to a Rule 59 motion that asserted an entirely new ground and that was filed more than ten days after judgment entered.

Mary K. Kane, *Federal Practice & Procedure* § 2859, at 303-04 (2d ed. 1995) ("The rule speaks of 'due diligence,' and the moving party must show why he did not have the evidence at the time of the trial or in time to move under Rule 59(b)."). Yet there is no indication in the record that Plaintiffs acted on their conceded trial-time awareness of Mr. DeLucca's deceit by making a diligent effort to speak with him about his testimony following the verdict and within the time period provided by Rule 59. Moreover, it is undisputed that Plaintiffs learned of Mr. DeLucca's admission on the day before the time for filing a Rule 59 motion expired.

In these circumstances, the Court has grave concerns about the timeliness of Plaintiffs' Rule 60(b)(2) motion. However, it is understandable that Plaintiffs would want to create a record of Mr. DeLucca's admission before leveling a serious charge like perjury, and Plaintiffs certainly did act diligently once they became aware of Mr. DeLucca's conversation with Mr. Pascale. Therefore, despite some misgivings about the timeliness of Plaintiffs' Rule 60(b)(2) motion, the Court will consider the motion on its merits.

## B.    Evidentiary Issues

Several evidentiary issues were raised during the hearings on Plaintiffs' Rule 60(b)(2) motion, and the Court issued rulings in open court on those issues following the hearing on February 7, 2006. The Court summarizes those rulings below, as familiarity with those rulings is necessary to the Court's discussion of the merits of Plaintiffs' motion.

**1.**    The Court first ruled that Mr. DeLucca properly invoked his Fifth Amendment privilege in response to four specific lines of inquiry during the December 22 hearing. Notably, Plaintiffs stated on the record on February 7 that they did not contest Mr. DeLucca's right to invoke the privilege and did not claim that his invocation of the privilege was improper in any respect. By

contrast, Mayor Borer argued strenuously that Mr. DeLucca should not be allowed to invoke the privilege because, in Mayor Borer's view, any lies Mr. DeLucca admitted to making were not material to any issue at trial and, as a consequence, Mr. DeLucca did not face a realistic prospect of prosecution for perjury or false statement. As the Supreme Court has stated, the "central standard" for application of the Fifth Amendment privilege is whether "[t]he claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (internal quotation marks omitted).

While expressly stating that it might conclude that Mr. Delucca's purported lies were not material for purposes of Plaintiffs' Rule 60(b)(2) motion, the Court nonetheless held that if Mr. Delucca had in fact lied during trial, as he was accused of and had apparently admitted to doing, he was properly fearful of the possibility of perjury charges.  Whether any such charges will actually ever be brought against Mr. DeLucca is not determinative of his right to invoke the privilege.  As the Second Circuit held in *Estate of Fisher v. Commissioner,* 905 F.2d 645, 649 (2d Cir. 1990), the availability of the Fifth Amendment privilege does not turn on the likelihood that the government will prosecute, or its intention to do so; the relevant inquiry is "whether answering the question would tend to incriminate the witness."  The Court concludes that answers to the specific lines of inquiry identified at the December 22 hearing would tend to incriminate Mr. DeLucca or would provide "'link[s] in the chain of evidence necessary' to prosecute" Mr. Delucca for a crime.  *Id.* at 649 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).Therefore, Mr. DeLucca's invocation of the privilege in response to those inquiries was proper, albeit extremely regrettable.

**2.**    Next, the Court ruled that Ms. Evangelista and Mr. Pascale could testify to statements made by Mr. DeLucca in which he admitted to lying in court. When each witness was asked to relate

13

their conversations with Mr. DeLucca, Mayor Borer's counsel objected to the testimony on hearsay grounds. In response, Plaintiffs' counsel argued that the statements by Mr. DeLucca were admissible as statements against penal interest under Rule 804(b)(3) of the *Federal Rules of Evidence*.[7]  As discussed below, the Court overruled in part and sustained in part Mayor Borer's objection.

Rule 804(b)(3) provides that if a declarant is "unavailable," the hearsay rule does not exclude a "statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Because the Court permitted Mr. DeLucca to invoke his privilege against self-incrimination, he was "unavailable" within the meaning of Rule 804(b)(3).  *See* Fed. R. Evid. 804(a)(1) ("'Unavailability as a witness' includes situations in which the declarant – (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement . . . ."); *see also United States v. Dolah*, 245 F.3d 98, 102 (2d Cir. 2001) ("It is settled in this Circuit that a witness who invokes the privilege against self-incrimination is 'unavailable' within the meaning of Rule 804(b).").

There also seems little question that, by admitting that he had lied at trial, Mr. DeLucca made statements that were contrary to his interest insofar as those statements exposed him to possible criminal liability.  Although Mayor Borer's counsel argued that Mr. DeLucca's statements would  not subject him to criminal liability because he was unlikely to be prosecuted for perjury in

---

[7]  Originally, Plaintiffs' counsel suggested that Mr. DeLucca's statements were admissions by an agent of a party, but at the February 7 hearing, Plaintiffs' counsel abandoned that theory of admissibility in favor of Rule 804(b)(3). Given Plaintiffs' sole reliance on Rule 804(b)(3), the Court has not considered whether Mr. DeLucca's statements are admissible under any other hearsay exception.

the circumstances of this case, for the same reasons that the Court permitted Mr. DeLucca to invoke his self-incrimination rights, the Court concluded that Mr. DeLucca's admissions to lying at trial fall within the ambit of Rule 804(b)(3), and overruled Mayor Borer's objections to that extent.

However, Rule 804(b)(3) does not provide a basis for admitting the entirety of the out-of-court conversations between Mr. DeLucca, on the one hand, and Mr. Pascale and Ms. Evangelista, on the other.[8]  As the Supreme Court has observed, "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994).  The rationale underlying the rule makes clear that the rule extends no further than those statements that are self-inculpatory.  The rule "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at 600-01. For, as the Supreme Court noted, "[t]he fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." *Id.* at 600.  Similarly, there is "no reason why collateral statements, even ones that are neutral as to interest, . . . should be treated any differently from other hearsay statements that are generally excluded." *Id.*

The Second Circuit has held that under the mode of analysis mandated in *Williamson*, "each particular assertion in a narrative should be interpreted within the context of the circumstances under which it was made to determine if that assertion is in fact sufficiently against interest." *Silverstein*

---

[8]   That the alleged hearsay is on a sound recording does not change the Rule 803(b)(3) analysis, which is not dependent upon whether the out-of-court statement is introduced in a writing (*Silverstein v. Chase*, 260 F.3d 142 (2d Cir. 2001)), in a recording (*U.S. v. Bakhtiar*, 994 F.2d 970, 977 (2d Cir. 1993)), or through the oral testimony of a party to the conversation (*Williamson v. United States,* 512 U.S. 594 (1999)).

*v. Chase*, 260 F.3d 142, 148 (2d Cir. 2001); *see also Williamson*, 512 U.S. at 603 ("[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context."). Having conducted such a review, the Court concludes that any statement by Mr. DeLucca to the effect that he lied at trial is admissible under Rule 804(b)(3). But Rule 803(b)(3) does not permit the admission of Mr. DeLucca's entire conversation with Mr. Pascale and Ms. Evangelista. Mr. DeLucca's statements about what he knew or did not know about Mr. Legg's testimony, about lying to Mayor Borer's lawyers out of court, about his belief that Plaintiffs should have prevailed at trial, or his general views on politics at City Hall are collateral, uncontradicted by any trial testimony, and insufficiently against his interest to be admissible under *Williamson* and *Silverstein*.

The Court recognizes a possible tension between the fairly broad-sweeping "link in the chain" analysis required for invocation of the self-incrimination privilege, discussed above, and the narrow interpretation of the exception for statements against penal interest advanced by *Williamson*, the combined effect of which is to allow Mr. DeLucca to hide behind his constitutional right to silence while preventing Plaintiffs from testifying fully about what Mr. DeLucca said to them. This may seem unfair, but it is the inevitable result of the priority assigned by our Constitution to the privilege against self-incrimination. The Fifth Amendment must be construed broadly, *see, e.g.*, *Fisher*, 905 F.2d at 648, and any tension between the Fifth Amendment on the one hand and evidentiary rules in a civil case on the other must of course be resolved in favor of the constitutional right. Furthermore, with regard to any unfairness the Plaintiffs might feel in not being able to submit all of the evidence they believe would assist them, the Court notes that even consideration of every statement made by Mr. DeLucca to Ms. Evangelista or Mr. Pascale would not change the result in this case. Many of the excluded comments are exculpatory: for example, Mr. DeLucca denied lying

to Ms. Evangelista about something that Mr. Legg supposedly said about the Mayor, Ex. 3, at 6, and he also denied lying about whether Mayor Borer ever tells him who to hire, *id.* at 14. Even if the Court did not take the view that these exculpatory statements, like the collateral ones, lack sufficient indicia of reliability to be admissible under Rule 804(b)(3), *see Williamson*, 512 U.S. at 600, their admission would not avail Plaintiffs, not least  because the exculpatory statements would be cancelled out by non-inculpatory statements that would come in on the same logic

**3.**     Finally, the Court reserved ruling on the admissibility of the recording of Mr. DeLucca's conversation with Ms. Evangelista on September 8 (Exhibit 2), and the associated transcript (Exhibit 3).  Mayor Borer objects to admitting the recording because Mr. Owen, the only expert who testified at the hearing, opined that the recording is partially unreliable. *See* Motion for Preliminary Determination as to the Admissibility of Tape Recorded Evidence [doc. # 125].  Mayor Borer  objects to the transcript of the recording for the same reason.

The Court notes that this issue may be moot in view of its ruling that Ms. Evangelista may testify as to Mr. DeLucca's admission under Rule 804(b)(3), and the parties' February 7 stipulation that any testimony by Ms. Evangelista as to her conversation with Mr. DeLucca would be consistent with the written transcript of that conversation. Under these circumstances, the recording serves no evidentiary purpose.

Were it necessary to rule on admissibility, however, the Court would find the recording and transcript admissible to the extent permitted in connection with the Court's ruling under Rule 804(b)(3) above.  It is true that if, as Mr. Owen opines, there is a gap in the recording, there might be minutes and hours of conversation that are missing.  However, "the fact that part of a tape [or other sound-recording] is missing or inaudible does not render it inadmissible." *United States v.*

17

*Knohl*, 379 F.2d 427, 440 (2d Cir. 1967). The question committed to the discretion of the Court is "whether so much of a tape recording is inaudible or the circumstances surrounding it are so suspicious and make it so untrustworthy that it should not be admitted into evidence." *Id.* The Second Circuit's "decisions in this area reveal a clear preference for the admission of sound recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative." *United States v. Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988).

In accordance with these decisions, the Court would hold that the recording at issue here is sufficiently trustworthy to be admitted into evidence. There has been no testimony to suggest that there is any substantial gap in the recording and, as Mr. Owen conceded, there is perfect continuity between the topics discussed before and after the so-called gap. Mr. DeLucca declined to testify about his conversation with Ms. Evangelista. But Ms. Evangelista was also a party to the conversation, and she testified without contradiction that the transcript (based on the recording) was fair and accurate despite a few minor mistakes in transcription. Furthermore, Mr. Owen himself acknowledged that there was no reason to doubt the authenticity and reliability of the balance of the recording. In these circumstances, the Court believes Plaintiffs have adequately established the authenticity and reliability of the recording and transcript. To the extent that there is doubt as to the reliability of the recording around the postulated gap, the Court ignores that part of the conversation, for the reasons stated above. The anomaly identified by Mr. Owen concerned an alleged statement by Mr. DeLucca (to the effect that he had lied to Mayor Borer's lawyers out of court) that the Court has already deemed inadmissible under Rule 804(b)(3) because it would not expose Mr. DeLucca to a charge of perjury and was not contradicted by his testimony at trial. In other words, the one piece of the recording that appears to be suspect would in any event be inadmissible. Accordingly, the

Court overrules Mayor Borer's objection to the authenticity and reliability of the recording and transcript.

### C.

Turning to the merits of Plaintiffs' Rule 60(b)(2) motion, the Court states at the outset that it is satisfied that Mr. DeLucca lied at trial.   However, the Court does not share Plaintiffs' view of the scope of Mr. DeLucca's admitted deceit.  The testimony of Mr. Pascale and Ms. Evangelista fairly suggests that Mr. DeLucca lied about the assistance he gave Plaintiffs in their lawsuit against Mayor Borer.  Thus, contrary to his trial testimony, it appears that Mr. DeLucca did give Ms. Evangelista information both about a document that she ultimately used at trial and about the manner in which their counsel should phrase certain questions to him on the stand. However, neither Mr. Pascale's nor Ms. Evangelista's testimony (nor the recording or transcript) provides a basis for concluding that Mr. DeLucca lied in any other respect.  In fact, as previously noted, Mr. Pascale expressly testified that the only matter about which Mr. DeLucca admitted lying was his assistance to Ms. Evangelista. Transcript of 12/22 Hearing at 98-99.  A careful review of the transcript of Mr. DeLucca's conversation with Ms. Evangelista leads to the same conclusion regarding the scope of Mr. DeLucca's deception.  Exhibit 3, at 5,7, 9.  Indeed, despite Ms. Evangelista's persistent efforts to get Mr. DeLucca to admit lying about other matters, he explicitly declined to do so. *Id.* at 3 ("To say the truth in what?"); 8 ("I don't understand what you're saying, all these lies."); 10 ("All right, but I just couldn't, because she didn't have the qualifications, I couldn't do that."); 14 ("I thought your lawyer was going to ask me 'Well does the mayor ever tell you who to hire.'  Now I would have says [sic] no, and you would have said 'There he is, lying again.'"); *see also id.* at 6, 9. The Court quotes these statements not for the truth of what is asserted but solely to illustrate that Mr. DeLucca

19

repeatedly declined Ms. Evangelista's invitation to admit to further lies.

Plaintiffs assert that, because Mr. DeLucca admitted lying about certain things, the Court must presume that his entire testimony was false. *See* Plaintiffs' Post-Hearing Memorandum of Law re Issue of Adverse Inferences to be Drawn From Witness' Invocation of the Privilege Against Self-Incrimination [doc. # 141].[9] But such an inference is not justified. Mr. DeLucca did not know he was being recorded and was clearly trying to ingratiate himself with Ms. Evangelista and Mr. Pascale. The reasonable inference from these facts is that if Mr. DeLucca had lied about anything else, he would have told them so. Yet in fact he expressly denied having told any other lies, despite persistent questioning by Ms. Evangelista. And Plaintiffs' conclusory surmise that Mr. Delucca's testimony was riddled with additional falsehoods is also unsupported by any documentary or testamentary evidence. Indeed, Mr. Delucca's trial testimony about bumping, delays in approving a redrafted job description, and Ms. Lorusso's qualification or lack thereof was corroborated by other witnesses at trial, by Plaintiffs themselves, or by documentary evidence.

---

[9] In their post-hearing brief, Plaintiffs also suggest that the Court should draw negative inferences against Mayor Borer because of Mr. DeLucca's invocation of his Fifth Amendment privilege. *See* Plaintiffs' Post-Hearing Memorandum of Law re Issue of Adverse Inferences to be Drawn From Witness's Invocation of the Privilege Against Self-Incrimination [doc. # 141] at 4. Mayor Borer opposes any such inference. *See* Defendants' Memorandum of Law Re: Drawing Adverse Inference Against the Defendant Based on Non-Party Witness' Invocation of Fifth Amendment Privilege Not to Testify [doc. # 148]. The cases Plaintiffs rely on all involve instances where an employee or close associate of a party has invoked his Fifth Amendment privilege. *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 121-14 (2d Cir. 1997) (father); *Brinks, Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (ex-employees). Here, however, Plaintiffs sued Mayor Borer in his individual capacity, and Mr. DeLucca works part-time for the City, not Mayor Borer. Therefore, there is neither an agency relationship between the party and non-party concerned, nor any other close or intimate association between them, nor even a congruence of interests. Having considered the factors identified by the Second Circuit as relevant to a court's decision whether to draw an adverse inference against a party based upon a non-party's invocation of a privilege not to testify, *see LiButti*, 107 F.3d at 123-24, the Court declines to draw an adverse inference against Mayor Borer based upon Mr. DeLucca's refusal to testify.

Although the Court concludes that the scope of Mr. Delucca's mendacity was narrow, it wishes to be clear that the size of the lie in no way diminishes its seriousness or the depth of condemnation it deserves. Mr. DeLucca is a long-standing public employee who remains on the City's payroll, entrusted by taxpayers with the important function of administering city pension plans, a job that most certainly requires honesty. Yet, it appears that Mr. DeLucca took the stand at trial, took an oath to tell the truth, looked the jurors, the parties, and the Court in the eyes and told a baldfaced lie. Mr. DeLucca's brazen dishonesty is an affront to the public trust that may be neither countenanced nor excused. The shame that attaches to Mr. DeLucca's betrayal of his public oath is only amplified by his position as a public servant, and his subsequent refusal to explain his conduct to the Court and the parties. In short, the Court condemns Mr. Delucca's lying in the strongest possible terms. Nothing in this Ruling should be construed as in any way condoning or mitigating Mr. DeLucca's dishonesty on the stand.

However, our collective chagrin about Mr. DeLucca's shameful conduct is not sufficient, in and of itself, to warrant a new trial. If it were, a new trial would be granted whenever a witness is found to have lied at trial. Yet even Plaintiffs acknowledge that this is not the rule, and that, to the contrary, the standard that must be met to justify setting aside the hard work and public service of the jury is demanding. The Second Circuit's most recent precedent on whether lying by a witness constitutes grounds for a new trial is *United States v. International Brod. of Teamsters*, 247 F.3d 370 (2d Cir. 2001). As the parties agree, *Teamsters* establishes the following principles:

First, "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Id.* at 391. This is because "[t]he court must balance a party's interest in pursuing the merits of its claims against society's interest in finality."

*Travelers Cas. & Sur. Co. v. Crow & Sutton Associates*, 228 F.R.D. 125, 128 (N.D.N.Y. 2005) (paraphrasing *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987)). Second, "[t]he burden of proof is on the party seeking relief from judgment," and whether to grant the motion lies within the sound discretion of the court. *Teamsters*, 247 F.3d at 391. Third, "[t]he party seeking relief from judgment has an onerous standard to meet," being required to show that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding;
>
> (2) the movant [was] justifiably ignorant of them despite due diligence;
>
> (3) the evidence [is] admissible and of such importance that it probably would have changed the outcome; *and*
>
> (4) the evidence [is] not merely cumulative or impeaching.

*Id*. at 392 (emphasis added).

No party takes issue with the foregoing principles or disputes that the first requirement is satisfied, since the newly discovered evidence, whether Mr. DeLucca's lying or his admission of it, is evidence of a fact – his deceit – that existed at the time of trial. The Court is not persuaded, however, that Plaintiffs have satisfied any of the remaining requirements, let alone every one of them, as *Teamsters* requires.

First, the Court does not believe that Plaintiffs were justifiably ignorant of Mr. DeLucca's lies despite due diligence. *See, e.g.*, *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983). In fact, as noted previously, Plaintiffs and their counsel concede that they were fully aware at the time of his testimony that Mr. DeLucca had lied when he denied helping Plaintiffs with their lawsuit. Thus, unlike most cases involving newly discovered evidence, Plaintiffs were in a position to try to counter Mr. DeLucca's testimony during the trial, by cross-examination of Mr.

DeLucca and by calling rebuttal witnesses. *Martin v. Chemical Bank*, 940 F. Supp. 56, 60 (S.D.N.Y. 1996), *aff'd* 129 F.2d 114 (2d Cir. 1997) ("[P]laintiff knew at the time of trial of the facts upon which she now bases her claim of perjury. If she failed to communicate them to her counsel, or if counsel failed to use that evidence, she cannot be heard to complain . . . .").

Indeed, Plaintiffs' experienced and skilled counsel subjected Mr. DeLucca to rigorous cross-examination, openly ridiculing his claim that he had not helped the Plaintiffs by providing them documents and suggestions. *See, e.g.*, Transcript of Proceedings held on August 4, 2005 [doc. #141] at 437-438. She also attacked his credibility in cross-examination and excoriated him in closing arguments, stating that Mr. DeLucca had no credibility whatsoever because he owed his part-time position (and the income he earned) to Mayor Borer. For example, Plaintiffs' counsel said the following in closing argument: "And we have Mr. DeLucca and Mr. Legg presented as some kind of neutral witnesses. Are you kidding me? Both men are in the federal court because of compelling evidence that this mayor gets rid of people who won't do what he wants or who won't support him. Do you think they are going to risk their jobs?" Transcript of Proceedings held on August 9, 2005 [doc. #145] at 1001.

As to rebuttal witnesses, Plaintiffs' counsel recalled both Ms. Evangelista and Ms. Lorusso after Mr. DeLucca had testified, but neither was asked to rebut Mr. DeLucca's testimony about not helping Plaintiffs, a particularly telling omission given Plaintiffs' current claim that Mr. DeLucca's lying about helping Plaintiffs was so important that it affected the outcome of the trial. *Id.* at 887-890. Nor did Plaintiffs' counsel ask Mr. Legg (who also testified) about the allegedly critical conversation he had with Mr. DeLucca regarding comments Mayor Borer had supposedly made about Plaintiffs' lawsuit.

Plaintiffs say they were surprised at trial by Mr. DeLucca's lies about aiding Plaintiffs. But if that is so, they only have themselves to blame. Plaintiffs made a deliberate choice not to take Mr. DeLucca's deposition before trial.  Had they done so, and had Mr. DeLucca testified at his deposition consistent with his trial testimony, Plaintiffs would have known long before trial that Mr. DeLucca would deny helping Plaintiffs, and they could have altered their trial strategy or taken other appropriate steps to counter that lie. *See, e.g.*, *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1309-10 (11th Cir. 2003) (having decided not to take the deposition of Garnto, plaintiffs "cannot now persuasively complain that Garnto had additional evidence of which they were unaware and which might have helped them").  Presumably, Plaintiffs did not take Mr. DeLucca's deposition because they believed he would be a friendly witness and they wished to spring his testimony on Mayor Borer at trial.  If so, their plan failed. However, Rule 60(b)(2) does not exist to provide a remedy for tactical decisions that do not produce expected results. *See, e.g.*, *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment."); *Martin*, 940 F. Supp. at 59 ("Counsel's failure to offer evidence or to facilitate plaintiff's effort to communicate directly with the judge reflected tactical judgments. These and other trial decisions by counsel afford no basis whatever for relief under Rule 60(b).").

The Court is also not persuaded that the outcome of this trial would have been any different had Mr. DeLucca told the truth about his assistance to Plaintiffs. Mr. DeLucca was certainly an important witness, but that is not determinative. Rather, the central issue is whether "the alleged perjury was of such importance that it probably would have changed the outcome," *Teamsters*, 247 F.3d at 391 (internal quotation marks omitted), that is, whether the jury would have decided

differently had Mr. DeLucca told the truth about his efforts to help Plaintiffs in their lawsuit. For several reasons, the Court does not believe that testimony of that sort from Mr. DeLucca would have changed the outcome of this case – a case in which the jury found against each plaintiff on every element of the special interrogatory.

According to Plaintiffs, testimony from Mr. DeLucca confirming that he had helped them with their lawsuit was necessary to their case because it lent credence to their claims against Mayor Borer – since surely Mr. DeLucca would only want to help them if their claims were meritorious. But Mr. DeLucca testified that he was friends with both Plaintiffs, that he sought Ms. Evangelista out and had frequent discussions with her about the progress of the lawsuit, that he said something to the effect that he did not blame Plaintiffs for suing Mayor Borer, that he explained to Plaintiffs why he had signed an affidavit in support of the Mayor's motion for summary judgment, and that on each occasion when he spoke with Ms. Evangelista about the lawsuit, he expressed sympathy. Transcript of Proceedings held on August 4, 2005 [doc. #141] at 430-39, 442. In the face of this testimony the jury could reasonably have concluded that Mr. DeLucca's assistance had more to do with his friendship for Plaintiffs than with his belief in the merits of their claims.

In any event, Plaintiffs' claim that Mr. DeLucca's admission that he gave them behind-the-scenes assistance would have changed the outcome of the trial is difficult to reconcile with the fact that Plaintiffs' counsel's cross-examination and closing arguments to the jury focused on *discrediting* Mr. DeLucca because he had given testimony that was damaging to Ms. Lorusso's claim. (Mr. DeLucca had very little to say about events relating to Ms. Evangelista's claims.) Plaintiffs' counsel clearly wanted the jury to disbelieve everything Mr. DeLucca had said. Yet an admission by Mr. DeLucca that he had assisted Plaintiffs seems likely to have underscored his neutrality and thus

enhanced his credibility as a witness against Plaintiffs. Finally, and in any event, the admission proffered would at most have been cumulative to the admissions of support that Plaintiffs' counsel had already obtained, or possibly impeaching in nature, and as such, does not warrant a new trial. *See Teamsters*, 247 F.3d at 392 ("[T]he evidence must not be merely cumulative or impeaching."); *Chang v. Albany*, 150 F.R.D. 456, 461 (N.D.N.Y. 1993) (evidence "whose only effect is to contradict or attack the credibility of witnesses will not ordinarily warrant a new trial, in the absence of unusual or extraordinary circumstances").

Litigation is not a game.  It is supposed to be a search for the truth.  Here, an important witness lied, which is a most serious matter requiring careful consideration of the possibility that this deception undermined the integrity of that search for the truth. But in this case there is no evidence, nor even the slightest suggestion, that Mayor Borer or his counsel knew that Mr. DeLucca had lied at trial, let alone encouraged him to do so. Furthermore, having considered the trial record, the hearing record, and the parties' briefs with great care, the Court is satisfied that the particular lie in question, though shocking in a court of law and unequivocally to be condemned, is not of a nature to have likely changed the outcome and therefore does not undermine the Court's confidence in the jury's verdict.[10] A new trial is not warranted.

### III.

Next, the Court turns to Plaintiffs' Rule 59 motion.  As Plaintiffs acknowledge, a grant of a new trial "is usually warranted only if [the district court] 'is convinced that the jury has reached a

---

[10]  In support of their Rule 60(b)(2) motion, Plaintiffs principally rely on *Johnson v. Verisign, Inc.*, No. Civ. A. 01-765-A, 2002 WL 1887527 (E.D. Va. Aug. 15, 2002), *aff'd*, 111 Fed. Appx. 703 (4th Cir. 2004). *Johnson* involved a claim of fraud on the Court under Rule 60(b)(3) and false testimony by several defense witnesses on a critical substantive element of the plaintiff's claim. Suffice it to say, the Court finds *Johnson* distinguishable on its facts.

seriously erroneous result or that the verdict is a miscarriage of justice.' " *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992) (quoting *Smith v. Lightening Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)); *see* Plaintiffs' Memorandum in Support of Motion for New Trial [doc. # 106] at 1. "Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Rule 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters." *Bergstein v. Jordache Enterprises, Inc.*, No. 90 Civ. 1461, 1996 WL 271910, at *2 (S.D.N.Y. May 21, 1996) (internal quotation marks omitted). In short, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *accord Svege v. Mercedes-Benz Credit Corp.*, No. 3:01CV1771, 2004 WL 2377485, at *3 (D. Conn. Sept. 28, 2004).

Unlike on a motion for judgment as a matter of law under Rule 50, however, the trial judge considering a Rule 59 motion for a new trial may weigh the evidence and need not view the evidence in the light most favorable to the verdict winner. *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). Furthermore, a court may grant a new trial under Rule 59 even if there is substantial evidence to support the jury's verdict. *Id*. at 244.

In evaluating Plaintiffs' new trial motion, it is important to emphasize that as a result of the Court's summary judgment ruling that Mayor Borer enjoyed absolute legislative immunity for his budgetary actions, the only claim for the jury to resolve was whether the Mayor engaged in unlawful retaliatory conduct against either Plaintiff in the post-budget time period. To be sure, the Court allowed Plaintiffs to introduce evidence related to the Mayor's conduct and statements in connection with the presentation and passage of the budget, because the Court concluded that the jury could find

such evidence relevant to Mayor Borer's motivations and intent for any action he may have taken against Plaintiffs in the post-budget period. And it is true, as Plaintiffs argue in their brief, that the evidence Plaintiffs presented relating to Mayor Borer's statements and conduct in connection with the budget strongly suggested that, in eliminating the position of Risk Manager and reducing the hours for the Assistant to the Registrar of Voters, the Mayor was politically retaliating against Ms. Lorusso and Ms. Evangelista. Had the trial been about Mayor Borer's budget conduct, the result might have been different.

However, Mayor Borer's conduct in connection with the passage of the budget was not a proper basis on which the jury could impose liability on the Mayor.[11] And, with respect to the post-budget time period, Plaintiffs' evidence was substantially weaker and far more dependent on the jury crediting their self-serving version of events and rejecting the testimony of Mayor Borer and other City employees who testified that whatever befell Plaintiffs in the post-budget time period had nothing to do with Mayor Borer. Although, on a motion for a new trial, the Court is permitted to weigh the evidence to ensure that the jury did not reach a seriously erroneous result, determinations as to the credibility of the witnesses are peculiarly within the province of the jury, and a district court is not entitled to "second-guess the jury's assessments." *Smith v. Carpenter* 316 F.3d 178, 188 n.14 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also New York v. Tanella*, 374 F.3d 141, 151 (2d Cir. 2004) (noting that "'normally the resolution of issues of credibility is exclusively the province of the jury'" (quoting *United States v. Shulman*, 624 F.2d 384, 388 (2d Cir.

---

[11] Plaintiffs' memorandum includes a puzzling footnote referring to comments that a juror allegedly made to a newspaper reporter. Memorandum of Law in Support of Motion for New Trial [doc. #106] at 3 n.1. Because Plaintiffs' Rule 59 motion is not based on juror misconduct, it is not clear why the footnote was included. Therefore, the Court has ignored the footnote for purposes of the Rule 59 motion.

1980))); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) ("A court considering a Rule 59 motion . . . should rarely disturb a jury's evaluation of a witness's credibility.").

In fact, there was ample evidence to support the jury's determinations that Mayor Borer neither directly nor indirectly took any adverse action against Plaintiffs in the post-budget time period. Indeed, the jury could have concluded on the basis of the evidence presented that Mayor Borer had nothing whatsoever to do with what transpired with regard to Plaintiffs during this time. In particular, as to Ms. Lorusso, and as detailed in Defendant's Memorandum in Opposition to Motion for New Trial [doc. # 110], there was adequate evidence to support the following conclusions: that Ms. Lorusso either was not qualified, or was not the most qualified or most senior person, for certain employment positions she sought in the post-budget time period; that individuals other than the Mayor made their own independent decisions about Ms. Lorusso's requests for these positions; that there were delays regarding the rewriting and approval of certain job descriptions for jobs Ms. Lorusso sought that had nothing to do with Mayor Borer; and that, as a result of those delays, certain jobs were posted after Ms. Lorusso had voluntarily decided to retire from City employment. As to Ms. Evangelista, as the Court itself noted in its summary judgment ruling [doc. #61], her claim was already very weak, and just got weaker at trial. Except for her own somewhat equivocal testimony (which the jury was entitled to disregard), Ms. Evangelista did not submit evidence that she ever even asked to have her health care benefits reinstated in the post-budget time period and, in any event, she proffered absolutely no evidence whatsoever that Mayor Borer was directly or indirectly involved in any effort in that period to deny reinstatement of her health benefits.

Therefore, having considered the parties' arguments and reviewed the trial record, the Court concludes that the jury was justified in finding that Plaintiffs' evidence came up short with respect

29

to Mayor Borer's conduct in the post-budget time period.  Accordingly, the Court is convinced that the jury's verdict neither represents a seriously erroneous result nor a miscarriage of justice.

**IV.**

Accordingly, the Court DENIES Plaintiffs' Motion for Relief From Judgment [doc. # 115], DENIES Plaintiffs' Motion for a New Trial [doc. # 105], and DENIES Defendant's Motion for Determination as to Admissibility of Tape Evidence [doc. # 125].

IT IS SO ORDERED,

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: <u>February 28, 2006</u>**.